10:27 am, Aug 13, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE
FILED
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
BR RESTAURANT CORP.,          *    Case No. 20-CV-02756(GRB)
                              *
           Plaintiff,         *    Long Island Federal
                              *     Courthouse
                              *    814 Federal Plaza
      v.                      *    Central Islip, NY  11222
                              *
NATIONWIDE MUTUAL INSURANCE   *    August 6, 2020
 COMPANY,                     *
                              *
           Defendant.         *
                              *
* * * * * * * * * * * * * * * *
```

TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          MICHAEL S. COLE, ESQ.
                            Cole Hansen Chester LLP
                            767 Third Avenue
                            New York, NY  10017

For the Defendant:          STEVEN NASSI, ESQ.
                            COURTNEY ZUCKER, ESQ.
                            Goldberg Segalla LLP
                            200 Garden City Plaza
                            Suite 520
                            Garden City, NY  11530

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
 1              (Proceedings commenced at 11:09 a.m.)
 2              THE CLERK:  Civil 2020-2756, BR Restaurant Corp. vs.
 3    Nationwide Mutual Insurance Company.
 4              Counsel, please state your appearance.  Plaintiff
 5    goes first.
 6              MR. COLE:  Michael Cole, Cole Hansen Chester, for the
 7    plaintiff, Bruno Restaurante Italiano.
 8              MR. NASSI:  This is Steven Nassi, of Goldberg
 9    Segalla, representing Nationwide Insurance Company.
10              THE COURT:  All right.  And you have -- an associate
11    has been on the line who will serve as backup counsel should
12    you get disconnected.  Counsel, your name is, please.
13              MS. ZUCKER:  Sure.  My name is Courtney Zucker, with
14    Goldberg Segalla, on behalf of Nationwide Mutual Insurance
15    Company.
16              THE COURT:  Excellent.  And counsel, I'll just say
17    this.  You said a few minutes ago to me that you're not
18    admitted in federal court.
19              Should the responsible attorney get cut off the line
20    during this call, I'm going to press you into service and you
21    will be allowed to participate today.  All right?
22              MS. ZUCKER:  Thank you very much, Your Honor.
23              THE COURT:  Okay.  Good.
24              So we are here for a pre-motion conference. I have
25    read the submissions.  My staff has reviewed them with me. It's
```

3

1 a very interesting matter.

2 My understanding is defendant would like to move to
3 dismiss this case, which as I understand it seeks a business
4 interruption insurance payment resulting from the COVID-19
5 shutdowns.

6 Counsel, my understanding is that you're going to
7 rely on some exclusions in the policy, including the virus
8 exclusion, where there is one, from what I understand.

9 Do I have that about right, counsel?

10 MR. COLE: That is correct, Your Honor.

11 THE COURT: Okay. I'm going to throw out a question
12 to both counsel right now, which is assuming we brief this
13 motion, and I think this motion has to be briefed, I imagine
14 you'll be submitting the insurance policy, or a copy of it.
15 You'll agree on what that looks like, and that will be part of
16 the court's determination on the motion to dismiss, that I
17 don't have to convert it to a 12(c) or a 56 to consider the
18 insurance policy referenced in the complaint.

19 Are we agreed on that?

20 MR. COLE: I'm sorry, Judge. I wasn't clear on what
21 policy is being represented as the complete one. If --

22 THE COURT: Counsel, stop. Counsel, stop. I have no
23 idea. I haven't seen a policy. My point is you and the other
24 attorneys would get on the phone and try to work out what the
25 policy is and submit it, because otherwise I can't really

1          decide the motion.
2                    MR. COLE:  I was just going to say we can because
3          there was a motion prematurely made which attached the policy,
4          which I'll accept as the policy.  So it's already of record.
5                    THE COURT:  Oh.  Oh, good.  Thank you.  That's
6          helpful. All right, great.  Excellent.  Counsel for defendant
7          we agree that the -- that the previously attest policy is the
8          policy that's operative for these purposes?
9                    MR. NASSI:  That is correct.  We attached a certified
10         copy to our moving papers, Your Honor.
11                   THE COURT:  Okay.  Listen, again, I do think this has
12         to be briefed, but let me go to plaintiff's counsel for a
13         second.
14                   I'm not sure I understand how you get around that
15         virus exclusion even with the public authority sub exclusion or
16         the exception. I'm not sure what it is.  Because doesn't the
17         public authority thing require physical damage to the property?
18                   MR. COLE:  No, it does not.
19                   THE COURT:  Okay.  All right then.  So that would be
20         the exception, yeah?
21                   MR. COLE:  Yes.  The physical -- the civil authority
22         provision says physical loss or damage.  Now, what does that
23         mean?
24                   Well, I could tell you from --
25                   THE COURT:  Oh.

5

1  MR. COLE: I could tell you from the lead case of the
2  defendants themselves they gave you a letter, *Roundabout*
3  *Insurance*, First Department 2002. That was an order where they
4  closed the street and the theater and couldn't use it.
5  Now the lower court granted coverage to the insurance
6  -- the insured, the specifically -- I'm going to give you the
7  quote here, Judge. They said that an insurance policy language
8  which says loss or damage to covered property encompasses loss
9  of use. You can find that at 302 A.D. 2(d)(5). That's the
10  *Roundabout Theater* case the defendant cites in the letter.
11  So that's step one, that the (indiscernible) is
12  covered. That it's covered under loss of use.
13  Now your question, which is right to the point, what
14  about the exclusion? The exclusion is an amendatory
15  endorsement Section K, Item 8, which says virus is excluded.
16  However, Section K applies, as all of the provisions
17  of Section K, to property damage to the premises, meaning
18  virus, hold, arson, all of those items are in Section K.
19  Without belaboring it New York law on this point is
20  clear. If there is more than one interpretation of an
21  exclusion, it doesn't apply.
22  I refer you now to the Clermont Armory case that I
23  cited in my letter. And this is a good one, Judge, and I'll
24  tell you why.
25  THE COURT: Tell me.

6

1   MR. COLE: Here's a case where you have an adjoining
2   property owner who decides to do excavation on his property and
3   he digs underneath the plaintiff in that case, Clermont Armory.
4   However, he causes damage to the structure and the
5   insured makes a claim and the insurance company says no, no.
6   We have an exclusion here for defective workmanship and
7   negligence.
8   But the insured said what do you mean? The cause is
9   (indiscernible) not defective workmanship. And the appellate
10  division said well, cause can be interpreted either way and,
11  therefore, the exclusion doesn't apply.
12  In our case we are saying we are not claiming
13  property damage from virus. We are claiming physical loss due
14  to a civil order and the civil order provision specifically
15  says that -- physical loss of use or damage. It doesn't have
16  to be damage and we don't have that. We're not claiming
17  damage. We don't have virus even mentioned in the complaint.
18  The only place virus appears is in the denial letter.
19  THE COURT: Interesting. Interesting, counsel. Very
20  well said. That's interesting.
21  All right. This is obviously a matter of significant
22  importance. I'm just curious, and this is -- it does not matter
23  for the (indiscernible) motion, but I was wondering if
24  plaintiff's counsel -- do you have an idea of what's at stake
25  in this case? In other words, how long would the restaurant

1    close and how much --
2            MR. COLE: Yes, I could tell you exactly. I could
3    tell you exactly and even illustrate the points.
4            The restaurant was closed as of the order of the --
5    the emergency order, 202, whatever it is, beginning, I believe,
6    March 16.
7            As of this time, only partial outdoor use is
8    permitted. And this illustrates the case even stronger and
9    I'll tell you why.
10           Right now as I sit here in Atlantic Beach I can go to
11   a restaurant and eat inside. But if I go to Howard Beach,
12   where my client is located, only five or six miles away, I
13   cannot eat inside. The cause of this is not virus.
14           The cause of this is a civil order which affects the
15   New York City restaurant, but not the Long Island restaurant,
16   proving the point it is not a virus claim. It's a civil
17   authority claim.
18           And I also point out to you, Judge, *Roundabout* is
19   cited by the defendant as their lead case. Let me tell you
20   what happened there.
21           Even though the appeallate division reversed, they
22   reversed because there was a governmental exclusion in the
23   policy and I'll give you that cite so you can see it. It's 302
24   A.D. 2(d) at 8. So their lead case supports my claim.
25           THE COURT: Interesting. Interesting. All right.

1          Let me go back to defendant's counsel for a moment.
2  Is there anything you'd like to respond to there?
3          MR. NASSI:  Yeah.  I'd like to make a few notes and
4  I'll also admit that I'm a little bit confused by counsel's
5  interpretation of the *Roundabout* decision.
6          THE COURT:  Okay.
7          MR. NASSI:  That case ultimately -- the court found
8  that the insured claim was not covered and denied coverage
9  because in that case there was an incident a block away from
10 the insured theater.
11         And as a result the City ordered the street where the
12 theater had intentions to close and, therefore, the theater,
13 even though it sustained no property damage whatsoever, was
14 compelled to suspend its operations until the street was opened
15 up.
16         In that case, the appeallate division reversed and
17 very clearly held that because there was no physical damage to
18 the insured's property, there is no coverage that is triggered.
19 They don't even come within the scope of the coverage.
20         And I think this court can be resolved very easily to
21 two separate and distinct bases.  One is the physical damage
22 requirement, although I understand that's a more complicated
23 consideration in light of the scientific developments and
24 uncertainties involving the understanding that we have about
25 this virus, how long it stays on surfaces and what not.

1           But nevertheless, I think many courts, including this
2   court's brethren court in *Sentinel,* held that there is no
3   physical damage that is -- that results from the COVID-19
4   virus.  So that's the first basis.  I don't believe that
5   plaintiff's claim even falls within the scope of coverage or
6   they trigger the insuring agreement.
7           But even if we assume that they do, let's say they
8   get into coverage and virus does impress some sort of physical
9   damages -- changes the physical makeup of their property, which
10  I don't believe it does -- even then the policy -- the
11  certified copy of the policy has a number of endorsements.  All
12  of them are enumerated.
13          All of them are enumerated in the schedule in the
14  front of the policy with the declarations.  There's no
15  uncertainty as to what it includes. And one of the endorsements
16  sets forth the standard virus exclusion.
17          And contrary to counsel's assertion, that exclusion
18  is not meant for mold or anything of that nature.  Number one,
19  I would suggest that mold is not considered a virus. It's a
20  bacteria, an organism, and virtually all ISO form policies have
21  a separate and distinct exclusion that addresses things such as
22  mold.
23          So I don't think -- I'm not aware of any decision,
24  either in New York or anywhere in the country that considers a
25  virus like the one that we have, or SARS, or the Bird Flu,

10

|   |   |
|---|---|
| 1 | which form -- which really brought the virus exclusion into |
| 2 | existence not that long ago, I'm not aware of any court that |
| 3 | construed the COVID-19 virus and the potential bacteria in any |
| 4 | court that has adjudicated on it or heard oral arguments on it |
| 5 | has accepted, if not considered the exclusion to apply to virus |
| 6 | claims, to COVID-19 claims. |
| 7 | And the last thing I want to mention is that the the |
| 8 | insured's restaurant was not ordered closed at any point. |
| 9 | Well, I should take that back. I'm not certain of that. |
| 10 | But a large portion of their claim stems from the |
| 11 | City order that prohibits dining inside the restaurants that |
| 12 | encourage, in fact, take-out delivery and curbside service. |
| 13 | THE COURT: Are you suggesting to me -- |
| 14 | MR. NASSI: So even if we -- |
| 15 | THE COURT: Hold on.  Hold on. |
| 16 | Counsel, if you're suggesting to me there that |
| 17 | there's -- this interruption only covers a complete |
| 18 | interruption of business? |
| 19 | MR. NASSI: I'm sorry, Your Honor. Can you repeat |
| 20 | that? |
| 21 | THE COURT: Is your suggestion to me then that the |
| 22 | business interruption insurance should only encompass a |
| 23 | complete interruption of business? That means they can do |
| 24 | partial business and they're not covered? |
| 25 | MR. NASSI: No, no. I'm not saying that, Your Honor. |

11

1          THE COURT:  Okay.

2          MR. NASSI:  Business interruption insurance coverage
3 insures against any loss of business income and such so long as
4 it stems from physical damage to the insured property.

5          THE COURT:  Okay.

6          MR. NASSI:  Now that's under the business income
7 portion of the coverage.

8          Plaintiffs also make a claim under the civil
9 authority coverage of the policy.  And there --

10         THE COURT:  Well, let's be clear on that. Counsel,
11 let's be clear on that.  I think I heard (indiscernible) just
12 say that the (indiscernible) is exclusively (indiscernible) on
13 the civil authority section, which should make the briefing of
14 this easier.

15         MR. NASSI:  From the way I read the complaint I
16 understood them as making a claim under both the business
17 income and the civil authority coverage.

18         THE COURT:  Okay.

19         MR. NASSI:  And I'll go back to the pleadings and
20 double check if I can --

21         THE COURT:  Hold on.  Don't do that. Counsel, don't
22 do that.

23         Let me ask your adversary.  Counsel, am I right to
24 understand that your claim is premised entirely on the civil
25 authority section?

1           MR. COLE: Our claim specifically is loss of use of
2 covered authority resulting in business loss income, but here's
3 the key, caused by the civil authority. So we lost the income
4 caused by civil authority, not caused by virus.
5           The other thing I'd like to point to you is counsel
6 misunderstands why --
7           THE COURT: We'll get to that. Hold on. Let me get
8 back to him. We'll get back to that. I just want to make sure
9 we're all on the same page.
10           So counsel for the insured, you heard that?
11           MR. NASSI: Yes. That's correct that it sounds like
12 we're heading toward the causation argument regarding whether
13 the closure or the limitation of the insureds business activity
14 was caused by a government's order, or was it caused by the
15 COVID virus and we're going to get into a proximate causation
16 analysis, which would also --
17           THE COURT: But he's -- no, no, no. As I understand
18 it, counsel is limiting his claim to the cause that --
19           MR. NASSI: I'm sorry, Judge. There's a lot of
20 background noise, Your Honor.
21           THE COURT: Yeah. The cause being the civil
22 authority action, right? So it's not -- the extended notion
23 that the virus caused the shutdown.
24           MR. NASSI: Correct.
25           THE COURT: It's only the civil authorities action

1     that caused the shutdown.

2         MR. NASSI: That's fine and I'm glad that we're
3     getting this clarification because I think it simplifies the
4     analysis somewhat.

5         THE COURT: Yeah. Sure.

6         MR. NASSI: Under the civil authority coverage you
7     need both suspension of business and you need physical damage
8     under the insuring agreement. The second fundamental element
9     is you need physical property damage to property other than the
10     insured premises.

11         MR. COLE: That's inaccurate.

12         THE COURT: I think counsel disagrees. We could
13     agree that you all disagree on exactly how to (indiscernible)
14     portion of it.

15         But the important thing, to simplify the briefing of
16     your motion, is that it's the civil authority prong that we're
17     worried about here, yes.

18         MR. COLE: Yes. It's civil authority, not virus.

19         THE COURT: Yeah. Got it, counsel?

20         MR. NASSI: I got it.

21         The last element I want to mention about the civil
22     authority is it requires that the insured be denied access to
23     the premises. That never happened at any point.

24         MR. COLE: That's not what it says in the clause,
25     counsel. You didn't read it.

1         THE COURT:  Okay.  We can -- counsel, hold on.  Hold
2    on. We're not going to do this on the phone.  That isn't going
3    to work.
4         MR. COLE:   You're right, Judge.
5         THE COURT:  We'll fight about that in our papers.
6         MR. COLE:  You're right, Judge.
7         THE COURT:  What I'm trying to do is make this a
8    little bit easier because --
9         MR. COLE:  You're right.
10        THE COURT:  I think you're focused on the civil
11   authority thing, which is interesting, right?  I mean, it makes
12   it a different kind of case than if it were the virus causing
13   it, which is -- obviously, all kinds of other exclusions come
14   into play.
15        So I think counsel is cleverly and intelligently
16   narrowing his focus to the civil authority being the causing
17   force here. So let's focus in on that.
18        With that said --
19        MR. NASSI:  Your Honor --
20        THE COURT:  What?
21        MR. NASSI:  I was just going to ask whether it would
22   be okay to read the insuring agreement from the civil authority
23   covered --
24        THE COURT:  No.  Counsel, this is way too important
25   and way too complex to have me shooting from the hip here.  I'm

15

1     not going to decide this on the phone today. So we're going to
2     have to brief this.
3           So my question to you is -- and you've agree that you
4     can agree on what the policy is and that's great. I thank both
5     of you for the courtesy. I think that makes it easier and
6     clearer.
7           So let me ask counsel for Nationwide, how long will
8     it take you to file your motion papers?
9           MR. NASSI: I think if we have 14 days from today,
10     we'd be okay with that.
11          THE COURT: Okay. Hopefully your electricity holds
12     out, but okay.
13          Counsel for plaintiff, how long would you like to
14     respond to that?
15          MR. COLE: I'm sure I could respond within seven
16     days. But I would like to make another request. You could
17     understand the imperative of getting this resolved quickly so
18     this restaurant could survive.
19          I would like to have been able to make a cross motion
20     under 12, I believe it is C, judgment on the pleadings, but it
21     requires an answer.
22          Is there any way that an answer could be required so
23     that I can cross move for judgment on the pleadings on the
24     issue of liability only?
25          THE COURT: Wow. That's interesting. What do you

16

1 have to say about that?

2 MR. NASSI: That's pretty interesting and I must
3 admit I never anticipated this issue coming up.

4 Well, I would ask if counsel and Your Honor think it
5 would result in an undue delay if we complete the motion
6 process first.

7 And if it assists counsel and his client and the
8 court's calendar, I can even expedite our filing perhaps by the
9 end of next week.

10 MR. COLE: Of course. But I wouldn't like to have --
11 let's say hypothetically the judge did rule against your
12 motion, counsel, I would then be compelled to bring yet another
13 motion for judgment on the pleadings on the grounds of
14 liability and --

15 THE COURT: Right. He's going to get you -- he's
16 going to get you an answer in a week and he's also
17 (indiscernible) so you have enough time to make a 12(c) --

18 MR. COLE: That's good.

19 THE COURT: But let me do this. Let me give you the
20 14 days. In other words, he's going to respond -- he's going
21 to file a motion within 14 days. Why don't you respond and
22 cross move as necessary within 14 days of that. Does that make
23 sense?

24 MR. COLE: Absolutely. Absolutely. No problem.

25 THE COURT: And then I'll give counsel for Nationwide

1     another seven days to -- I don't know if talking about a
2     response, or a reply or an (indiscernible) or whatever.
3     (indiscernible) set of papers seven days thereafter. Is that
4     good?
5             MR. COLE: I'm sorry. I didn't hear the last part.
6             THE COURT: I'm saying counsel for Nationwide, in
7     other words, 14 days after you file (indiscernible) you need
8     seven days then to respond and/or oppose as such? Yes?
9             MR. NASSI: Yes. That's fine with us, Your Honor.
10            THE COURT: Good. And then you'll file -- the
11    plaintiff, obviously -- if plaintiff needs any further reply or
12    response, you can do that in the next few days. And please
13    file a fully bundled motion, the set of them, as one set, okay?
14    If we're going to serve them, and then you're going to file
15    them (indiscernible). But that's it. I'm going to try to get to
16    this as soon possible.
17            I do understand there is imperatives on both sides.
18    These are important issues. They're obviously --
19            MR. COLE: I appreciate that.
20            THE COURT: Yeah. They're obviously happening for
21    everybody, right? This is a big thing. I would note for the
22    record that we're doing this by audio conference because we
23    can't go to court right now. We're working -- we're getting
24    closer, but these are strange times.
25            So I will try to prioritize this because obviously

18

1    it's important to everybody.  All right?
2            MR. NASSI:  Thank you, everyone.  Thank you, Your
3    Honor.
4            MR. COLE:  Thank you.  I appreciate it.
5            THE COURT:  All right.  Everyone has the schedule and
6    I look forward to getting your papers.
7            MR. NASSI:  Yes.
8            THE COURT:  All right.  Good job, counselors.  Stay
9    safe.
10           MR. NASSI:  Your Honor, if I may ask one last
11   question, I just want to confirm that the argument is limited
12   just to civil authority and plaintiff is not pursuing a claim
13   under the business income portion of the policy.
14           MR. COLE:  No.  Of course we're pursuing a claim
15   under the business income -- what do you -- how can we not?
16   The whole claim is loss of business income arising from civil
17   authority suspension of operation under the policy which
18   provides for loss of income under those conditions.
19           In fact, counsel, in my letter, if you read it, it
20   says suspension of operation is covered under loss of business
21   income specifically.  5(g).  It's right in my letter.  And it's
22   in your policy.  Of course.
23           MR. NASSI:  I read it. I don't think there's a
24   confusion.  Maybe it's just the vernacular, but the policy
25   includes various insuring agreements.  One of them is commonly

| | |
|---|---|
| 1 | referred to as the civil authority provision. Another one is |
| 2 | referring to the business income and (indiscernible). |
| 3 | MR. COLE: I don't -- |
| 4 | MR. NASSI: It's all right. I'll go back to your |
| 5 | letter. That's fine. I didn't mean to cause confusion, |
| 6 | counsel, and I did read your papers. |
| 7 | THE COURT: Counsel, we can wordsmith it later but |
| 8 | the point is, as I understand -- I'm walking away from this |
| 9 | conversation thinking that plaintiff's claim is that the |
| 10 | business was closed because of the civil orders, right? |
| 11 | Because of the civil authority, not because of the virus |
| 12 | itself. |
| 13 | MR. COLE: Correct. |
| 14 | THE COURT: Did I get that about right? yeah. |
| 15 | MR. COLE: That's correct. |
| 16 | THE COURT: Okay. What policies, what provisions and |
| 17 | exclusions and exceptions that hits, you'll all tell me in your |
| 18 | papers. Fair enough? |
| 19 | MR. COLE: Fair enough. |
| 20 | MR. NASSI: Yes, Your Honor. Thank you very much for |
| 21 | your clarification and time. |
| 22 | THE COURT: All right. Stay safe. Talk to you soon. |
| 23 | MR. NASSI: Take care. |
| 24 | MR. COLE: Thank you, Judge. |
| 25 | (Proceedings concluded at 11:35 a.m.) |

20

1     I, CHRISTINE FIORE, court-approved transcriber and
2 certified electronic reporter and transcriber, certify that the
3 foregoing is a correct transcript from the official electronic
4 sound recording of the proceedings in the above-entitled
5 matter.

6

7 *Christine Fiore*

8 _____    August 8, 2020

9   Christine Fiore, CERT