UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X    Civil Action No.: 2:20-cv-02756

BR RESTAURANT CORP. d/b/a BRUNO'S
RESTAURANTE ITALIANO,

                                                    Plaintiff,        **AFFIRMATION OF STEVEN
                                                                      P. NASSI, ESQ. IN SUPPORT
                                                                      OF DEFENDANT'S MOTION
                        - against -                                   TO DISMISS PLAINTIFF'S
                                                                      AMENDED COMPLAINT**

NATIONWIDE MUTUAL INSURANCE
COMPANY,

                                                    Defendant.
-----------------------------------------------------------------X

     Steven P. Nassi, Esq. hereby swears under penalty of perjury the following:

     1.     I am a partner with the law firm of Goldberg Segalla, LLP.

     2.     I represent Defendant NATIONWIDE MUTUAL INSURANCE COMPANY ("Nationwide") in the above captioned matter.

     3.     Annexed hereto as **Exhibit A** is a certified copy of the Premier Businessowners Policy of insurance issued by Nationwide to Plaintiff bearing policy number ACP BPFM3047086185, effective August 5, 2019 through August 5, 2020.

     4.     Annexed hereto as **Exhibit B** is a true and correct copy of Plaintiff's Amended Complaint, filed by Plaintiff in the Supreme Court of the State of New York, County of Nassau on May 27, 2020 and served on Nationwide on June 2, 2020.

     5.     Annexed hereto as **Exhibit C** is a true and correct copy of the April 2, 2020 Denial Letter issued to Plaintiff.

     6.     Annexed hereto as **Exhibit D** is a true and correct copy of Governor Andrew Cuomo's March 7, 2020 Executive Order No. 202.

7.　　Annexed hereto as **Exhibit E** is a true and correct copy of Governor Andrew Cuomo's March 16, 2020 Executive Order No. 202.3.

8.　　Annexed hereto as **Exhibit F** is a true and correct copy of the oral argument transcript in *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020).

9.　　Annexed hereto as **Exhibit G** is a true and correct copy of the Order issued in *Rose's 1, LLC v. Erie Ins. Exch., No. 2020-CA-002424-B* (D.C. Sup. Ct. Aug. 6, 2020).

10.　　Annexed hereto as **Exhibit H** is a true and correct copy of the Order issued in *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-416-DAE (W.D. Tex. Aug. 13, 2020).

11.　　Annexed hereto as **Exhibit I** is a true and correct copy of the Copy of Teleconference Transcript for the Order to Show Cause in *Social Life Magazine, Inc. v. Sentinel Insurance Co. Ltd.*, No. 20-cv-3311 (VEC) (S.D.N.Y.), dated May 14, 2020.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

Dated:  Garden City, New York
　　　　August 20, 2020

**GOLDBERG SEGALLA LLP**

By: _____
　　　Steven P. Nassi, Esq. (PN5216)
　　　snassi@golbergsegalla.com
　　　*Attorneys for Defendant*
　　　*Nationwide Mutual Insurance Company*
　　　Mailing Address:
　　　P.O. Box 780, Buffalo, NY 14201
　　　Office Location:
　　　200 Garden City Plaza, Suite 520
　　　Garden City, NY 11530-3203
　　　Tel:  (516) 281-9800
　　　Fax:  (516) 281-9801

2

26901729.v1

EXHIBIT A

DocuSign Envelope ID: A5453288-D5AC-4A4D-9C96-95B709578100



# Certification

I, TIM CALVERT, as a duly authorized NATIONWIDE MUTUAL

INSURANCE CO associate entrusted with oversight of the system of record

from which this copy was produced, based upon information and belief;

certify under the penalty of perjury that this attached copy of

ACP BPFM 3047086185 effective 08/05/2019 To 08/05/2020 issued to

BRUNO'S RESTAURANTE ITALIANO BR RESTAURANT GROUP was

made at or near the time of certification, as part of regularly conducted

business activities, and is a true and accurate copy of the official record kept

as part of regular business activities.

CALVERT, TIM

7F158AE61DA44B3...

5/29/2020

_____         _____

Tim Calvert                                    Date

CL Processing Supervisor

IN 74 04 01 07

# IMPORTANT FLOOD INSURANCE NOTICE

Thank you for the opportunity to provide your important insurance protection.  As your insurance provider, we like to keep you informed of important issues that can potentially impact your property assets.  This letter is to remind you of the importance of considering flood insurance and the importance of reviewing your policies on a regular basis.

Your Commercial Property (Premier Businessowners, and/or Commercial Property) and Farmowners' policy does not cover damage from floods to any property resulting directly or indirectly from "water."  Excluded "water" losses include, but are not limited to those caused by flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not. These types of loss or damage caused by "Water" are excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. You will need to read your policy for all of the details about excluded water losses.  This is just a summary of the excluded water losses to highlight some important flood-related issues.

In most communities, you can obtain flood insurance through your agent that is backed by the federal government's National Flood Insurance Program.  In those qualifying communities, you can obtain flood insurance protection for your property regardless of your flood zone or flood risk.

Your agent can assist you in 1) determining if your community participates in the National Flood Insurance Program, 2)  assessing your flood risk, and 3) understanding flood policy availability. To learn more about flood insurance and your risk of flooding access the National Flood Insurance Program's consumer website at www.FloodSmart.gov.

As you consider the risk of flooding in your area and consider your options for obtaining valuable protection, consider that:

- All property is in a flood zone, regardless of whether an area has been defined as high risk or low risk.
- Nearly 25% of all flood claims are for properties located in lower-risk flood areas or locations where flooding is not expected.
- Floods can happen anywhere, at any time, causing anguish, destruction, and financial damage.
- Changing weather patterns, as well as residential and business development, may increase your chance of experiencing a flood.
- Flooding can occur as a result of clogged, overloaded, or inadequate storm drains.  You don't have to live near a body of water to be flooded.
- Federal disaster assistance is often a loan and must be repaid with interest.
- Your commercial property and/or farmowner policies exclude loss by flooding.

Ask your agent about obtaining flood insurance for commercial property today. Thank you for choosing us to meet your insurance needs. We value your business.

IN 78 09 11 15

★ ★ ★ ★ ★ ★ ★    IMPORTANT INSURANCE INFORMATION    ★ ★ ★ ★ ★ ★ ★

Please read this Notice carefully.  No coverage is provided by this notice nor can it be construed to replace any provision of your policy.  You should read your policy and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.

# DATA BREACH & IDENTITY RECOVERY SERVICES

**Data Breach Services Information:**

Through a partnership with Hartford Steam Boiler, you have access to a data breach risk management portal called the eRiskHub®.  The portal is designed to help you understand data information exposures, help you plan and be prepared for a data breach, and establish a response plan to manage the costs and minimize the effects of a data breach.

Key features of the portal include:
- Incident Response Plan Roadmap – suggested steps your business can take following data breach incident.  Having an incident response plan prepared in advance of a breach can be useful for defense of potential litigation.
- Online Training Modules – ready-to-use training for your business on privacy best practices and Red Flag Rules.
- Risk Management Tools- assist your business in managing data breach exposures including self-assessments and state breach notification laws.
- eRisk Resources – a directory to quickly find external resources on pre and post-breach disciplines.
- News Center – cyber risk stories, security and compliance blogs, security news, risk management events, and helpful industry links.
- Learning Center – best practices and white papers written by leading authorities.

To access the eRiskHub®portal:
- Enter https://www.eriskhub.com/nationwide in your browser.
- Complete the information, including your name and company. Your User ID and Password are case-sensitive.
- Enter your assigned access code: **12116-73**.
- Enter the challenge word on the screen, and click "Submit" and follow the instructions to complete your profile setup.
- You can now login to the portal.

You also have access to a help-line to answer breach related questions.  Insureds having questions pertaining to how to prepare for a breach, help in identifying a breach, or other questions pertaining to breach related best practices can call our breach preparedness help-line.  Experienced professionals are able to provide insights to help insureds understand the complicated environment pertaining to breaches of personal information.  The breach preparedness help-line is 877-800-5028.

ACP BPFM3047086185                                    INSURED COPY                                    34    07722

IN 78 09 11 15

In addition, you have the ability to purchase Data Compromise Insurance coverage and CyberOne Insurance coverage.

The Data Compromise coverage covers the costs incurred by an insured to respond to a data breach, including expenses related to forensic information technology review, legal review, notification to affected individuals, services to affected individuals, public relations services. Insureds will also have the ability to include Data Compromise Defense and Liability coverage which covers the liability from a suit brought by an individual affected by the data breach.

CyberOne coverage protects businesses against damage to electronic data and computer systems from a virus or other computer attack. It also protects a business's liability to third parties that may have suffered damage due to security weaknesses in the business's computer system.

**Identity Recovery Services Information:**

Through a partnership Hartford Steam Boiler, you will have access to a Toll-Free Identity Recovery Help Line designed to provide education about identity theft and identity theft risks. The toll-free Help Line is staffed by experienced identity theft counsellors who can answer questions and provide useful information and resources to identity theft victims. The Identity Recovery Help Line number is 877-800-5028.

In addition, you have the ability to buy Identity Recovery insurance coverage as an included element of Data Compromise coverage or separately, on its own. The Identity Recovery coverage insures against the theft of identities of the insured's key owners, officers, and resident family members. The coverage provides the services of an identity theft case manager and pays for various out-of-pocket expenses due to a covered identity theft, including:

- Legal fees for answer of civil judgments and defense of criminal charges
- Phone, postage, shipping fees
- Notary and filing fees
- Credit bureau reports
- Lost Wages and Child or Elder Care
- Mental Health Counseling costs (Not Available in NY)
- Miscellaneous Expense coverage

**Nationwide®**
is on your side

NATIONWIDE MUTUAL INSURANCE CO
ONE NATIONWIDE PLAZA
COLUMBUS, OH 43215-2220

31   56319
RENEWAL

# PREMIER BUSINESSOWNERS POLICY

### PREMIER FOOD SERVICE

## COMMON DECLARATIONS

Policy Number: **ACP   BPFM  3047086185**

Named Insured: **BRUNO'S RESTAURANTE ITALIANO**
**BR RESTAURANT GROUP**
Mailing Address: **15822A CROSSBAY BLVD**
**HOWARD BEACH, NY    11414-3136**
Agency: **New York Coverage Corp Agency**
Address: **SMITHTOWN NY    11787**
Agency Phone Number: **(631)864-1111**

Policy Period: Effective From **08-05-19**      To **08-05-20**
12:01 AM Standard Time at your principal place of business.

Form of your business entity: **CORPORATION**

Description of your business: **ITALIAN RESTAURANT**

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

**CONTINUATION PROVISION:  If we offer to continue your coverage and you or your representative do not accept,
this policy will automatically terminate on the expiration date of the current policy period stated above.  Failure to
pay the required premium when due shall mean that you have not accepted our offer to continue your coverage.
This policy will terminate sooner if any portion of the current policy period premium is not paid when due.**

**RENEWAL POLICY NOTICE:  In an effort to keep insurance premiums as low as possible, we have streamlined
your renewal policy by not including printed copies of policy forms or endorsements that have not changed from
your expiring policies, unless they include variable information that is unique to you.  Refer to your prior policies for
printed copies of these forms.  If you have a need for any form, they are available by request from your agent.**

| | | |
|---|---|---|
| **TOTAL ANNUAL PREMIUM** | **$** | **14,128.00** |
| **SURCHARGE/ASSESSMENT** | **$** | **89.70** |
| **TOTAL POLICY PREMIUM** | **$** | **14,217.70** |

| Previous Policy Number | | | | |
|---|---|---|---|---|
| **ACP    BPFM  3037086185** | **ENTRY DATE** | **05-22-19** | Countersignature | Date |

These Common Policy Declarations, together with the Common Policy Conditions, Coverage Form Declarations,
Coverage Forms and any endorsements issued to form a part thereof, complete the Policy numbered above.

**PB 81 00 (01-01)**

DIRECT BILL    LO6K         JKJ        INSURED COPY              UID    Z1    REPRINT    34   07724

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**

**SCHEDULE OF NAMED INSUREDS**

Policy Period:

Policy Number: **ACP**  **BPFM  3047086185**  From **08-05-19**  To **08-05-20**

Named Insured:

**BRUNO'S RESTAURANTE ITALIANO**
**BR RESTAURANT GROUP**

**INSURED COPY**  **34  07725**

# NATIONWIDE MUTUAL INSURANCE COMPANY
# MUTUAL COMPANY CONDITIONS ENDORSEMENT

**POLICYHOLDER MEMBERSHIP IN THE COMPANY**

(Applicable Only to Policies Issued by Nationwide Mutual Insurance Company in States other than the State of Texas)

Because this policy is issued by Nationwide Mutual Insurance Company (the "Company"), the first named insured listed on the declarations page ("named insured") is a member of the Company issuing the policy while this or any other policy issued by the Company is in force. While a member, the named insured is entitled to one vote only – regardless of the number of policies issued to the named insured – either in person or by proxy at meetings of members of the Company.

The annual meeting of members of the Company will be held each year at the Home Office of the Company in Columbus, Ohio, at 10 a.m. on the first Thursday of April. If the Board of Directors of Nationwide Mutual Insurance Company should elect to change the time or place of that meeting, the Company will mail notice of the change to the member's last known address. The Company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the named insured is not subject to any assessment beyond the premiums required for each policy term.

**POLICYHOLDER DIVIDEND PROVISIONS**

The named insured is entitled to any Dividends which are declared by the Board of Directors of the Company in accordance with law and which are applicable to coverages provided in this policy.


**POLICYHOLDER MEMBERSHIP IN THE COMPANY IN TEXAS**

(Applicable Only to Policies Issued by Nationwide Mutual Insurance Company in the State of Texas)

**1.  MUTUALS – MEMBERSHIP AND VOTING NOTICE**. The named insured is notified that, by virtue of this policy, the named insured is a member of the Nationwide Mutual Insurance Company of Columbus, Ohio, (the "Company") and is entitled, as is lawfully provided in the charter, constitution, and by-laws to vote either in person or by proxy in any or all meetings of said Company. Each member is entitled to only one vote regardless of the number of policies owned. The annual meetings of the members of the Company are held in the Home Office, at Columbus, Ohio, on the first Thursday of April, in each year, at 10:00 o'clock a.m.

**2.  MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY**. No Contingent Liability: This policy is non-assessable. The named insured is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

**POLICYHOLDER DIVIDEND PROVISIONS**

The named insured shall be entitled to participate in a distribution of the surplus of the Company, as determined by its Board of Directors from time to time, after approval in accordance with the provision of the Texas Insurance Code, of 1951, as amended.

IN WITNESS WHEREOF: Nationwide Mutual Insurance Company has caused this policy to be signed by its President and Secretary, and countersigned by a duly authorized representative of the Company.

Secretary                                        President

**SP 00 01 09 16**                                        **Page 1 of 1**

# PREMIER BUSINESSOWNERS POLICY

## PREMIER FOOD SERVICE

### Surcharges and Assessments Supplemental Declarations

Policy Period:

Policy Number: **ACP BPFM3047086185**                    From **08-05-19**  To  **08-05-20**

| | | |
|---|---|---|
| **NY** | NY FIRE INSURANCE FEE | $89.70 |
| | SURCHARGE/ASSESSMENT TOTAL | $89.70 |

**PB 81 00A (01-01)**          **NATIONWIDE MUTUAL INSURANCE COMPANY**          **Page 1 of 1**

DIRECT BILL     LO6K          JKJ          INSURED COPY                    UID     Z1     REPRINT     34   07727

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**

**PROPERTY DECLARATIONS**

Policy Number:   **ACP BPFM3047086185**

Policy Period:
From **08-05-19** To **08-05-20**

Description of Premises Number: **001**     Building Number: **001**     Construction: **JOISTED MASONRY**
Premises Address  **15822A CROSSBAY BLVD**                      **HOWARD BEACH      NY       11414-3136**
Occupancy   **T**       Classification: **ITALIAN - FINE DINING - NO BAR**
                      Described as:  **RESTAURANT**

---

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

The Property Coverage provided at this premises is subject to a  **$ 2,500**  Deductible, unless otherwise stated.

| COVERAGES | LIMITS OF INSURANCE |
|---|---|
| Building - | **NOT PROVIDED** |
| Business Personal Property - Replacement cost | **$616,800** |

**ADDITIONAL COVERAGES - the Coverage Form Includes other Additional Coverages not shown.**

| | |
|---|---|
| Business Income - ALS - 12 Months - NO Hour Waiting Period - 60 Day Ordinary Payroll Limit | **INCLUDED** |
| Extra Expense - Actual Loss Sustained (ALS) - 12 Months - NO Hour Waiting Period | **INCLUDED** |
| Equipment Breakdown | **INCLUDED** |
| Automatic Increase in Insurance - Building | **NOT PROVIDED** |
| Automatic Increase in Insurance - Business Personal Property | **2.9%** |
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $25,000 policy aggregate) | **$5,000** |

| OPTIONAL INCREASED LIMITS | Included Limit | Additional Limit | |
|---|---|---|---|
| Account Receivable | $25,000 | | **$25,000** |
| Valuable Papers and Records (At the Described Premises) | $25,000 | | **$25,000** |
| Forgery and Alteration | $10,000 | | **$10,000** |
| Money and Securities - Inside the Premises | $10,000 | | **$10,000** |
| Outside the Premises (Limited) | $10,000 | | **$10,000** |
| Outdoor Signs | $2,500 | | **$2,500** |
| Outdoor Trees, Shrubs, Plants and Lawns | $10,000 | | **$10,000** |
| Business Personal Property Away From Premises | $15,000 | | **$15,000** |
| Business Personal Property Away From Premises - Transit | $15,000 | | **$15,000** |
| | $10,000 | | **$10,000** |
| | $10,000 | | **$10,000** |

**OPTIONAL COVERAGES - Other frequently purchased coverage options.**

| | |
|---|---|
| Employee Dishonesty | **NOT PROVIDED** |
| Ordinance or Law - 1 - Loss to Undamaged Portion | **NOT PROVIDED** |
| 2 - Demolition Cost and Broadened Increased Cost of Construction | **NOT PROVIDED** |
| Food Service PLUS Endorsement (PB2002) | **INCLUDED** |
| Spoilage From Power Outage - $500 Deductible | **$10,000** |
| ADVANTAGE - Blanket Additional Limit | **$100,000** |

**PROTECTIVE SAFEGUARDS**
This premise has one or more PROTECTIVE SAFEGUARDS identified by symbols herein. Insurance at this
premise will be suspended if you do not notify us immediately if any of these safeguards are impaired.
See **PB 04 30** for a description of each symbol. APPLICABLE SYMBOLS:  **P-8;**

**PB 81 01 (01-01)**

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**

**MORTGAGEE ASSIGNMENT INFORMATION**

Policy Number:   **ACP BPFM3047086185**

Policy Period:
From **08-05-19** To **08-05-20**

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

Additional Interest:                  Interest Number:                Loan Number:
Interest:

**PB 81 01 (01-01)**                                                                 **Page 2 of 2**

**DIRECT BILL    LO6K              JKJ         INSURED COPY                  UID     Z1          34   07729**

# PREMIER BUSINESSOWNERS POLICY
### PREMIER FOOD SERVICE
## LIABILITY DECLARATIONS

| | | Policy Period: |
|---|---|---|
| Policy Number:   **ACP   BPFM  3047086185** | | From **08-05-19**  To **08-05-20** |

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit of Insurance | Per Occurrence | **$1,000,000** |
| Medical Payments Coverage Sub Limit | Per Person | **$5,000** |
| Tenants Property Damage Legal Liability Sub Limit | Per Covered Loss | **$300,000** |
| Personal and Advertising Injury | Per Person Or Organization | **$1,000,000** |
| Products – Completed Operations Aggregate | All Occurrences | **$2,000,000** |
| General Aggregate | All Occurrences | **$2,000,000** |
| (Other than Products – Completed Operations) | | |

## AUTOMATIC ADDITIONAL INSUREDS STATUS

The following persons or organizations are automatically insureds when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.

Co-Owners of Insured Premises
Controlling Interest
Grantor of Franchise or License
Lessors of Leased Equipment
Managers or Lessors of Leased Premises
Mortgagee, Assignee or Receiver
Owners or Other Interest from Whom Land has been Leased
State or Political Subdivisions - Permits Relating to Premises

## PROPERTY DAMAGE DEDUCTIBLE
NONE

## OPTIONAL COVERAGES

| | |
|---|---|
| Liquor Liability | **Included in Each Occurrence Limit of Insurance Subject to Products - Completed Operations Aggregate** |

Lead Exclusion (PB6931) - Applies to:
Premises   001  Building   001

The Liability portion of your total policy premium is an advance premium and may be subject to adjustment

# PREMIER BUSINESSOWNERS POLICY

### PREMIER FOOD SERVICE

## FORMS AND ENDORSEMENTS SUMMARY

Policy Period:

Policy Number:  **ACP  BPFM  3047086185**                    From **08-05-19**  To **08-05-20**

| FORM NUMBER | | TITLE |
|---|---|---|
| LI0021 | 0101 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PB0002 | 0108 | PREMIER BUSINESSOWNERS |
| PB0006 | 0101 | PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM |
| PB0009 | 0406 | PREMIER BUSINESSOWNERS COMMON POLICY CON |
| PB0430 | 0917 | PROTECTIVE SAFEGUARDS |
| PB0523 | 0715 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| PB1504 | 1114 | ACCESS OR DISCLOSURE OF CONFIDENTIAL OR |
| PB2002 | 0807 | FOOD SERVICE PLUS ENDORSEMENT |
| PB2099 | 1208 | BUSINESSOWNERS ADVANTAGE |
| PB2998 | 0908 | EXCLUSION - VIOLATION OF CONSUMER PROTEC |
| PB2999 | 0102 | EXCLUSION - FUNGI OR BACTERIA |
| PB6303 | 0101 | LIQUOR LIABILITY COVERAGE |
| PB6304 | 0101 | OFF PREMISES VALET PARKING |
| PB6931 | 1110 | LEAD EXCLUSION ENDORSEMENT - NEW YORK |
| PB9031 | 0618 | NEW YORK AMENDATORY ENDORSEMENT |

### IMPORTANT NOTICES

| | | |
|---|---|---|
| IN7404 | 0107 | IMPORTANT FLOOD INSURANCE NOTICE |
| IN7809 | 1115 | DATA BREACH & IDENTITY RECOVERY SERVICES |

# PREMIER BUSINESSOWNERS
# PROPERTY COVERAGE FORM

## TABLE OF CONTENTS

A. COVERAGES ................................................................................................................. 2
   1. COVERED PROPERTY ......................................................................................... 2
   2. PROPERTY NOT COVERED ................................................................................. 3
   3. COVERED CAUSES OF LOSS .............................................................................. 3
   4. LIMITATIONS ......................................................................................................... 3
   5. ADDITIONAL COVERAGES .................................................................................. 4
      a. Debris Removal ................................................................................................ 4
      b. Preservation Of Property ................................................................................. 4
      c. Fire Department Service Charge ...................................................................... 4
      d. Fire Extinguisher Recharge ............................................................................. 5
      e. Collapse ........................................................................................................... 5
      f. Water Damage, Other Liquids, Powder Or Molten Material Damage ............... 6
      g. Business Income .............................................................................................. 6
      h. Extra Expense .................................................................................................. 7
      i. Pollutant Clean Up And Removal ..................................................................... 7
      j. Civil Authority ................................................................................................... 8
      k. Money Orders And Counterfeit Paper Currency ............................................... 8
      l. Forgery And Alteration ..................................................................................... 8
      m. Increased Cost Of Construction ....................................................................... 9
      n. Exterior Building Glass ..................................................................................... 9
      o. Equipment Breakdown ..................................................................................... 10
      p. Arson Reward for Conviction ............................................................................ 13
      q. Money And Securities ...................................................................................... 13
      r. Appurtenant Structures .................................................................................... 13
      s. Back Up Of Sewer Or Drain Water Damage ..................................................... 14
      t. Dependent Properties – Business Income ........................................................ 14
   6. COVERAGE EXTENSIONS .................................................................................... 14
      a. Newly Acquired or Constructed Property ......................................................... 14
      b. Newly Acquired Locations - Business Income .................................................. 15
      c. Personal Property Off Premises ....................................................................... 15
      d. Outdoor Trees, Shrubs, Plants, and Lawns ..................................................... 15
      e. Outdoor Signs .................................................................................................. 15
      f. Personal Effects ............................................................................................... 16
      g. Valuable Papers And Records .......................................................................... 16
      h. Accounts Receivable ....................................................................................... 16
      i. Salespersons Samples ..................................................................................... 17
      j. Business Income and Extra Expense –Increased Period of Restoration Due to Ordinance or Law . 17
      k. Removal Permit ................................................................................................ 17
B. EXCLUSIONS ............................................................................................................... 17
C. LIMITS OF INSURANCE .............................................................................................. 21
D. DEDUCTIBLES ............................................................................................................. 22
E. PROPERTY LOSS CONDITIONS ................................................................................. 22
F. PROPERTY GENERAL CONDITIONS .......................................................................... 27
G. OPTIONAL COVERAGES ............................................................................................. 28
   1. Employee Dishonesty Optional Coverage ............................................................. 28
   2. Ordinance or Law Optional Coverages .................................................................. 29
   3. Optional Amendment of Coverage - Exclude Theft ................................................ 31
H. PROPERTY DEFINITIONS ........................................................................................... 31

ACP BPFM3047086185                          INSURED COPY                          34    07732

PB 00 02 01 08

# PREMIER BUSINESSOWNERS
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section H. PROPERTY DEFINITIONS.

## A. COVERAGES

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. COVERED PROPERTY

Covered Property, as used in this policy, means Buildings and Business Personal Property as described in paragraphs a. and b. in this section A.1., if a Limit of Insurance is shown in the Declarations for that type of property.

HOWEVER, there is no coverage for property described under A.2. PROPERTY NOT COVERED, unless an exception is stated for that property.

a. **Buildings**, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery;

(b) Equipment; and

(c) Tanks, including pumps;

(4) Your personal property in apartments or rooms furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings;

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and

(e) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, mast and towers;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures; and

(7) Garages, storage buildings, spas, swimming pools, fences, retaining walls or other appurtenant structures usual to your business, but only if:

(a) Coverage is not provided for such structures under the Appurtenant Structures Additional Coverage; and

(b) Such structures are then described in the Declarations.

b. **Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following:

(1) Personal property you own that is used in your business, including but not limited to furniture, fixtures, machinery, equipment and "stock";

(2) Personal property of others that is in your care, custody or control, except as otherwise provided in Condition 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS;

(3) Tenant improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

PB 00 02 01 08

INSURED COPY

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove; and

(4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under paragraph (2) personal property of others above.

2. **PROPERTY NOT COVERED**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in:

(1) Money and Securities Additional Coverage; or

(2) Employee Dishonesty under Section G. OPTIONAL COVERAGES;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops;

e. Outdoor signs (other than signs attached to buildings), trees, shrubs, plants or lawns (other than "stock" of trees, shrubs or plants), all except as provided in the:

(1) Outdoor Trees, Shrubs, Plants and Lawns Coverage Extension; or

(2) Outdoor Signs Coverage Extension;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Gasoline or diesel fuel contained in above ground or underground storage tanks;

h. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect it or not) from that other insurance;

i. The cost to research, replace or restore the information on "valuable papers and records", including those which exist on "electronic media or records", except as provided in the Valuable Papers Coverage Extension;

j. Grain, hay, straw or other crops while outside of buildings; or

k. Exterior building glass, except as provided in the Exterior Building Glass Additional Coverage.

3. **COVERED CAUSES OF LOSS**

This Coverage Form insures against Risks Of Direct Physical Loss unless the loss is:

a. Excluded in Section B. EXCLUSIONS;

b. Limited in Paragraph A.4. LIMITATIONS in this section; or

c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS;

that follow.

4. **LIMITATIONS**

a. We will not pay for loss of or damage to:

(1) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to Money and Securities Additional Coverage.

(2) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(3) Fences, spas, outdoor swimming pools and related equipment, retaining walls, pavements, bulkheads, pillars, wharves or docks caused by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not.

(4) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

INSURED COPY

**PB 00 02 01 08**

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

b. We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by one of the "specified causes of loss" or building glass breakage. This limitation does not apply to:

(1) Glass that is part of the interior of a building or structure;

(2) Containers of property held for sale; or

(3) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $250 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **ADDITIONAL COVERAGES**

a. **Debris Removal**

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) The most we will pay under this Debris Removal Additional Coverage is:

(a) 25% of the amount we pay for the direct physical loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

This Debris Removal Additional Coverage will not increase the Limits of Insurance provided by this policy.

HOWEVER, this limitation does not apply to any additional debris removal limit provided in paragraph (4) below.

(3) This Debris Removal Additional Coverage does not apply to costs to:

(a) Extract "pollutants" from land or water;

(b) Remove, restore or replace polluted land or water; or

(c) Extract "pollutants" from Covered Property.

(4) If:

(a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

(b) The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph (2) above;

we will pay up to an additional $25,000 for each premises in any one occurrence under this Debris Removal Additional Coverage.

b. **Preservation Of Property**

(1) If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(a) While it is being moved or while temporarily stored at another premises; and

(b) Only if the loss or damage occurs within 45 days after the property is first moved.

(2) This Preservation of Property Additional Coverage will not increase the Limits of Insurance provided by this policy.

c. **Fire Department Service Charge**

(1) When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we

will pay up to $25,000 for your liability for fire department service charges:

    (a)  Assumed by contract or agreement prior to loss; or

    (b)  Required by local ordinance.

(2)  The limit for this Fire Department Service Charge Additional Coverage is in addition to the Limits of Insurance.

(3)  No deductible applies to this Fire Department Service Charge Additional Coverage.

**d.  Fire Extinguisher Recharge**

(1)  We will pay the expense you incur to recharge portable fire extinguishers when used to combat a covered fire.

(2)  This Fire Extinguisher Recharge Additional Coverage is not subject to the Limits of Insurance.

(3)  No deductible applies to this Fire Extinguisher Recharge Additional Coverage.

**e.  Collapse**

(1)  With respect to buildings:

    (a)  Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of a building cannot be occupied for its intended purpose;

    (b)  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

    (c)  A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of a building; and

    (d)  A building that is standing, or any part of a building that is standing, is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(2)  We will pay for direct physical loss of or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if the collapse is caused by one or more of the following:

    (a)  The "specified causes of loss" or breakage of building glass, all only as insured against in this policy;

    (b)  Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    (c)  Insect or vermin damage that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    (d)  Weight of people or personal property;

    (e)  Weight of rain, ice, hail or snow that collects on a roof;

    (f)  Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

       HOWEVER, if the collapse occurs after construction, remodeling, or renovation is complete and is caused at least in part by a cause of loss listed in (2)(a) through (2)(e) above, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling, or renovation, contributes to the collapse.

(3)  With respect to the following property:

    (a)  Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, mast or towers;

    (b)  Awnings, gutters and downspouts;

    (c)  Yard fixtures;

    (d)  Outdoor swimming pools;

    (e)  Fences;

**PB 00 02 01 08**

(f) Bulkheads, pilings, piers, wharves and docks;

(g) Beach or diving platforms or appurtenances;

(h) Retaining walls; and

(i) Walks, roadways and other paved surfaces;

If the collapse is caused by a cause of loss listed in (2)(b) through (2)(f) above, we will pay for loss or damage to that property in (a) through (I) above only if:

(i) Such loss or damage is a direct result of the collapse of a building insured under this policy; and

(ii) The property is Covered Property under this policy.

(4) If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building or any part of a building, we will pay for loss of or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse was caused by a Cause of Loss listed in (2)(a) through (2)(f) above;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in (3) above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this paragraph (4) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(5) This Collapse Additional Coverage *will not* increase the Limits of Insurance provided in this policy.

f.   **Water Damage, Other Liquids, Powder Or Molten Material Damage**

(1) If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

(2) We will not pay the cost to repair any defect that caused the loss or damage except as provided in Equipment Breakdown Additional Coverage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(a) Results in discharge of any substance from an automatic fire protection system; or

(b) Is directly caused by freezing.

(3) This Water Damage Additional Coverage will not increase the Limits of Insurance provided in this policy.

g.   **Business Income**

(1) **Business Income with Ordinary Payroll Limitation**

(a) We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

(b) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

(ii) Any area within the building or on the site at which the described premises are located, if that area services,

or is used to gain access to, the described premises.

(c) We will only pay for loss of "business income" that you sustain during the "period of restoration" and that occurs within the number of consecutive months shown in the Declarations for Business Income – Actual Loss Sustained after the date of direct physical loss or damage. We will only pay for "ordinary payroll expenses" for the number of days shown in the Declarations for Ordinary Payroll Limit following the date of direct physical loss or damage.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a "business income" loss payable under this policy, we will pay for the actual loss of "business income" you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the "business income" amount that would have existed if no direct physical loss or damage had occurred; or

ii. Sixty (60) consecutive days after the date determined in (2)(a)(i) above, unless a greater number of days is shown for Extended Business Income Increased Period of Indemnity in the Declarations for a designated premises.

HOWEVER, Extended Business Income does not apply to loss of "business income" incurred as a result of unfavorable business conditions caused by the impact

of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of a "business income" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) This Business Income Additional Coverage is not subject to the Limits of Insurance.

h. **Extra Expense**

(1) We will pay necessary "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(3) We will only pay for "extra expense" that occurs within the number of consecutive months shown in the Declarations for Extra Expense after the date of direct physical loss or damage.

(4) This Extra Expense Additional Coverage is not subject to the Limits of Insurance.

i. **Pollutant Clean Up And Removal**

(1) We will pay your expense to extract "pollutants" from land, water or Covered Property at the described premises if the discharge, dispersal,

 INSURED COPY

PB 00 02 01 08

seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) This Pollutant Clean Up And Removal Additional Coverage does not apply to:

(a) Costs to test for, monitor or assess the existence, concentration or effects of "pollutants"; or

(b) Any penalties or assessments that may be charged against you due to any statute, regulation or ordinance.

But we will pay for testing which is performed in the course of extracting the "pollutants" from land or water.

(3) The most we will pay for each location under this Pollutant Clean Up And Removal Additional Coverage is $25,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

(4) The limit for this Pollutant Clean Up And Removal Additional Coverage is in addition to the Limits of Insurance.

j. **Civil Authority**

(1) We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(2) The coverage for "business income" will begin 72 hours after the time of that action and will apply for a period of up to 30 days after coverage begins.

(3) The coverage for necessary "extra expense" will begin immediately after the time of that action and ends:

(a) 30 days after the time of that action; or

(b) When your "business income" coverage ends;

whichever is later.

(4) This Civil Authority Additional Coverage is not subject to the Limits of Insurance.

k. **Money Orders And Counterfeit Paper Currency**

(1) We will pay for loss due to the good faith acceptance of:

(a) Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

(b) Counterfeit United States or Canadian paper currency;

in exchange for merchandise, "money" or services or as part of a normal business transaction.

(2) The most we will pay for any loss under this Money Orders And Counterfeit Paper Currency Additional Coverage is $5,000.

(3) The limit for this Money Orders And Counterfeit Paper Currency Additional Coverage is in addition to the Limits of Insurance.

l. **Forgery And Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $10,000, unless a higher Limit of Insurance is shown in the Declarations.

(4) The limit for this Forgery And Alteration Additional Coverage is in addition to the Limits of Insurance.

m. **Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in paragraphs (3) through (9) of this Increased Cost Of Construction Additional Coverage.

(3) The ordinance or law referred to in paragraph (2) of this Increased Cost Of Construction Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Increased Cost Of Construction Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Increased Cost Of Construction Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(6) The most we will pay under this Increased Cost Of Construction Additional Coverage, for each described building insured under this Coverage Form, is $25,000.

The limit for this Increased Cost Of Construction Additional Coverage is in addition to the Limits of Insurance.

(7) With respect to this Increased Cost Of Construction Additional Coverage:

(a) We will not pay any costs:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, of if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises for a building of like, kind and quality and of the same size and use.

(8) This Increased Cost Of Construction Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Increased Cost Of Construction Additional Coverage.

(9) The costs addressed in Condition 5. Loss Payment of Section E. PROPERTY LOSS CONDITIONS do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Increased Cost Of Construction Additional Coverage, as stated in paragraph (6) above, is not subject to such limitation.

n. **Exterior Building Glass**

(1) We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, that is part of the exterior of a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in

**PB 00 02 01 08**

your care, custody or control and you must be contractually obligated to repair of replace it. We will also pay for necessary:

(a) Expenses incurred to put up temporary plates or board up openings;

(b) Repair or replacement of encasing frames; and

(c) Expenses incurred to remove or replace obstructions.

(2) Paragraph A.3., COVERED CAUSES OF LOSS and Section B., EXCLUSIONS do not apply to this Exterior Building Glass Additional Coverage, except for:

(a) Paragraph B.1.b., Earth Movement;

(b) Paragraph B.1.c., Governmental Action;

(c) Paragraph B.1.d., Nuclear Hazard;

(d) Paragraph B.1.f., War And Military Action; and

(e) Paragraph B.1.g., Water.

(3) Exclusions. We will not pay for loss or damage caused by or resulting from:

(a) Wear and tear;

(b) Hidden or latent defect;

(c) Corrosion; or

(d) Rust.

(4) The most we pay under this Exterior Building Glass Additional Coverage is the Building Limit of Insurance shown in the Declarations.

HOWEVER, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property, the most we will pay under this Exterior Building Glass Additional Coverage is the Business Personal Property Limit of Insurance shown in the Declarations.

o. **Equipment Breakdown**

(1) We will pay for direct physical damage to Covered Property caused by or resulting from an "accident" to "covered equipment".

If an initial "accident" causes other "accidents", all will be considered one "accident". All "accidents" that

are the result of the same event will be considered one "accident".

(2) The following coverages also apply to loss caused by or resulting from an "accident" to "covered equipment". These coverages do not provide additional amounts of insurance.

(a) **Expediting Expenses**

With respect to your damaged Covered Property, we will pay, up to $50,000, the reasonable extra cost to:

(i) Make temporary repairs; and

(ii) Expedite permanent repairs or replacement.

(b) **Hazardous Substances**

We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in (2)(c)(ii) below.

Additional costs mean those beyond what would have been required had no "hazardous substance" been involved.

The most we will pay for loss, damage or expense under this coverage, including actual loss of "business income" you sustain and necessary "extra expense" you incur is $50,000.

(c) **Perishable Goods**

(i) We will pay for physical damage to "perishable goods" due to spoilage.

(ii) We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

 INSURED COPY

(iii) We will also pay necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(iv) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with Condition 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS.

The most we will pay for loss, damage or expenses under this coverage is $50,000.

(d) **Service Interruption**

(i) The insurance provided under the Business Income Additional Coverage, the Extra Expense Additional Coverage and for (c) Perishable Goods in this Equipment Breakdown Additional Coverage, is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water or steam, internet access, telecommunications

services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

(ii) Service Interruption coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident".

(iii) The most we will pay for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense or Perishable Goods.

(e) **Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost data.

The most we will pay for loss or expense under this coverage, including actual loss of "business income" you sustain and necessary "extra expense" you incur, is $50,000.

(f) **Environmental, Safety and Efficiency Improvements**

The following provision does not apply to property insured on an "actual cash value" basis.

If "covered equipment" requires replacement due to loss or damage caused by or resulting from an "accident", we will pay your additional cost to replace with equipment that is better for the environment, more efficient or safer than the equipment being replaced.

HOWEVER, we will not pay more under this additional coverage than 125% of what the cost would have been to repair or replace with like kind and quality.

This provision does not increase any of the applicable limits.

**PB 00 02 01 08**

(3) **Additional Exclusions**

(a) We will not pay under this Equipment Breakdown Additional Coverage for loss,damage or expense caused by or resulting from:

(i) Any defect, programming error, programming limitation, computer virus, malicious code, loss of data loss of access, loss of use, loss of functionality or other condition within "electronic media and records". But if an "accident" results, we will pay for the resulting loss, damage or expense; or

(ii) Any of the following tests:

i. A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

ii. An electrical insulation breakdown test of any type of electrical equipment.

(b) With respect to (d) Service Interruption coverage, we will not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except for steam or centrifugal explosion); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood; or earth movement.

(c) We will not pay under this Equipment Breakdown Additional Coverage for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident":

Any mold, fungus, mildew or yeast, including any spores or toxins produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to,

costs arising from clean up, removal, or abatement of such mold, fungus, mildew or yeast, spores or toxins.  However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that spoilage is covered under (c) Perishable Goods coverage.

(d) We will not pay under this Equipment Breakdown Additional Coverage for any loss or damage to animals.

(4) **Additional Conditions**

(a) **Suspension**

Whenever "covered equipment" is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice of reinstatement from us.

(b) **Jurisdictional Inspections**

If any property that is "covered equipment" under this Equipment Breakdown Additional Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

(5) The most we will pay for loss, damage or expense under this Equipment Breakdown Additional Coverage arising from any one "accident" is the applicable Limit of Insurance shown in the Declarations.

This Equipment Breakdown Additional Coverage will not increase the Limits of Insurance provided by this policy.

p. **Arson Reward for Conviction**

(1) In the event that a covered fire loss was the result of an act of arson, we will pay a reward to anyone, other than paid investigators, who gives legal authorities information that leads to the conviction of anyone who committed such arson.

(2) We will pay up to 10 percent of the amount of the insured fire loss or $10,000, whichever is less. This payment is the most we will pay in any one occurrence, regardless of the number of persons providing information or convicted of arson.

(3) The limit for this Arson Reward for Conviction Additional Coverage is in addition to the Limits of Insurance.

(4) No deductible applies to this Arson Reward for Conviction Additional Coverage.

q. **Money And Securities**

(1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit by direct route between any of these places, resulting directly from:

(a) Theft, meaning any act of stealing;

(b) Disappearance; or

(c) Destruction.

(2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(a) Resulting from accounting or arithmetical errors or omissions;

(b) Due to the giving or surrendering of property in any exchange or purchase;

(c) Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a

continuous recording instrument in the device; or

(d) From an unattended motor vehicle.

(3) The most we will pay under this Money and Securities Additional Coverage for loss in any one occurrence is:

(a) **Inside the Premises**, $10,000 for "money" and "securities" while:

(i) In or on the described premises; or

(ii) Within a bank or savings institution;

unless a higher Limit of Insurance for "money" and "securities" inside the premises is shown in the Declarations; and

(b) **Outside the Premises** (Limited – loss from an unattended motor vehicle is excluded), $10,000 for "money" and "securities" while anywhere else, unless a higher Limit of Insurance for "money" and "securities" outside the premises is shown in the Declarations.

(4) All loss:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

(6) The limit for this Money and Securities Additional Coverage is in addition to the Limits of Insurance.

r. **Appurtenant Structures**

(1) We will pay for direct physical loss of or damage to any separate garages, storage buildings, swimming pools, spas, fences, retaining walls and other appurtenant structures usual to your business at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

INSURED COPY

**PB 00 02 01 08**

(2) The most we will pay for loss or damage under this Appurtenant Structures Additional Coverage in any one occurrence is 10% of the Building Limit of Insurance shown in the Declarations for that described premises.

HOWEVER, if the value of any one garage, storage building, swimming pool, spa, fence, retaining wall or other appurtenant structure exceeds $50,000, this Appurtenant Structures Additional Coverage does not apply to that structure.

(3) The limit for this Appurtenant Structures Additional Coverage is in addition to the Limits of Insurance.

s. **Back Up Of Sewer Or Drain Water Damage**

(1) For the purpose of this Back Up Of Sewer Or Drain Water Damage Additional Coverage the following definition is added;

"Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas from:

(a) The unusual and rapid accumulation or runoff of surface waters from any source;

(b) The overflow of inland or tidal waters; or

(c) Waves, tides or tidal waves.

(2) We will pay for loss of or damage to Covered Property caused by water that backs up from a sewer or drain, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water.

HOWEVER, we will not pay for loss or damage that results from sewer back-up or sump pump overflow that occurs during the period beginning 10 days before and ending 10 days after a "flood" on the insured premises.

(3) The most we will pay for loss or damage under this coverage is:

(a) $5,000 per building; or

(b) $25,000 in any one policy period, regardless of the number of losses;

unless a higher Limit of Insurance for Back Up Of Sewer Or Drain

Water Damage is shown in the Declarations.

(4) The limit of insurance that applies to coverage under this Back Up Of Sewer Or Drain Water Damage Additional Coverage includes any loss arising from Business Income Additional Coverage and Extra Expense Additional Coverage.

(5) The limit for this Back Up Of Sewer Or Drain Water Damage Additional Coverage is in addition to the Limits of Insurance.

t. **Dependent Properties – Business Income**

(1) We will pay for the actual loss of "business income" you sustain due to the necessary and unavoidable suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss.

(2) We will only pay for loss of "business income" that occurs within 12 consecutive months after the date of direct physical loss or damage.

(3) This Dependent Properties – Business Income Additional Coverage is not subject to the Limits of Insurance.

6. **COVERAGE EXTENSIONS**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows.

a. **Newly Acquired or Constructed Property**

(1) You may extend the insurance that applies to:

(a) Buildings to apply to:

(i) Your new buildings while being built on the described premises; and

(ii) Buildings you acquire at locations, other than the

described premises, intended for:

i. Similar use as the building described in the Declarations; or

ii. Use as a warehouse.

(b) The most we will pay for loss or damage under this Coverage Extension for buildings is $1,000,000 for each building.

(2) You may extend the insurance that applies to Business Personal Property to apply to that property at any location you acquire, other than at fairs or exhibitions.

The most we will pay for loss or damage under this Coverage Extension for Business Personal Property is $500,000 at each premises.

(3) Insurance under this Newly Acquired or Constructed Property Coverage Extension for each newly acquired or constructed premises will end when any of the following first occurs:

(a) This Policy expires;

(b) 180 days after you acquire or begin to construct the property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

b. **Newly Acquired Locations - Business Income**

(1) You may extend the insurance that applies to Business Income Additional Coverages to apply to property at any location you newly acquire, other than temporary locations such as fairs or exhibitions, whether attended regularly or not.

(2) The most we will pay for loss under this Newly Acquired Locations - Business Income Coverage Extension is the lesser of:

(a) The actual loss of "business income" you sustain, as provided for and described under the Business Income Additional Coverage; or

(b) $100,000.

(3) This insurance will end the earlier of:

(a) The policy expiration date;

(b) 180 days after you acquire the property; or

(c) You report the property to us.

We will charge you any additional premium from the date you acquire the property.

c. **Personal Property Off Premises**

You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than "money", "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate.

The most we will pay for loss or damage under this Personal Property Off Premises Coverage Extension is $15,000.

d. **Outdoor Trees, Shrubs, Plants, and Lawns**

(1) You may extend the insurance provided by this policy to apply to your outdoor trees, shrubs, plants and lawns (other than "stock"), including debris removal expense, caused by or resulting from any of the following Causes of Loss:

Fire; Lightning; Explosion; Aircraft or vehicles; Riot or civil commotion; Vandalism; or Theft.

(2) The most we will pay for loss or damage under this Outdoor Trees, Shrubs, Plants, and Lawns Coverage Extension is $10,000 in any one occurrence, unless a higher limit for outdoor trees, shrubs, plants, and lawns is shown in the Declarations.

(3) The Debris Removal Additional Coverage does not apply to this Outdoor Trees, Shrubs, Plants, and Lawns Coverage Extension.

e. **Outdoor Signs**

(1) You may extend the insurance provided by this policy to apply to your outdoor signs, including debris removal expense.

**PB 00 02 01 08**

(2) The most we will pay for loss or damage under this Outdoor Signs Coverage Extension is $2,500 in any one occurrence, unless a higher limit for outdoor signs is shown in the Declarations.

(3) The Debris Removal Additional Coverage does not apply to this Outdoor Signs Coverage Extension.

f. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees.

HOWEVER, personal effects does not include:

(1) Tools or equipment used in your business; or

(2) "Money", "securities" or jewelry.

The most we will pay for loss or damage under this Personal Effects Coverage Extension is $10,000 in any one occurrence, but not more than $500 for the personal effects of any one individual.

g. **Valuable Papers And Records**

(1) You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Valuable Papers And Records Coverage Extension includes the cost to research lost information on "valuable papers and records", including those which exist on "electronic media and records", for which duplicates do not exist.

(2) This Valuable Papers And Records Coverage Extension does not apply to:

(a) Property held as samples or for delivery after sale;

(b) Property in storage away from the premises shown in the Declarations.

(3) The most we will pay under this Valuable Papers And Records Coverage Extension for loss of or damage to "valuable papers and records", including those which exist on "electronic media and records", in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

HOWEVER, for "valuable papers and records", including those which exist on "electronic media and records", not at the described premises, the most we will pay is $25,000.

(4) Section B. EXCLUSIONS of this Coverage Form does not apply to this Valuable Papers And Records Coverage Extension except for:

(a) Paragraph B.1.c., Governmental Action;

(b) Paragraph B.1.d., Nuclear Hazard;

(c) Paragraph B.1.f., War And Military Action;

(d) Paragraph B.2.e., Dishonesty;

(e) Paragraph B.2.f., False Pretense;

(f) Paragraph B.3.; and

(g) The Accounts Receivable and "Valuable Papers And Records" Exclusions.

h. **Accounts Receivable**

(1) You may extend the insurance that applies to Business Personal Property (or that applies to your Buildings, if Business Personal Property is not covered) to apply to your records of accounts receivable. We will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Accounts Receivable Coverage Extension for loss or damage in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For records of accounts receivable not at the described premises, the most we will pay is $25,000.

(3) Section B. EXCLUSIONS of this Coverage Form does not apply to this Accounts Receivable Coverage Extension except for:

(a) Paragraph B.1.c., Governmental Action;

(b) Paragraph B.1.d., Nuclear Hazard;

(c) Paragraph B.1.f., War And Military Action;

(d) Paragraph B.2.f., Dishonesty;

(e) Paragraph B.2.g., False Pretense;

(f) Paragraph B.3.; and

(g) The Accounts Receivable and "Valuable Papers And Records" Exclusions.

i. **Salespersons Samples**

(1) You may extend the insurance that applies to Business Personal Property to apply to salespersons samples while away from the described premises.

(2) The most we will pay under this Salespersons Samples Coverage Extension for loss or damage in any one occurrence is $10,000.

j. **Business Income and Extra Expense –Increased Period of Restoration Due to Ordinance or Law**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the "period of restoration" of "operations" caused by or resulting from the

enforcement of any ordinance or law that:

(1) Regulates the construction or repair of any property;

(2) Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

(3) Is in force at the time of loss.

k. **Removal Permit**

If Covered Personal Property is removed to a new premise that is described in the Declarations, you may extend this insurance to include that Covered Personal Property at each premise during the removal. Coverage at each premises will apply in the proportion that the value at each premises bears to the value of all Covered Personal Property being removed. This permit applies up to 30 days after the date Covered Personal Property is first removed at the previous premises; after that, this Removal Permit Coverage Extension does not apply at the previous premises.

B. **EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

a. **Ordinance Or Law**

The enforcement of any ordinance or law:

(1) Regulating the construction, use or repair of any property; or

(2) Requiring the tearing down of any property, including the cost of removing its debris; or

(3) Requiring the removal or disposal of "pollutants".

This Ordinance Or Law exclusion applies whether the loss results from:

(1) An ordinance or law that is enforced even if the property has not been damaged; or

(2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

PB 00 02 01 08

b. **Earth Movement**

(1) Earthquake, including any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in (1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust, or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, including but not limited to radon gas, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Off-Premises Services**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump, except as provided under the Back Up Of Sewer Or Drain Water Damage Additional Coverage; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

PB 00 02 01 08

INSURED COPY

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

HOWEVER, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

But if Water, as described in B.1.g.(1) through B.1.g.(4), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. **Consequential Losses**

Delay, loss of use or loss of market.

b. **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

c. **Leakage or Seepage**

Constant or repeated seepage or leakage of water or steam, whether continuous or intermittent from any:

(1) Heating, air conditioning or refrigerating system;

(2) Domestic appliance; or

(3) Plumbing system, including from or around any shower stall or other shower bath installation, bathtub or other plumbing fixture.

d. **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

e. **Dishonesty**

(1) Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.

(2) This exclusion applies whether of not:

(a) Such persons are acting alone or in collusion with others; or

(b) Such acts occur during the hours of employment.

(3) This exclusion does not apply to:

(a) Acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered; or

(b) Covered Property, including records of accounts receivable and "valuable papers and records", that is entrusted to others who are carriers for hire.

f. **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

h. **Collapse**

Collapse, except as provided in the Collapse Additional Coverage. But if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

i. **Pollutants**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**PB 00 02 01 08**

j. **Other Types Of Loss**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking, bulging or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Soil Conditions including, but not limited to:

(a) Corrosive action;

(b) Chemicals, compounds, elements, suspensions or gels in the soil; or

(c) The formation of crystals in the soil;

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching; or

But if an excluded cause of loss that is listed in paragraphs (1) through (7) above results in a "specified cause of loss", "accident" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

3. We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.d. But if an excluded cause of loss that is listed in B.3.a. through B.3.d. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b. **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. **Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

d. **Errors in Data Processing:** Human errors or omissions in installing, testing, processing, recording or storing information on "electronic media and records" and electronic data processing equipment, including programming errors or faulty machine instructions.

4. **Business Income And Extra Expense Exclusions**

We will not pay for:

a. Any "extra expense", or increase of "business income" loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

b. Any other consequential loss.

5. **Accounts Receivable And "Valuable Papers And Records" Exclusions**

The following additional exclusions apply to the Accounts Receivable and "Valuable Papers And Records" Coverage Extensions:

a. We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

   (1) Programming errors or faulty machine instructions;

   (2) Faulty installation or maintenance of data processing equipment or component parts;

But we will pay for direct loss or damage caused by lightning.

b. Applicable to "Valuable Papers and Records" only:

We will not pay for loss or damage caused by or resulting from any errors or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for the direct loss or damage caused by the fire or explosion.

c. Applicable to Accounts Receivable only:

We will not pay for:

   (1) Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

   (2) Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

   (3) Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## C. LIMITS OF INSURANCE

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as otherwise provided in this Section.

2. The limits applicable to Additional Coverages are in addition to the Limit of Insurance only if so indicated in that Section of this Coverage Form.

3. The limits applicable to the Coverage Extensions are in addition to the Limits of Insurance.

## 4. Inflation Guard – Building

a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

   (1) The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

   (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

   (3) The number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

Example:

If: The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last Policy change) is 146.

The amount of increase is

$100,000 x .08 x (146 / 365) = $3,200.

c. The Inflation Guard percentage for Buildings will be the percentage selected by you at the inception date or the most recent renewal date of this policy.

## 5. Inflation Guard - Business Personal Property

a. The Limit of Insurance for Business Personal Property will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

   (1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy renewal date, or any other policy change amending the Limit of Insurance, times

   (2) The percentage of increase shown in the Declarations, expressed as a decimal (example: 2% is .02), times

   (3) The number of days since the beginning of the current policy year, or since the effective date of the most recent policy change amending the Business Personal Property limit, divided by 365.

**PB 00 02 01 08**

Example:

If: The applicable limit is $150,000; and

The annual percentage increase is 3%; and

The number of days since the beginning of the policy year (or last policy change) is 146;

Then the amount of increase is $150,000 x .03 x (146 / 365) = $1,800.

c. The Inflation Guard percentage for Business Personal Property will be the average annual Index shown in the Declarations. This percentage may change at each renewal date.

In no event will the Limit of Insurance be reduced unless you specifically request us to do so.

6. **Business Personal Property Limit – Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

D. **DEDUCTIBLES**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the Exterior Building Glass Additional Coverage in any one occurrence is $250.

But this $250 Deductible will not increase the Deductible shown in the Declarations. This $250 Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

a. Fire Department Service Charge;

b. Fire Extinguisher Recharge;

c. Business Income;

d. Extra Expense;

e. Civil Authority; and

f. Arson Reward for Conviction.

E. **PROPERTY LOSS CONDITIONS**

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other, and will advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss of or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination.

 INSURED COPY

Also keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

HOWEVER, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, amount of loss claimed and a detailed description of each item.

(6) As often as may be reasonably required, permit us to inspect the damaged property and examine your books and records, including financial records and tax returns.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations" as quickly as possible.

b. We may examine any insured or their employee under oath, while not in the presence of any other insured or employee, at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. If a written transcript is prepared of the testimony, then at our request your answers under oath must be signed under penalty of perjury.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

5. **Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

(1) Pay the value of lost or damaged property as described in e. below;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss, provided you have complied with all of the conditions set forth in paragraph 3. above.

d. We will not pay you more than your financial interest in the Covered Property.

e. Except as provided in (2) through (10) below, we will determine the value of Covered Property as follows:

(1) At replacement cost without deduction for depreciation, subject to the following:

(a) If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts, subject to E.5.b. above:

(i) The Limit of Insurance under this policy that

**PB 00 02 01 08**

applies to the lost or damaged property;

(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

    i.   Of comparable material and quality; and

    ii.   Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

(b) If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance under this policy that applies to the property:

(i) The "actual cash value" of the lost or damaged property; or

(ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

(c) You may make a claim for loss or damage covered by this insurance on an "actual cash value" basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an "actual cash value" basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(d) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(2) If the "Actual Cash Value – Buildings" option applies, as shown in the Declarations, Paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at "actual cash value".

(3) The following property at "actual cash value":

(a) Used or second-hand merchandise held in storage or for sale;

(b) Property of others, other than leased personal property you have a contractual responsibility to insure, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts;

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

(6) "Valuable papers and records", including those which exist on "electronic media or records" (other than prepackaged software programs), at the cost of:

(a) Blank materials for reproducing the records; and

(b) Labor to transcribe or copy the records.

This condition does not apply to "valuable papers and records" that are actually replaced or restored.

(7) Applicable only to Money and Securities Additional Coverage:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

(8) Applicable only to Accounts Receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the following method will be used:

(i) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) Adjust that total for any normal fluctuations in the amount of accounts

receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to re-establish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

(9) "Stock" you have sold but not delivered at the selling price less expenses you otherwise would have had.

(10) Business Income and Extra Expense:

(a) We will determine the amount of a "business income" loss based on:

(i) the net income of your business before the direct physical loss or damage occurred;

(ii) the likely net income of your business if no physical loss or damage occurred, but not including any likely increase in net income attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(iii) the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct

**PB 00 02 01 08**

physical loss or damage; and

(iv) other relevant sources of information, including;

i. financial records and accounting procedures;

ii. bills, invoices and other vouchers; and

iii. deeds, liens and contracts.

(b) We will determine the amount of "extra expense" based on:

(i) all expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage occurred. The following will be deducted from the total of such expenses:

i. the remaining salvage value of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

ii. any "extra expense" that is paid for by other insurance,

(ii) all necessary expenses that reduce the "business income" loss that otherwise would have been incurred.

f. Our payment for loss or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

g. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

h. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if

(1) You have complied with all of the terms of this policy, and

(2) (a) We have reached agreement with you on the amount of loss; or

(b) An appraisal award has been made.

6. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

HOWEVER if, at the time of loss, the amount of loss or damage to your property exceeded our Limit of Insurance and your property in excess of the Limit of Insurance was turned over to us, you retain your rights to recovery on such uninsured property. We will return to you a portion of any recovery on that property based upon the proportion of the loss in excess of our Limit of Insurance bears to the total loss.

7. **Resumption Of Operations**

We will reduce the amount of your:

a. Loss payable under Business Income Additional Coverage, other than "extra expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Loss payable under Extra Expense Additional Coverage to the extent you can return "operations" to normal and discontinue such "extra expense".

8. **Vacancy**

a. **Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to

the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

(i) Is not rented; or

(ii) Is not used to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs, we will:

(1) Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) Reduce by 15% the amount we would otherwise pay for the loss or damage caused by a Covered Causes of Loss not listed in (1) above.

F. **PROPERTY GENERAL CONDITIONS**

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

1. **Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form, other than the Concealment, Misrepresentation or Fraud Common Policy Condition, at any one or more locations will not affect coverage at any locations where, at the time of loss or damage, the breach of condition did not exist.

2. **Mortgageholders**

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**PB 00 02 01 08**

f.  If we cancel this policy, we will give written notice to the mortgageholder at least:

(1)  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2)  30 days before the effective date of cancellation if we cancel for any other reason.

g.  If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

3.  **No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

4.  **Policy Period, Coverage Territory**

Under this form:

a.  We cover loss or damage commencing:

(1)  During the policy period shown in the Declarations; and

(2)  Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b.  The coverage territory is:

(1)  The United States of America (including its territories and possessions);

(2)  Puerto Rico; and

(3)  Canada.

G.  **OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These Optional Coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1.  **Employee Dishonesty Optional Coverage**

a.  We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you, your partner or an officer of a closely held corporation) with the manifest intent to:

(1)  Cause you to sustain loss or damage; and also

(2)  Obtain financial benefit (other than salaries, commissions, fees,

bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(a)  Any employee; or

(b)  Any other person or organization.

b.  We will not pay for loss or damage:

(1)  Resulting from any dishonest or criminal act that you, any of your partners or any officer of a closely held corporation commit whether acting alone or in collusion with other persons; or

(2)  The only proof of which as to its existence or amount is:

(a)  An inventory computation; or

(b)  A profit and loss computation.

c.  This Employee Dishonesty Optional Coverage does not apply to any employee immediately upon discovery by:

(1)  You; or

(2)  Any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

d.  We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

e.  All loss or damage:

(1)  Caused by one or more persons; or

(2)  Involving a single act or series of related acts;

is considered one occurrence.

f.  The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

g.  We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid and regardless that previous policies were in effect, whether issued by us, any affiliated company or any other company, this coverage shall not be

cumulative from year to year or period to period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under Paragraph h. above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

(1) This Optional Coverage as of its effective date; or

(2) The prior insurance had it remained in effect.

2. **Ordinance or Law Optional Coverages**

a. **Coverage 1 - Loss to the Undamaged Portion of Building**

When the Declarations show that Ordinance or Law - Coverage 1 applies at a premises described in the Declarations and if a Covered Cause of Loss occurs to covered Building property, we will pay for the loss in value of the undamaged portion of the building as a consequence of enforcement of any ordinance or law that:

(1) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

(2) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the premises where the loss occurred; and

(3) Is in force at the time of loss.

This Coverage 1 of Ordinance or Law Optional Coverage is included within the Limit of Insurance shown in the

Declarations as applicable to the covered Building property. This portion of the Ordinance or Law Optional Coverage does not increase the Limit of Insurance.

b. **Coverage 2 - Demolition Cost and Broadened Increased Cost of Construction**

When the Declarations show that Ordinance or Law - Coverage 2 applies at a premises described in the Declarations and if a Covered Cause of Loss occurs to covered Building property:

(1) We will pay the cost to demolish and remove debris of undamaged parts of the property caused by enforcement of building, zoning, or land use ordinance or law; and

(2) In addition to the coverage provided for damaged portions of property under the Increased Cost of Construction Additional Coverage, we will also pay for the increased costs to reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required when the increased cost is a consequence of the enforcement of building, zoning or land use ordinance or law.

HOWEVER:

(a) This Coverage 2 applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

(b) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Paragraph e. of 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS does not apply.

The most we will pay for the total of all covered losses under this Coverage 2 of Ordinance or Law Optional Coverage in any one occurrence is the Limit of Insurance shown in the Declarations.

The $25,000 Limit of Insurance that applies to Increased Cost of Construction Additional Coverage is

**PB 00 02 01 08**

also increased to the Limit of Insurance shown in the Declarations.

This portion of the Ordinance or Law Optional Coverage is in addition to the Limits of Insurance.

c. **Additional Terms and Conditions of Ordinance or Law**

(1) The terms of this Ordinance or Law Optional Coverage apply separately to each building to which this Optional Coverage applies.

(2) With respect to this Ordinance or Law Optional Coverage, we will not pay for any costs associated with the enforcement of any ordinance, law, rule, or regulation which requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) Under this Ordinance or Law Optional Coverage, we will not pay for loss due to any ordinance or law that:

(a) You were required to comply with before the loss, even if the building was undamaged; and

(b) You failed to comply with.

(4) Loss Payment

(a) When Coverage 1 applies, loss or damage to the building, including loss in value of the undamaged portion of the building due to enforcement of an ordinance or law, will be determined as follows:

(i) If the property is repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

  i. The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

  ii. The Limit of Insurance applicable to the covered Building property.

(ii) If the property is not repaired or replaced, we will not pay more than the lesser of:

  i. The "actual cash value" of the building at the time of loss; or

  ii. The Limit of Insurance applicable to the covered Building property.

(b) When Coverage 2 applies, the most we will pay for the total of all covered losses for Demolition Cost and Broadened Increased Cost of Construction is the Limit of Insurance for Coverage 2.

Subject to this Limit of Insurance, the following loss payment provisions apply:

(i) For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

(ii) With respect to Broadened Increased Cost of Construction:

  i. We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same or another premises; and

  ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(iii) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises,

ACP BPFM3047086185 INSURED COPY

the most we will pay under Coverage 2 is the increased cost of construction at the same premises.

(iv) If the ordinance or law requires relocation to another premises, the most we will pay under Coverage 2 is the increased cost of construction at the new premises.

d. This Ordinance or Law Optional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Optional Coverage.

3. **Optional Amendment of Coverage - Exclude Theft**

When "– Excluding Theft" is stated in the Declarations after **Business Personal Property** coverage, then under:

a. Paragraph 3. of Section B. EXCLUSIONS, the following exclusion is added:

**Theft:** Theft or attempted theft resulting in loss of or damage to Business Personal Property.

b. The Money and Securities Additional Coverage, paragraph (1)(a) is deleted.

H. **PROPERTY DEFINITIONS**

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1. **"Accident"** means direct physical loss as follows:

a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

b. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

c. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

d. Loss of or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any

condition or event inside such equipment; or

e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. **"Actual Cash Value"** means the cost to repair or replace Covered Property, at the time of loss or damage, whether that property has sustained partial or total loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.

3. **"Business Income"** means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; plus

b. Necessary continuing normal operating expenses incurred, while "operations" are suspended, including payroll.

4. **"Covered equipment"** means Covered Property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

None of the following is "covered equipment":

a. Structure, foundation, cabinet, compartment or air supported structure or building;

b. Insulating or refractory material;

c. Sewer piping, underground vessels or piping, piping forming a part of a sprinkler system or water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

d. Dragline, excavation or construction equipment; or

e. Equipment manufactured by you for sale.

f. Vehicle, aircraft or floating vessel or any equipment mounted on such vehicle,

ACP BPFM3047086185
INSURED COPY

**PB 00 02 01 08**

aircraft or floating vessel. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power supplier will not be considered a vehicle, aircraft or floating vessel.

5. **"Dependent property"** means property owned or operated by others, not including any described premises, on whom you depend on to:

   a. Deliver materials or services to you, or to others for your account. Services does not include water, steam, fuel, communication, or power supply services.

   b. Purchase your products or services.

   c. Manufacture products for delivery to your customers under contract of sale.

   d. Attract customers to your business. But this does not include firms in the business of promoting or advertising your business.

6. **"Electronic Media and Records"** means:

   a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

   b. Data stored on such media; or

   c. Programming records used for electronic data processing or electronically controlled equipment.

7. **"Extra Expense"** means expense incurred:

   a. To avoid or minimize the suspension of business and to continue "operations":

      (1) At the described premises; or

      (2) At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations.

   b. To minimize the suspension of business if you cannot continue "operations".

   c. (1) To repair or replace any property; or

      (2) To research, replace or restore the lost information on damaged "valuable papers and records";

   to the extent it reduces the amount of loss that otherwise would have been payable under the Extra Expense Additional Coverage or the Business Income Additional Coverage.

8. **"Hazardous substance"** means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

9. **"Money"** means:

   a. Currency, coins and bank notes whether or not in current use and having a face value; and

   b. Travelers checks, register checks and money orders held for sale to the public.

10. **"Operations"** mean your business activities occurring at the described premises.

11. **"Ordinary payroll expenses"** mean payroll expenses for all your employees except:

   a. Officers;

   b. Executives;

   c. Department Managers;

   d. Employees under contract; and

   e. Additional Exemptions shown in the Declarations as:

      (1) Job Classifications; or

      (2) Employees.

   Ordinary payroll expenses include:

   (a) Payroll;

   (b) Employee benefits, if directly related to payroll;

   (c) FICA payments you pay;

   (d) Union dues you pay; and

   (e) Workers' compensation premiums.

12. **"Period of restoration"** means:

   a. For other than the Dependent Properties Additional Coverage and Business Income and Extra Expense – Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

      (1) The period of time that:

         (a) Begins the number of hours shown in the Declarations after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

         (b) Ends on the earlier of:

            (i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when business is resumed at a new permanent location.

(2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) The expiration date of this policy will not cut short the "period of restoration".

b. For Business Income and Extra Expense – Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

(1) The period of time that:

(a) Begins:

(i) At the time of direct physical loss or damage for Business Income Additional Coverage; or

(ii) Immediately after the time of direct physical loss or damage for Extra Expense Additional Coverage:

Caused by or resulting from any Covered Cause of Loss at the described premises; and

(b) Ends on the earlier of:

(i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when business is resumed at a new permanent location.

(2) "Period of restoration" includes any increased period required to repair or reconstruct the property to conform with the minimum standards or any ordinance or law, in force at the time of loss, that regulates the construction or repair,

or requires the tearing down of any property.

(3) The expiration date of this policy will not cut short the "period of restoration".

c. For Dependent Properties Additional Coverage:

(1) The period of time that:

(a) Begins:

(i) 24 hours after the time of direct physical loss or damage for Business Income Additional Coverage; or

(ii) Immediately after the time of direct physical loss or damage for Extra Expense;

Caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

(b) Ends on the earlier of:

(i) The date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when your business is resumed at a permanent new location.

(2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) The expiration date of this policy will not cut short the "period of restoration".

13. **"Perishable goods"** mean personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

PB 00 02 01 08

14. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

15. **"Securities"** mean negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) whether or not in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money" or lottery tickets held for sale.

16. **"Specified Causes of Loss"** means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss of or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

HOWEVER, damage from constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from any part of a system or appliance containing water or steam is not water damage.

17. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

18. **"Valuable papers and records"** mean inscribed, printed, or written:

a. Documents;

b. Manuscripts; and

c. Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

HOWEVER, "valuable papers and records" does not mean:

d. "Money" or "Securities";

e. Converted Data;

f. Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2002

PB 00 02 01 08

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS**
**PB 00 06 (01-01)**

# PREMIER BUSINESSOWNERS
# LIABILITY COVERAGE FORM

## TABLE OF CONTENTS

I.   COVERAGES...................................................................................................................................... 2
     COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY........................................ 2
         INSURING AGREEMENT ......................................................................................................... 2
         EXCLUSIONS ........................................................................................................................... 3
         TENANTS PROPERTY DAMAGE LEGAL LIABILITY.............................................................. 9
     COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY ......................................... 10
         INSURING AGREEMENT ....................................................................................................... 10
         EXCLUSIONS ......................................................................................................................... 10
     COVERAGE C - MEDICAL PAYMENTS........................................................................................ 13
         INSURING AGREEMENT ....................................................................................................... 13
         EXCLUSIONS ......................................................................................................................... 13
     SUPPLEMENTARY PAYMENTS - COVERAGES A AND B ........................................................... 13
II.  WHO IS AN INSURED ................................................................................................................... 15
     Automatic Additional Insureds ...................................................................................................... 16
         Co-Owners of Insured Premises............................................................................................. 16
         Controlling Interest ................................................................................................................. 16
         Grantor of Franchise or License.............................................................................................. 16
         Lessors of Leased Equipment ................................................................................................ 16
         Managers or Lessors of Leased Premises .............................................................................. 17
         Mortgagee, Assignee or Receiver........................................................................................... 17
         Owners or Other Interest from Whom Land has been Leased .................................................. 17
         State or Political Subdivisions - Permits Relating to Premises ................................................ 17
III. LIMITS OF INSURANCE AND DEDUCTIBLE................................................................................. 18
     General Aggregate Limit of Insurance (Other than Products-Completed Operations) ................... 18
     Products-Completed Operations Aggregate Limit of Insurance .................................................... 18
     Personal and Advertising Injury Limit of Insurance....................................................................... 18
     Each Occurrence Limit of Insurance ............................................................................................. 18
     Tenants Property Damage Legal Liability Limit of Insurance......................................................... 18
     Medical Payments Limit of Insurance ........................................................................................... 18
     Property Damage Deductible ........................................................................................................ 18
IV.  LIABILITY CONDITIONS ............................................................................................................... 19
     Bankruptcy ................................................................................................................................... 19
     Duties in the Event of Occurrence, Offense, Claim or Suit ........................................................... 19
     Financial Responsibility Laws ....................................................................................................... 20
     Legal Action Against Us ............................................................................................................... 20
     Separation of Insureds.................................................................................................................. 20
V.   DEFINITIONS................................................................................................................................. 21

# PREMIER BUSINESSOWNERS
# LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations,, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the Company providing this insurance.  The word "insured" means any person or organization qualifying as such under Section II.  WHO IS AN INSURED.  Other words and phrases that appear in quotation marks have special meaning.  Please refer to Section V.  DEFINITIONS.

## I.  COVERAGES

### A.  COVERAGE A - BODILY INJURY AND PROP-ERTY DAMAGE LIABILITY

#### 1.  INSURING AGREEMENT

a.  We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

1)  The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b.  This insurance applies to "bodily injury" and "property damage" only if:

1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

2)  The "bodily injury" or "property damage" occurs during the policy period; and

3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II. WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized

ACP BPFM3047086185                              INSURED COPY                              34      07767

by you to give or receive notice of an "occurrence" or claim:

1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **EXCLUSIONS**

This insurance, including any duty we have to defend "suits", does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by the insured.

This exclusion applies even if the resulting "bodily injury" or "property damage":

1) Is of a different kind, quality or degree than initially expected or intended; or

2) Is sustained by a different person, entity, real property, or personal property than that initially expected or intended.

HOWEVER, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1) That the insured would have in the absence of the contract or agreement; or

2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1) Causing or contributing to the intoxication of any person;

2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

1) Manufacture, sell or distribute alcoholic beverages;

2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

a) Requires a license; or

ACP BPFM3047086185

INSURED COPY

b) Is for the purpose of financial gain or livelihood; or

3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

d. **Laws**

Any liability or legal obligation of any insured with respect to "bodily injury" or "property damage" arising out of any of the following:

1) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, religion or religious belief, age, economic status, income, medical condition, pregnancy, parenthood or mental or physical disability;

2) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

3) The Migrant and Seasonal Agricultural Worker Protection Act;

4) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

5) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

6) Any other similar statutes, ordinances, orders, directives or regulations.

e. **Employer's Liability**

"Bodily injury" to:

1) An "employee" of the insured arising out of and in the course of:

a) Employment by the insured; or

b) Performing duties related to the conduct of the insured's business; or

2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1) above.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

HOWEVER, this subparagraph does not apply to:

i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is

ACP BPFM3047086185    INSURED COPY    34    07769

not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

HOWEVER, this subparagraph does not apply to:

i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional dis-

charge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2) Any loss, cost or expense arising out of any:

a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

b) Claim or "suit" by or on behalf of a governmental authority for damages because of test-

ACP BPFM3047086185                              INSURED COPY                              34    07770

ing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

HOWEVER, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

HOWEVER, this exclusion does not apply to:

1) A watercraft while ashore on premises you own or rent;

2) A watercraft you do not own that is:

   a) Less than 26 feet long; and

   b) Not being used to carry persons or property for a charge;

3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.2) or f.3) of the definition of  "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.  This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

1) Property you own, rent, or occupy;

2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3) Property loaned to you;

4) Personal property in the care, custody or control of the insured;

5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Other than damage by the Covered Causes of Loss provided under Tenants Property Damage Legal Liability, paragraph 1), 3) and 4) of this exclusion do not apply to "property damage" to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.  A

ACP BPFM3047086185                          INSURED COPY                          34    07771

separate limit of insurance applies to Damage To Premises Rented To You as described in Section III. LIMITS OF INSURANCE.

Paragraph 2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3), 4), 5) and 6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product", arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

HOWEVER, this exclusion does not apply if the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1) "Your product";

2) "Your work"; or

3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Bodily Injury To Any Insured** "Bodily injury" to:

1) Any insured; or

2) Any insured whenever the ultimate benefits of any indemnification will accrue directly or indirectly to any insured or the heirs of any insured.

q. **Damage To Named Insured's Property**

Any claim or "suit" for "property damage" by you or on your behalf against any other person or organization that is also a Named Insured under this policy.

r. **Abuse or Molestation**

"Bodily injury" or "property damage" arising out of:

1) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2) The negligent:

   a) Employment;

   b) Investigation;

   c) Supervision;

ACP BPFM3047086185

INSURED COPY

34    07772

d) Reporting to the proper authorities, or failure to so report; or

e) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1) above.

s. **Asbestos, Electromagnetic Emissions, Lead or Radon**

"Bodily injury" or "property damage" arising out of:

1) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

2) Electromagnetic emissions or radiation including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

3) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

4) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other

radioactive emissions or any other duty involving radon or other radioactive emissions.

t. **Employment Practices**

"Bodily injury" to:

1) A person arising out of any:

a) Refusal to employ that person;

b) Termination of that person's employment; or

c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs a), b), or c) above is directed.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

u. **Fiduciary Responsibility**

"Bodily injury" or "property damage" arising out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity.

v. **Professional Services**

"Bodily injury" or "property damage" that arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to, any:

ACP BPFM3047086185                    INSURED COPY                    34     07773

1) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

3) Supervisory, inspection, engineering, or architectural service, advice or instruction;

4) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

5) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage;

7) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

8) Ear or other body piercing service, treatment, advice or instruction; or

9) Service, treatment, advice or instruction in the practice of pharmacy.

w. **Testing, Evaluating or Consulting**

"Bodily injury" or "property damage" arising out of:

1) An error, omission, defect or deficiency:

   a) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

   b) In experimental data or the insured's interpretation of that data.

2) The reporting of or reliance upon any such test, evaluation, consultation or advice.

3. **TENANTS PROPERTY DAMAGE LEGAL LIABILITY**

   **Certain Exclusions Not Applicable**

   Exclusions c. through n., p., q., r., t., u., v. and w. do not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, if such "property damage" arises out of a Covered Cause Of Loss provided under the BUSINESSOWNERS PROPERTY COVERAGE FORM. A separate limit of insurance, called Tenants Property Damage Legal Liability Limit, applies to this coverage as described in Section III. LIMITS OF INSURANCE.

ACP BPFM3047086185                                    INSURED COPY                              34      07774

B.  **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1.  **INSURING AGREEMENT**

    a.  We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

        HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

        We may, at our sole discretion, investigate any offense and settle any claim or "suit" that may result.  But:

        1)  The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

        2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.  **EXCLUSIONS**

    This insurance, including any duty we have to defend "suits", does not apply to:

    a.  "Personal and advertising injury":

        1)  Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

        2)  Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

        3)  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

        4)  Arising out of a criminal act committed by or at the direction of any insured;

        5)  For which the insured has assumed liability in a contract or agreement.

            HOWEVER, this exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

        6)  Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

        7)  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

        8)  Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

        9)  Committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

            HOWEVER, this exclusion does not apply to Paragraphs a., b. and c. of the definition of "personal and advertising injury" under Section V. DEFINITIONS;

        10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

        11) Any liability or legal obligation of any insured arising out of any of the following:

ACP BPFM3047086185                                   INSURED COPY                                    34    07775

a) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, parenthood, religion or religious belief, age, economic status, income, medical condition, pregnancy, or mental or physical disability;

b) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

c) The Migrant and Seasonal Agricultural Worker Protection Act;

d) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

e) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

f) Any other similar statutes, ordinances, orders, directives or regulations;

12) Arising out of:

a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

b) The negligent:

i) Employment;

ii) Investigation;

iii) Supervision;

iv) Reporting to the proper authorities, or failure to so report; or

v) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph a) above;

13) To:

a) A person arising out of any:

i) Refusal to employ that person;

ii) Termination of that person's employment; or

iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs i), ii), or iii) above is directed.

This exclusion applies:

a) Whether the insured may be liable as an employer or in any other capacity; and

b) To any obligation to share damages with or repay someone else who must pay damages because of the injury;

14) Arising out of:

a) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

b) Electromagnetic emissions or radiation including but not

ACP BPFM3047086185                    INSURED COPY                    34    07776

limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

c) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

d) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions;

15) That arises out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity;

16) That arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to any:

a) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

b) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

c) Supervisory, inspection, engineering, or architectural service, advice or instruction;

d) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

e) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

f) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage.

g) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

h) Ear or other body piercing service, treatment, advice or instruction; or

i) Service, treatment, advice or instruction in the practice of pharmacy; or

17) Arising out of:

a) An error, omission, defect or deficiency:

i) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

ii) In experimental data or the insured's interpretation of that data.

ACP BPFM3047086185                              INSURED COPY                              34      07777

b) The reporting of or reliance upon any such test, evaluation, consultation or advice.

b. Any loss, cost or expense arising out of any:

1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any responding to, or assessing the effects of, "pollutants".

C. **COVERAGE C - MEDICAL PAYMENTS**

1. **INSURING AGREEMENT**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

1) On premises you own or rent;

2) On ways next to premises you own or rent; or

3) Because of your operations;

provided that:

1) The accident takes place in the "coverage territory" and during the policy period;

2) The expenses are incurred and reported to us within one year of the date of the accident; and

3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

1) First aid administered at the time of an accident;

2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **EXCLUSIONS**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under COVERAGE A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

D. **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

ACP BPFM3047086185                                INSURED COPY                                34      07778

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

1) Agrees in writing to:

a) Cooperate with us in the investigation, settlement or defense of the "suit";

b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

c) Notify any other insurer whose coverage is available to the indemnitee; and

d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

2) Provides us with written authorization to:

a) Obtain records and other information related to the "suit"; and

b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.2) of Section I. COVERAGE, A. COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

ACP BPFM3047086185                          INSURED COPY                          34    07779

II. **WHO IS AN INSURED**

1. If you are:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. A trust, you are an insured. Your trustee or co-trustees are also insureds, but only with respect to their duties as a trustee in connection with your property, operations and activities.

   e. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

      HOWEVER, none of these "employees" is an insured for:

      1) "Bodily injury" or "personal and advertising injury":

         a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph 1)a) above;

         c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs 1)a) or b) above; or

         d) Arising out of his or her providing or failing to provide professional health care services.

      2) "Property damage" to property:

         a) Owned, occupied or used by; or

         b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

         you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      1) With respect to liability arising out of the maintenance or use of that property; and

      2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the

conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

HOWEVER, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

HOWEVER:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. COVERAGE A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. COVERAGE B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

5. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

6. **Automatic Additional Insureds**

Any of the following persons or organizations are automatically insureds when you and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

a. **Co-Owners of Insured Premises**

Any person or organization with whom you co-own a premises insured under this policy is an additional insured, but only with respect to their liability as the co-owner of such premises.

HOWEVER, their status as additional insured under this policy ends when you cease to co-own such premises with that person or organization.

b. **Controlling Interest**

Any person or organization that has a controlling interest in you is an additional insured, but only with respect to liability arising out of:

1) Their financial control of you; or

2) Their ownership, maintenance or control of premises you lease or occupy;

subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when they cease to have such controlling interest in you.

c. **Grantor of Franchise or License**

Any person or organization that has granted you a franchise or license by written contract or agreement is an additional insured, but only with respect to their liability as the grantor of a franchise or license to you.

HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you granting the franchise or license ends.

d. **Lessors of Leased Equipment**

Any person or organization from whom you lease equipment by written contract or agreement is an additional insured, but only with respect to their liability arising out of the maintenance,

ACP BPFM3047086185                              INSURED COPY                              34    07781

operation or use by you of the equipment leased to you by that person or organization, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to "bodily injury" or "property damage" arising out of, in whole or in part, or results from, in whole of in part, the active negligence of such person or organization.

HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you for such leased equipment ends.

e. **Managers or Lessors of Leased Premises**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

f. **Mortgagee, Assignee or Receiver**

Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

g. **Owners or Other Interest from Whom Land has been Leased**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your maintenance or use of that part of the land leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to lease that land.

h. **State or Political Subdivisions - Permits Relating to Premises**

Any state or political subdivision which has issued a permit in connection with premises insured by this policy which you own, rent, or control is an additional insured, but only with respect to the following hazards:

1) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decoration and similar exposures;

2) The construction, erection, or removal of elevators; or

3) The ownership, maintenance, or use of any elevators covered by this insurance.

HOWEVER, such state or political subdivision's status as additional insured under this policy ends when the permit ends.

 INSURED COPY

## III. LIMITS OF INSURANCE AND DEDUCTIBLE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. **General Aggregate Limit of Insurance** (Other than Products-Completed Operations)

    The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under COVERAGE C;

    b. Damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under COVERAGE B.

    The General Aggregate Limit applies separately to each of your described premises. For the purposes of this provision, premises means involving the same or connecting lots, or premises whose connection is interrupted only by a public street, roadway or waterway, or railroad right-of-way.

3. **Products-Completed Operations Aggregate Limit of Insurance**

    The Products-Completed Operations Aggregate Limit is the most we will pay under COVERAGE A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. **Personal and Advertising Injury Limit of Insurance**

    Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under COVERAGE B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. **Each Occurrence Limit of Insurance**

    Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under COVERAGE A; and

    b. Medical expenses under COVERAGE C

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. **Tenants Property Damage Legal Liability Limit of Insurance**

    Subject to 5. above, the Tenants Property Damage Legal Liability Limit is the most we will pay under COVERAGE A for damages because of all "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one "occurrence".

7. **Medical Payments Limit of Insurance**

    Subject to 5. above, the Medical Payments Limit is the most we will pay under COVERAGE C for all medical expenses because of "bodily injury" sustained by any one person.

8. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

9. **Property Damage Deductible**

    If a deductible amount is shown in the Liability Declarations, the following provisions apply:

    a. If a deductible amount for Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one "occurrence".

ACP BPFM3047086185                           INSURED COPY                           34    07783

b.  If a deductible amount for Car Wash Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one "claim".

c.  If we pay all or any part of a deductible to settle any claim or "suit", upon notification of such payment by us, you shall promptly reimburse us for the amount of the deductible that has been paid by us.

IV.  **LIABILITY CONDITIONS**

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

1.  **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2.  **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a.  You and any insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense that may result in a claim.  To the extent possible, notice should include:

        1)  How, when and where the "occurrence" or offense took place;

        2)  The names and addresses of any injured persons and witnesses; and

        3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.  If a claim is made or "suit" is brought against any insured, you must:

        1)  Immediately record the specifics of the claim or "suit" and the date received; and

        2)  Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

        1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        2)  Authorize us to obtain records and other information;

        3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

        4)  Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to

ACP BPFM3047086185                          INSURED COPY                          34    07784

which this insurance may also apply; and

5) Agree to be examined under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim or "suit". At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. In the event of an examination, an insured's answers must be signed.

d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Financial Responsibility Laws**

a. When this policy is certified as proof of financial responsibility for the future under the provision of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

4. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

ACP BPFM3047086185                                    INSURED COPY                                    34      07785

V.  **DEFINITIONS**

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1.  **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2.  **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment".

3.  **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  **"Coverage territory"** means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c.  All parts of the world if:

        1)  The injury or damage arises out of:

            a)  Goods or products made or sold by you in the territory described in a. above; or

            b)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        2)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.  **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker".

6.  **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  **"Hostile fire"** means one which becomes uncontrollable or breaks out from where it was intended to be.

8.  **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

9.  **"Insured contract"** means:

    a.  A contract for a lease of premises.

        HOWEVER, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury"

ACP BPFM3047086185                                          INSURED COPY                                          34    07786

or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 2) above and supervisory, inspection, architectural or engineering activities.

10. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. **"Loading or unloading"** means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, forklifts, farm machinery, farm implements and other vehicles designed for use or used principally off public roads. This includes motorized golf carts, snowmobiles, and other land vehicles designed for recreational use;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles, other than snowmobiles, that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      1) Power cranes, shovels, loaders, diggers or drills; or

      2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in paragraphs a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in paragraphs a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

      HOWEVER, self-propelled vehicles with the following types of permanently attached equipment are not "mobile

ACP BPFM3047086185                              INSURED COPY                              34      07787

equipment" but will be considered "autos":

1) Equipment designed primarily for:

    a) Snow removal;

    b) Road maintenance, but not construction or resurfacing; or

    c) Street cleaning;

2) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; and

3) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers.

13. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. **"Personal and advertising injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

16. **"Products-completed operations hazard":**

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

1) Products that are still in your physical possession; or

2) Work that has not yet been completed or abandoned.

    HOWEVER, "your work" will be deemed completed at the earliest of the following times:

    a) When all of the work called for in your contract has been completed.

    b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

HOWEVER, the "bodily injury" or "property damage" must occur away from premises you own or rent unless your business includes the selling, handling or distribution of "your prod-

ACP BPFM3047086185 INSURED COPY

uct" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. **"Property damage"** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. **"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. **"Your product"** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

1) You;

2) Others trading under your name; or

3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. **"Your work"** means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997

ACP BPFM3047086185                    INSURED COPY                    34    07789

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

INTERLINE
LI 00 21 (01-01)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (BROAD FORM)

All Coverage Parts included in this policy that provide Liability Coverage are subject to the following exclusion.

A.  This insurance does not apply:

1.  Under any Liability Coverage, to "bodily injury" or "property damage":

a.  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b.  Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

1)  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

2)  The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

a.  The "nuclear material":

1)  Is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured"; or

2)  Has been discharged or dispersed therefrom;

b.  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

c.  The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property thereat.

B.  As used in this endorsement:

1.  **"Hazardous properties"** includes radioactive, toxic or explosive properties.

2.  **"Nuclear material"** means "source material", "special nuclear material" or "by-product material".

3.  **"Source material", "special nuclear material",** and **"by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4.  **"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

5.  **"Waste"** means any waste material:

a.  Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of

uranium or thorium from any ore processed primarily for its "source material" content; and

b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. **"Nuclear facility"** means:

a. Any "nuclear reactor";

b. Any equipment or device designed or used for:

1) Separating the isotopes of uranium or plutonium;

2) Processing or utilizing "spent fuel"; or

3) Handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of

"special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

7. **"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

8. **"Property damage"** includes all forms of radioactive contamination of property.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

ACP BPFM3047086185                          INSURED COPY                          34      07791

EFFECTIVE DATE: 12:01 AM Standard Time,                                        **BUSINESSOWNERS**
        (at your principal place of business)                           **PB AI 02 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS
# MANAGERS OR LESSORS OF LEASED PREMISES

**Person or Organization Designated as an Additional Insured:**

    **RAGE TIME NEWS STAND AND DAIRY**

    **15748 CROSSBAY BLVD**
    **HOWARD BEACH       NY 114142747**

**Designated Premises (Part Leased to the Named Insured):**

    **15822A CROSSBAY BLVD**
    **HOWARD BEACH       NY 114143136**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

    Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

    <u>Managers or Lessors of Leased Premises</u>

    Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you, subject to the following additional exclusion:

    This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

    HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured        **BRUNO'S RESTAURANTE ITALIANO**

Issuing Company:      **NATIONWIDE MUTUAL INS COMPANY**

Policy Number:        **ACP BPFM3047086185**

Policy Term:          **08-05-19 To 08-05-20**

Limits of Insurance:     **Per Occurrence**       **$1,000,000**
                            **All Occurrences**      **$2,000,000**

EFFECTIVE DATE: 12:01 AM Standard Time,                           **BUSINESSOWNERS**
         (at your principal place of business)                    **PB AI 09 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS MORTGAGEE, ASSIGNEE OR RECEIVER

**Person or Organization Designated as an Additional Insured:**

**NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY**

**110 WILLIAMS STREET**
**NEW YORK          NY 100383901**

**Designated Premises:**

**15822A CROSSBAY BLVD**
**HOWARD BEACH          NY 114143136**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

Mortgagee, Assignee or Receiver

Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured          **BRUNO'S RESTAURANTE ITALIANO**

Issuing Company:          **NATIONWIDE MUTUAL INS COMPANY**

Policy Number:          **ACP BPFM3047086185**

Policy Term:          **08-05-19 To 08-05-20**

Limits of Insurance:          **Per Occurrence          $1,000,000**
                              **All Occurrences          $2,000,000**

**PB AI 09 (01-01)**                                                  **Page 1 of 1**

# PREMIER BUSINESSOWNERS
# COMMON POLICY CONDITIONS

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

All coverages of this policy are subject to the following conditions.

A. **CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Five (5) days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy.

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a covered cause of loss, permanent repairs to the building:

         (a) Have not started, and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be prorata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

INSURED COPY

PB 00 09 04 06

B. **CHANGES**

1. This policy contains all the agreements between you and us concerning the insurance afforded.

2. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.

3. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **CONCEALMENT, MISREPRESENTATION OR FRAUD**

1. This policy is void in its entirety in any case of fraud, at any time, by you or your representative as it relates to this policy.

2. This policy is also void if you, your authorized representative or any other insured, at any time, conceal or misrepresent any material fact, or violate any material warranty, concerning:

   a. This policy, including your application for this policy;

   b. The Covered Property;

   c. Your interest in the Covered Property; or

   d. A claim under this policy.

3. We also have the right to rescind this policy based upon any other grounds provided by law.

D. **EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy or to any claim arising under this policy at any time during the policy period and up to three years afterward.

E. **INSPECTIONS AND SURVEYS**

1. We have the right but are not obligated to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

F. **INSURANCE UNDER TWO OR MORE COVERAGES OF THIS POLICY**

If two or more of this policy's coverages apply to the same injury, loss or damage, we will not pay more than the actual amount of the injury, loss or damage, up to the highest applicable Limit of Insurance under any one coverage.

G. **LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

H. **OTHER INSURANCE**

1. Under any property coverage provided by this policy, if there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

2. Under any liability coverage provided by this policy,

   a. If, for injury or loss we cover, there is other valid and collectible insurance available to any insured under another policy:

      (1) Issued by another insurer, or if there is self insurance or similar risk retention that applies to a loss covered by this policy, then this insurance provided by us shall be excess over such other insurance; or

      (2) Issued by us or any of our affiliate companies, that applies to a loss covered by this policy, then only the highest applicable Limit of Insurance shall apply to such loss. This condition does not apply to any policy issued by us that is designed to provide Excess or Umbrella liability insurance.

   b. This insurance, if applicable, is also excess, whether that other insurance is primary, excess, contingent or provided on any other basis:

(1) Over any applicable property insurance or other insurance that insures for direct physical loss or damage;

(2) Over any valid and collectible insurance available to you as an additional insured under a policy issued to a tenant renting or leasing land or premises from you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. under Section I. COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Premier Businessowners Liability Coverage Form.

c. When this insurance is excess, we will have no duty under the liability coverage provided by this policy to defend any insured against any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to any insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

d. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

I.   **PREMIUMS**

1.   The first Named Insured shown in the Declarations:

a.   Is responsible for the payment of all premiums; and

b.   Will be the payee for any return premiums we pay.

2.   The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3.   Undeclared exposures or changes in your business operation and acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules in effect at the inception of such policy.

J.   **PREMIUM AUDIT**

1.   We have the right but are not obligated to audit this policy. The first Named Insured must keep records of the information we need for premium computation, and send us copies of those records at such times as we may request.

2.   If we do audit your policy, at the close of that audit period, we will compute the earned premium for that period and the final premium due based upon your actual exposures.

3.   Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

PB 00 09 04 06

K. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

1. **Applicable to Businessowners Property Coverage:**

    If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

    a. Prior to a loss to your Covered Property.

    b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

        (1) Someone insured by this insurance;

        (2) A business firm:

            (a) Owned or controlled by you; or

            (b) That owns or controls you; or

        (3) Your tenant, but only with our written consent.

    You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

    This will not restrict your insurance.

2. **Applicable to Businessowners Liability Coverage:**

    If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Payments Coverage.

L. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

1. Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

2. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 1997

ACP BPFM3047086185                          INSURED COPY                          34      07797

BUSINESSOWNERS
PB 04 30 05 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM

**NOTICE**

**YOU RISK THE LOSS OF CERTAIN INSURANCE COVERAGE AT PREMISES DESIGNATED IN THE DECLARATIONS IF YOU FAIL TO MAINTAIN ANY OF THE APPLICABLE PROTECTIVE SAFEGUARDS, LISTED BY SYMBOL IN THE DECLARATIONS FOR EACH PREMISES.**

**TO AVOID POTENTIAL LOSS OF COVERAGE YOU MUST REPORT ANY PROTECTIVE SAFEGUARD SUSPENSION OR DISABLEMENT BY CALLING 1-866-322-3214**

Your acceptance of this policy in the payment of premium when due constitutes your understanding and acknowledgement that you risk the loss of certain insurance at the premises designated if you fail to maintain the protective safeguard and your acceptance and agreement with the terms of this endorsement.

**SCHEDULE**

**Prem. / Bldg. No.   Description of P-9 Protective Safeguard:**

A. **CONDITION.** As a condition of this insurance, you are required to maintain the applicable protective devices or services for fire, denoted by symbols P-1, P-2, P-3, P-4, P-5, P-8, or P-9; or for burglary and robbery, denoted by symbols P-6 or P-7), as designated at each premises by symbol in the Declarations.

B. **EXCLUSIONS.** Under Section B. EXCLUSIONS, the following exclusions are added:

1. **FIRE PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard as designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard as designated at each premises by symbol in the Declarations and over which you have control, in complete working order; or

c. Add or modify any cooking equipment and operate it prior to adding or extending any Fire Suppression System that is required by code to protect it.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

2. **BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damage caused by or resulting from breaking-in or theft if, prior to the breaking-in or theft, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard designated at each premises by symbol in the Declarations and over which you had control, in complete working order.

ACP BPFM3047086185                    INSURED COPY                    34    07798

**PB 04 30 05 16**

C. **PROTECTIVE SAFEGUARD SYMBOLS.** The protective safeguards to which this endorsement applies are identified in the Declarations by the following symbols:

**"P-1"** **Automatic Sprinkler System**, including related supervisory services. Automatic Sprinkler System means:

a. Any automatic fire protective or extinguishing system, including connected:

1) Sprinklers and discharge nozzles;

2) Ducts, pipes, valves and fittings;

3) Tanks, their component parts and supports; and

4) Pumps and private fire protection mains.

b. When supplied from an automatic fire protective system:

1) Nonautomatic fire protective systems; and

2) Hydrants, standpipes and outlets.

**"P-2"** **Automatic Fire Alarm**, protecting the entire building, that is:

a. Connected to a central station; or

b. Reporting to a public or private fire alarm station.

**"P-3"** **Security Service**, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4"** **Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5"** **Watchman Service** based on contract with a privately owned security company providing premises protection services to the described premises.

**"P-6"** **Local Burglar Alarm** protecting the entire building which in the event of an unauthorized or attempted entry at the described premises, triggers a loud sounding gong or siren, or a visual device, on the outside of the building.

**"P-7"** **Central Station Burglar Alarm** protecting the entire building which, in the event of an unauthorized or attempted entry at the described premises, will automatically transmit an alarm signal to an outside Central Station or police station.

**"P-8"** **Fire Suppression System**, including related supervisory services. Fire Suppression System means any automatic fire protective or extinguishing system designed to protect cooking equipment (i.e. cooking surfaces, deep fat fryers, grease ducts and hoods) including connected:

a. Sprinklers and discharge nozzles;

b. Ducts, pipes, valves and fittings; and

c. Tanks, their component parts and supports.

**"P-9"** The protective system described in the Schedule of this endorsement.

**All terms and conditions of this policy apply unless modified by this endorsement.**

INSURED COPY

BUSINESSOWNERS
PB 05 23 07 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A. In Section 1. COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY under Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

1. Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

2. Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph 1. or 2. above.

However, unless Paragraph 1. above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

B. In Section 1. COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY under Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**BUSINESSOWNERS**
**PB 20 02 08 07**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FOOD SERVICE PLUS ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM

### SCHEDULE

| Coverage Description | | Limit of Insurance | Deductible |
|---|---|---|---|
| Credit Card Forgery | | $5,000 | $500 |
| Credit Card Slip Theft, Disappearance or Destruction | | $5,000 | $500 |
| Automatic Extinguishing System Protecting Cooking Equipment | | | |
|    Recharge Expenses | | $5,000 | $500 |
|    Clean-up Expenses (Accidental Discharge) | | $5,000 | $500 |
|    Loss of Income from Discharge | | $5,000 | $500 |
| Food Contamination – Loss of Income | Per Described Premises | $10,000 * | 24 hour wait |
| | Annual Policy Aggregate | $50,000 * | |
|    – Restoration Expenses | | $10,000 | $500 |
|    – Additional Advertising Expense | | $5,000 | $500 |
|    – Inoculation Expense Reimbursement | | $5,000 | $500 |
| Spoilage from Power Outage | | $10,000 * | $500 |

\* If a higher limit was purchased for Food Contamination – Loss of Income or Spoilage from Power Outage, the limit for such coverage would be shown in the Declarations – however the Deductible remains unchanged.

**A. OPERATION OF THIS ENDORSEMENT**

This Food Service PLUS Endorsement provides the coverage described herein only at your covered restaurant premises. Restaurant includes, but is not limited to, the following styles of service under which you prepare and serve food to the public: fine dining, family, buffet, fast food, pizza parlor, bagel shop, deli, sandwich shop, micro brewery or ice cream shop.

**B.** The following is added to the PROPERTY COVERAGE FORM:

1. Under Section A. COVERAGES, the following is added to 5. ADDITIONAL COVERAGES:

   a. **Credit Card Forgery**

      (1) We will pay for loss involving written instruments required in conjunction with your customers' credit, debit or charge card resulting directly from forgery or alteration of such written instruments by your customers.

   (2) The following exclusion is added:

      We will not pay for loss arising from any credit, debit or charge card transaction if you have not complied fully with the provisions, conditions or other terms of the card issuer.

   (3) In Section A. COVERAGES, under 2. PROPERTY NOT COVERED, item b. does not apply to this Credit Card Forgery Additional Coverage.

   (4) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance shown in the Schedule of this endorsement.

   (5) All loss caused by any person or in which that person is involved, whether the loss involves one or more instruments, is considered one occurrence.

**PB 20 02 08 07**        **Page 1 of 4**

**PB 20 02 08 07**

b. **Credit Card Slip Theft, Disappearance or Destruction**

(1) We will pay for loss of written instruments required in conjunction with any credit, debit, or charge card at the described premises resulting directly from theft meaning any act of stealing, disappearance or destruction.

(2) In addition to the LIMITATIONS and EXCLUSIONS applicable to property coverage, we will not pay for loss:

   (a) Resulting from accounting or arithmetical errors or omissions; or

   (b) Due to the giving or surrendering of property in any exchange or purchase.

(3) In Section A. COVERAGES, under 2. PROPERTY NOT COVERED, item b. does not apply to this Credit Card Slip Theft, Disappearance or Destruction Additional Coverage.

(4) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance shown in the Schedule of this endorsement.

(5) You must keep records of all written instruments so we can verify the amount of any loss or damage.

(6) All loss:

   (a) Caused by one or more persons; or

   (b) Involving a single act or series of related acts;

   is considered one occurrence.

c. **Automatic Extinguishing System Protecting Cooking Equipment**

(1) **Recharge Expenses**

We will pay your necessary expenses to recharge an automatic extinguishing system that protects cooking equipment when discharged as designed or if discharged accidentally.

(2) **Clean up Expenses**

We will pay your necessary expenses to clean up a described premises after an accidental discharge of an automatic extinguishing system that protects cooking equipment. The cleanup expenses must relate directly to such discharge.

(3) **Lost Income from Discharge**

We will also pay for actual loss of Business Income you sustain due to a suspension of your normal business "operations" during the period of time normally required to clean up and recharge your automatic extinguishing system as a result of its accidental discharge at the described premises.

We will not pay for loss or damage in any one occurrence separately for each of these Automatic Extinguishing System Protecting Cooking Equipment Additional Coverages until the amount of loss or damage exceeds the applicable Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance shown in the Schedule of this endorsement for that coverage.

d. **Food Contamination**

(1) **Loss of Income**. If your covered restaurant premises are affected as a direct result of an "announcement" of "food contamination", we will pay the loss of "business income" you sustain due to the necessary suspension of your "operations". This coverage will begin 24 hours after the date of the "announcement" and ends on the date when "business income" is restored to 95% of the level of the corresponding period in the year prior to the "announcement", in any event not to exceed 12 months.

The most we will pay for your loss of "business income" is the Per Described Premises Limit of Insurance shown in the Schedule of this endorsement, subject to the Annual Policy Aggregate shown in the Schedule of this endorsement.

HOWEVER, if a limit of insurance is shown at a premises described in the Property Declarations for Food Contamination – Loss of Income, that limit replaces the Food Contamination – Loss of Income limit of insurance shown in the Schedule of this endorsement for that described premises.

(2) If one of your covered restaurant premises is closed by the Board of Health or any other governmental authority having jurisdiction as a result of the discovery or suspicion of "food contamination", for that described premises, we will:

(a) **Restoration Expenses**

(i) Pay your expense to clean your equipment as required by the Board of Health or any other governmental authority;

(ii) Pay your cost to replace the food which is, or is suspected to be, contaminated;

(iii) Pay your expense to provide necessary medical tests for your exposed employees and inoculations for your infected employees. However, we will not pay for any expense that is otherwise covered under your Workers' Compensation Policy;

(b) **Additional Advertising Expenses**. Pay your additional advertising expenses you incur to restore your reputation.

(c) **Inoculation Expense Reimbursement**. Reimburse your reasonable expenses incurred for inoculation of your restaurant patrons by a licensed medical professional because of "food contamination" alleged by such patrons to have been transmitted or caused by ingestion of your food.

HOWEVER, this coverage does not apply to you, your employees or, unless they are an affected patron, members of either's household.

(d) **Limits and Deductibles**. Separately as regards to paragraphs (a), (b) and (c) and described premises, we will not pay for loss or damage until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of each Deductible up to the Limit of Insurance shown in the Schedule of this endorsement.

(3) We will not pay any fines or penalties levied against you by the Board of Health or any other governmental authority having jurisdiction as a result of the discovery or suspicion of "food contamination" at a described premises.

(4) **Additional Definitions**. As used in this endorsement:

(a) "**Announcement**" means a declaration by a Board of Health or any other governmental authority having jurisdiction, or a publication or broadcast by the media, of the discovery or suspicion of "food contamination" at a described premises or at a location of the same type, trade name and operation. Any and all "announcements" concerning the same event or a series of related events, regardless of the number of locations or individuals affected, shall be considered one "announcement". Any such "announcement" must occur during the policy period.

(b) "**Food contamination**" means an incidence of food poisoning as a result of:

(i) Tainted food purchased;

(ii) Food which has been improperly stored, handled or prepared; or

(iii) A communicable disease transmitted through one or more employees.

**PB 20 02 08 07**

e. **Spoilage from Power Outage**

(1) We will pay for loss of or damage to "perishable stock" at a premises described in the Declarations, caused by "power outage" if the "perishable stock" is:

(a) Owned by you and used in your business; or

(b) Owned by others and in your care, custody or control, however, such property is not covered for more than the amount for which you are legally liable, plus the cost of labor, materials or services furnished or arranged by you on that property.

HOWEVER, "perishable stock" does not include property located:

(i) On buildings; or

(ii) In the open.

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance shown in the Schedule of this endorsement.

HOWEVER, if a limit of insurance is shown at a premises described in the Property Declarations for Spoilage From Power Outage, that limit replaces the Spoilage From Power Outage limit of insurance shown in the Schedule of this endorsement.

(2) As used in this Spoilage from Power Outage Additional Coverage:

(a) **"Perishable Stock"** means property:

(i) Maintained under controlled temperature or humidity conditions for preservation; and

(ii) Susceptible to loss or damage if the controlled temperature or humidity conditions change.

(b) **"Power Outage"** means change in the temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the premises described, due to conditions beyond your control.

HOWEVER, "power outage" does not include interruption of electrical power caused by or resulting from an "accident" to "covered equipment" under the Equipment Breakdown Additional Coverage.

(3) The following additional exclusions apply to this Spoilage from Power Outage Additional Coverage:

We will not pay for loss or damage caused by or resulting from:

(a) The disconnection of any refrigerating, cooling or humidity control system from the source of power.

(b) The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

(c) The inability of an electrical utility company or other power source to provide sufficient power due to:

(i) Lack of fuel; or

(ii) Governmental order.

(d) The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

(4) The coverage provided by this Spoilage from Power Outage Additional Coverage is excess over any other valid and collectible insurance.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2005

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS ADVANTAGE

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS
PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

**A. AMENDMENT TO THE COMMON POLICY CONDITIONS**

In Section K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US, under paragraph 2. Applicable to Businessowners Liability Coverage, the following is added:

**Waiver of Subrogation**

HOWEVER, in the event of any payment under this policy, we waive our right of recovery or subrogation against any person or organization with respect to which you have waived your right of recovery or subrogation in writing and prior to a loss.

**B. AMENDMENTS TO THE PROPERTY COVERAGE FORM**

1. In Section A. COVERAGES, 6. COVERAGE EXTENSIONS, under paragraph c., Personal Property Off Premises, the following is added:

   **Additional Limits of Insurance - Business Personal Property Away From Premises**

   In addition to and excess over the limits of insurance provided for Personal Property Off Premises, whether provided in the PROPERTY COVERAGE FORM or under the optional endorsement PB5301, Increased Limits - Business Personal Property Away From Premises, the most we will pay as additional insurance for loss or damage under this Personal Property Off Premises Coverage Extension is:

   (1) $50,000 for Business Personal Property Away From Premises; and

   (2) $25,000 for Business Personal Property Away From Premises in Transit.

   HOWEVER, for Business Personal Property Away From Premises in Transit, the following additional exclusions apply:

   We will not pay for loss or damage caused by or arising out of:

   (1) **Unattended Vehicle**. Theft from an unattended vehicle, except when it is securely locked, its windows are fully closed and there is visible evidence that entry into the vehicle was forced. This exclusion does not apply to Covered Property in the custody of a carrier for hire.

   (2) **Partial Contents**. Theft of part of the contents of any shipping package.

   (3) **Employee**. Theft by an employee of yours, whether such employee is acting alone or in collusion with others.

2. **Utility Services Additional Coverage (Including Business Income)**

   a. We will pay for loss of or damage to the Buildings and Business Personal Property shown in the Declarations, including loss of "business income" or "extra expense", caused by the interruption of utility service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph b.(1) that follows, if such property is located outside of a covered building described in the Declarations.

      Loss of Business Income or Extra Expense must arise from the necessary suspension of your "operations" during the "period of restoration".

   b. **Additional Definitions**

      For the purpose of this endorsement,

      (1) Utility Services include:

         (a) Water Supply Services, meaning the following types or property supplying water to the described premises:

**PB 20 99 12 08**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 1 of 3**

**PB 20 99 12 08**

(i)  Pumping stations; and

(ii)  Water mains.

(b)  Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave, or television services to the described premises, such as:

(i)  Communication transmission lines, including optic fiber transmission lines;

(ii)  Coaxial cables; and

(iii)  Microwave radio relays except satellites.

It does include overhead transmission lines.

(c)  Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

(i)  Utility generating plants;

(ii)  Switching stations;

(iii)  Substations;

(iv)  Transformers; and

(v)  Transmission lines.

It does include overhead transmission lines.

(2)  "Period of restoration" shall mean the period of time that:

(a)  Begins twelve hours after the interruption of service to the described premises forces you to suspend your "operations"; and

(b)  Ends when the utility service to the described premises is restored.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(i)  Regulates the construction, use or repair, or requires the tearing down of any property; or

(ii)  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

3.  **Valuable Papers And Records**

If no Business Personal Property Limit of Insurance is shown at a described premises in the Declarations, for that premises, in Section A. COVERAGES, 6. COVERAGE EXTENSIONS, under paragraph g., Valuable Papers And Records, paragraph (1) is replaced by the following:

(1)  You may extend the insurance that applies to Buildings to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Valuable Papers And Records Coverage Extension includes the cost to research lost information on "valuable papers and records", including those which exist on "electronic media and records", for which duplicates do not exist.

4.  **ADVANTAGE Blanket Additional Limit of Insurance**

In addition to and excess over the limits of insurance provided:

a.  In Section A, COVERAGES, 5. ADDITIONAL COVERAGES, for:

(1)  **Debris Removal**, paragraph a. (4);

(2)  **Forgery And Alteration**, paragraph l. (3);

(3)  **Back Up Of Sewer Or Drain Water Damage**, paragraphs s. (3); and

b.  In Section A. COVERAGES, 6. COVERAGE EXTENSIONS, for:

(1)  **Valuable Papers and Records**, the first paragraph of g. (3);

(2)  **Accounts Receivable**, the first paragraph of h. (2); and

c.  If a Utility Services Limit of Insurance is shown at a described premises in the Declarations, for **Utility Services - Additional Coverage** (Including Business Income);

the most we will pay per building as additional insurance in any one occurrence for the sum of all loss or damage covered by these Additional Coverages and Coverage

Extensions, is the ADVANTAGE Blanket Additional Limit of Insurance shown in the Declarations.

HOWEVER:

a.  If no Utility Services Limit of Insurance is shown at a described premises in the Declarations, the ADVANTAGE Blanket Additional Limit of Insurance applies to the Utility Services - Additional Coverage provided in paragraph B.2. of this endorsement; and

b.  For the Back Up Of Sewer Or Drain Water Damage Additional Coverage, the policy aggregate limit shown for Back Up Of Sewer Or Drain in the Declarations is also increased by adding to it the dollar amount of the ADVANTAGE Blanket Additional Limit of Insurance shown in the Declarations.

5.  **Deductibles**

For coverage in this endorsement that is excess over coverage provided elsewhere in the policy, the underlying deductible continues to apply.

HOWEVER, if no Utility Services Limit of Insurance is shown at a described premises in the Declarations, under the Utility Services Additional Coverage provided in this endorsement, a $1,000 deductible applies to the direct loss or damage portion of a loss.

C.  **AMENDMENTS TO THE LIABILITY COVERAGE FORM.**

1.  Under Section I. COVERAGES, A. COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, exclusion g. Aircraft, Auto Or Watercraft, paragraph 2) a) is deleted and replaced by:

a)  Less than 51 feet long; and

2.  Under SECTION I. COVERAGES, D. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B, paragraphs 1., b. and d. are deleted and replaced by:

b.  Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

3.  In SECTION II. WHO IS AN INSURED, paragraph 4. a. is deleted and replaced by:

a.  Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

4.  Under SECTION V. DEFINITIONS, definition 3. "Bodily injury" is deleted and replaced by:

"**Bodily injury**" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death resulting from any of these at any time.

**All terms and conditions of this policy apply unless modified by this endorsement.**

BUSINESSOWNERS
PB 29 98 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF
# CONSUMER PROTECTION STATUTES

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A.  In Section 1. COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY under of Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**VIOLATION OF CONSUMER PROTECTION STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law including the Fair and Accurate Credit Transaction Act (FACTA); or

4.  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA, that addresses, prohibits or limits the electronic printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information.

B.  In Section 1. COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, under Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**VIOLATION OF CONSUMER PROTECTION STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law including the Fair and Accurate Credit Transaction Act (FACTA); or

4.  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA, that addresses, prohibits or limits the electronic printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information.

**All terms and conditions of this policy apply unless modified by this endorsement.**

**PB 29 98 09 08**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 1 of 1**

ACP BPFM3047086185                                    INSURED COPY                                    34     07810

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS**
**PB 29 99 (01-02)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - FUNGI OR BACTERIA
# (WITH LIMITED PROPERTY COVERAGE)

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A.  **AMENDMENT TO THE PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM**

1.  In Section A. COVERAGES, under paragraph 5. ADDITIONAL COVERAGES, the following additional coverage is added:

    u.  **Additional Coverage - Limited Coverage For Fungi, Wet Rot, Dry Rot And Bacteria**

        1)  The coverage described in paragraphs 2) through 6) below applies:

            a)  Only when the "fungi", wet or dry rot or bacteria is the result of a "specified cause of loss", other than fire or lightning, that occurs during the policy period; and

            b)  Only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

        2)  We will pay for loss or damage by "fungi", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

            a)  Direct physical loss or damage to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

            b)  The cost to tear out and replace any part of the building or other property as needed

to gain access to the "fungi", wet or dry rot or bacteria; and

            c)  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

        3)  The coverage described under paragraph 2) of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all such loss or damage arising out of all occurrences of "specified causes of loss", other than fire or lightning, which take place in a 12-month period, starting with the beginning of the present annual policy period. With respect to a particular occurrence of loss which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

        4)  The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

**PB 29 99 (01-02)**

**Page 1 of 3**

PB 29 99 (01-02)

If there is covered loss or damage to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5) The terms of this Limited Coverage do not increase or reduce the coverage provided under either Additional Coverage e. Collapse or f. Water Damage, Other Liquids, Powder Or Molten Material Damage.

6) Under Additional Coverages g. Business Income and/or h. Extra Expense:

a) If the loss which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungi", wet or dry rot or bacteria, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

b) If a covered "suspension" of "operations" was caused by loss or damage damage other than "fungi", wet or dry rot or bacteria but remediation of of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay, regardless of when such a delay occurs during the "period of restoration", but such coverage is limited to 30 days. The days need not be consecutive.

2. In Section B. EXCLUSIONS, under paragraph 1., the following exclusion is added:

h. **Fungi, Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria.

But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

1) When "fungi", wet or dry rot or bacteria results from fire or lightning; or

2) To the extent that coverage is provided in the Additional Coverage - Limited Coverage For Fungi, Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a "specified cause of loss" other than fire or lightning.

3. In Section B. EXCLUSIONS, under paragraph 2., exclusion c. Leakage or Seepage is replaced by the following:

c. **Leakage or Seepage**

Constant or repeated discharge, seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, whether continuous or intermittent from any:

1) Heating, air conditioning or refrigerating system;

2) Appliance; or

3) Fire protection or plumbing system, including from or around any shower bath installation, bathtub or other plumbing fixture.

4. In Section B. EXCLUSIONS, under paragraph 2., exclusion j. Other Types Of Loss, paragraph (2) is replaced by the following:

j. **Other Types Of Loss**

2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

ACP BPFM3047086185                                        INSURED COPY                                        34    07812

B. **AMENDMENTS TO THE PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM**

1.  In Section I. COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under paragraph 2. EXCLUSIONS, the following exclusions are added:

    This insurance, including any duty we have to defend "suits", does not apply to:

    **Fungi or Bacteria**

    a.  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for:

        1)  The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents; or

        2)  The failure to warn or to disclose the presence of "fungi" or bacteria;

        regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    b.  Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    HOWEVER, this exclusion does not apply to any "fungi" or bacteria that are, are on or are contained in, "your product" intended for human or animal consumption.

2.  In Section I. COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY, under paragraph 2. EXCLUSIONS, the following exclusions are added:

This insurance, including any duty we have to defend "suits", does not apply to:

**Fungi or Bacteria**

a.  "Personal and advertising injury" which would not have occurred, in whole or in part, but for:

    1)  The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents; or

    2)  The failure to warn or to disclose the presence of "fungi" or bacteria;

    regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.  Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C.  **ADDITIONAL DEFINITION**

    The following definition is added to:

    1.  The PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM, under Section H. DEFINITIONS; and

    2.  The PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM, under Section V. DEFINITIONS.

        **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

 INSURED COPY

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS**
**PB 63 03 (01-01)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIQUOR LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE

In Section I. COVERAGES, A. COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under 2. EXCLUSIONS, exclusion c. is deleted.

HOWEVER, under no circumstances does this insurance apply to "bodily injury" which arises out of or is a result of any alcoholic beverage being sold, served or furnished while any required license is suspended, or after such license expires, is canceled or revoked.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc with its permission.
Copyright, Insurance Services Office, Inc., 1992

**PB 63 03 (01-01)**

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS**
**PB 63 04 (01-01)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OFF PREMISES VALET PARKING

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

Under Section I. COVERAGES, A - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under 2. EXCLUSIONS, exclusion g. Aircraft, Auto or Watercraft, paragraph 3), the limitation regarding the parking of an "auto" on your premises, is deleted and replaced by the following:

HOWEVER, this exclusion (g. Aircraft, Auto or Watercraft) does not apply to:

3) The parking by you or your "employee" of an "auto" in the course of your business, provided the "auto" is not owned by or rented or loaned to you, your "employee" or any insured.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

**PB 63 04 (01-01)**

BUSINESSOWNERS
PB 69 31 11 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LEAD EXCLUSION ENDORSEMENT – NEW YORK

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A. Under Section 1 – COVERAGES  A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, the following is added:

Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead.

B. Under Section 1 – COVERAGES, B. COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABLITY, 2. EXCLUSIONS, a. "Personal and advertising injury", the following is added:

Lead including any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead.

**All terms and conditions of this policy apply unless modified by this endorsement.**

**PB 69 31 11 10**        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 1 of 1**

ACP BPFM3047086185                    INSURED COPY                    34    07816

PB 90 31 06 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS
PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

## CANCELLATION

The provisions of Paragraphs A. and B. apply unless Paragraph C. applies.

A.  In the COMMON POLICY CONDITIONS, condition A. CANCELLATION, paragraphs 1, 2, 3 and 5 are replaced by the following:

1.  The first Named Insured shown in the Declarations may cancel this entire Policy by mailing or delivering to us advance written notice of cancellation.

2.  **Cancellation Of Policies In Effect**

    a.  **60 Days Or Less**

        We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1)  30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph (2) below.

        (2)  15 days before the effective date of cancellation if we cancel for any of the following reasons:

            (a)  Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

            (b)  Conviction of a crime arising out of acts increasing the hazard insured against;

            (c)  Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim;

            (d)  After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy

condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current Policy period;

(e)  Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the Policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

(f)  Required pursuant to a determination by the Superintendent that the continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

(g)  A determination by the Superintendent that the continuation of the Policy would violate, or would place us in violation of, any provision of the Insurance Code; or

PB 90 31 06 18

Page 1 of 14

**PB 90 31 06 18**

(h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

b. **For More Than 60 Days**

If this Policy has been in effect for more than 60 days, or if this Policy is a renewal or continuation of a Policy we issued, we may cancel only for any of the reasons listed in Paragraph a.(2) above, provided:

(1) We will mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

(2) If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the Policy and the authorized agent or broker.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total Policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. In the COMMON POLICY CONDITIONS, under condition A. CANCELLATION, the following is added:

If one of the reasons for cancellation in Paragraph A.2.a.(2) or A.2.b.(2) exists, we may cancel this entire Policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this Policy.

C. If this Policy covers buildings or structures containing 1 to 4 dwelling units, the provisions of Paragraphs D. and E. of this endorsement apply.

D. In the COMMON POLICY CONDITIONS, condition A. CANCELLATION, paragraph 2 is replaced by the following:

2. Procedure And Reasons For Cancellation

a. We may cancel this entire Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. But if this Policy:

(1) Has been in effect for more than 60 days; or

(2) Is a renewal of a Policy we issued;

we may cancel this Policy only for one or more of the following reasons:

(a) Nonpayment of premium provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

(b) Conviction of a crime arising out of acts increasing the risk of loss;

(c) Discovery of fraud or material misrepresentation in obtaining the Policy or in making a claim;

(d) Discovery of willful or reckless acts or omissions increasing the risk of loss;

(e) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

(i)   Issued the Policy, or

(ii)   Last voluntarily renewed the Policy;

(f)   The Superintendent of Insurance's determination that continuing the Policy would violate Chapter 28 of the Insurance Law; or

(g)   Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

## E.   Conditional Continuation

Instead of cancelling this Policy, we may continue it on the condition that:

1.   The Policy limits be changed; or

2.   Any coverage not required by law be eliminated.

If this Policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

F.   Under the COMMON POLICY CONDITIONS, the following condition is added unless Paragraph G. applies.

1.   **NONRENEWAL**

If we decide not to renew this Policy we will send notice as provided in Paragraph F.3. below.

2.   Conditional Renewal

If we condition renewal of this Policy upon:

a.   Change of limits;

b.   Change in type of coverage;

c.   Reduction of coverage;

d.   Increased deductible;

e.   Addition of exclusion; or

f.   Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added; or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph F.3. below.

3.   Notices Of Nonrenewal And Conditional Renewal

a.   If we decide not to renew this Policy or to conditionally renew this Policy as provided in Paragraphs F.1. and F.2. above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

(1)   The expiration date; or

(2)   The anniversary date if this is a continuous Policy.

b.   Notice will be mailed or delivered to the first Named Insured at the address shown in the Policy and the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c.   Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

d.   If we violate any of the provisions of Paragraphs F.3.a., b. or c. above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

(1)   Coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel.

(2)   On or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another Policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional Policy period, has replaced the coverage or elects to cancel.

e.   If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

(1)   Upon expiration of the 60-day period; or

**PB 90 31 06 18**

(2) Notwithstanding the provisions in Paragraphs d.(1) and d.(2), as of the renewal date of the Policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the Policy.

f. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the Policy has been replaced or is no longer desired.

G. If this Policy covers buildings or structures containing 1 to 4 dwelling units, the following provisions apply.

**Nonrenewal**

If, as allowed by the laws of New York State, we:

1. Do not renew this Policy; or

2. Condition Policy renewal upon:

   a. Change of limits; or

   b. Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

(1) At least 45 days; but

(2) Not more than 60 days;

before the expiration date of the Policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

H. In the COMMON POLICY CONDITIONS, condition J. Premium Audit, paragraphs 1, 2 and 3 are replaced by the following:

1. This Policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this Policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the Policy and may not be waived, except when:

a. The total annual premium attributable to the auditable exposure is not reasonably expected to exceed $1,500; or

b. The Policy requires notification to the insurer with specific information of any additional exposure units (e.g., buildings) for which coverage is requested.

If the sum of the advance and audit premiums paid for the Policy period is greater than the earned premium, we will return the excess to the first Named Insured.

Except as provided in Paragraph J.2., Paragraph D. Examination Of Your Books And Records in the COMMON POLICY CONDITIONS continues to apply.

I. In the COMMON POLICY CONDITIONS, condition C. Concealment, Misrepresentation Or Fraud is replaced by the following:

C. Concealment, Misrepresentation Or Fraud

We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this Policy.

J. In the COMMON POLICY CONDITIONS, condition H. paragraph 1. Other Insurance, is replaced by the following:

1. Under any property coverage provided by this Policy, if there is other valid and collectible insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

K. **AMENDMENTS TO THE PROPERTY COVERAGE FORM**

1. If this Policy covers the interest of the owner of any of the following types of buildings or structures:

(1) Residential except owner-occupied single family or owner-occupied two-family buildings or structures;

(2) Commercial; or

(3) Industrial;

the following provision is added:

Before payment to you for loss or damage to the above buildings or structures caused by or resulting from fire, we will:

INSURED COPY

a. Deduct from your payment the claim of any tax district that issues a certificate of lien in accordance with the Insurance Law; and

b. Pay directly to the tax district the amount of the claim.

When we pay that claim, we will have no obligation to pay the amount of that claim to you. Our payment of that claim within 30 days of our receipt of the certificate of lien will be a conclusive presumption that the claim was valid and properly paid.

2. When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

a. Or our broker or agent within 45 days of the effective date of a new Policy, we will cancel the entire Policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

b. Before the expiration date of any Policy, we will cancel the Policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

If the notice in 2.a. or 2.b. above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

The cancellation provisions set forth in 2.a. and 2.b. above supersede any contrary provisions in this Policy including this endorsement.

3. Under Section E. Property Loss Conditions, paragraph 3. Duties In The Event Of Loss Or Damage, the following is added:

a. Notice given by or on your behalf; or

b. Written notice by or on behalf of any claimant;

to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

4. Under Section F. Property General Conditions, 2. Mortgageholders, paragraphs f. and g. are replaced by the following:

f. Cancellation

(1) If we cancel this Policy, we will give written notice to the mortgageholder at least:

(a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(2) If you cancel this Policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

(a) The effective date of cancellation of the insured's coverage; or

(b) 10 days after we give notice to the mortgageholder.

g. Nonrenewal

(1) If we elect not to renew this Policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this Policy.

(2) If you elect not to renew this Policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

(a) The expiration date of the Policy; or

(b) 10 days after we give notice to the mortgageholder.

5. Under Section E. Property Loss Conditions, the following is added:

ESTIMATION OF CLAIMS

a. Upon request, we will furnish you or your representative with a written estimate of damages to real property, specifying all deductions, provided such an estimate has been prepared by us or has been prepared on our behalf for our own purposes. This estimate will be provided within 30 days after your request or its preparation, whichever is later.

**PB 90 31 06 18**

6. Under Section E. Property Loss Conditions paragraph 2. Appraisal, is replaced by the following:

2. Appraisal

a. If we and you disagree on the value of the property, the extent of the loss or damage or the amount of the loss or damage, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.

b. If we or you fail to proceed with the appraisal of the covered loss after a written demand is made by either party, then either party may apply to a court having jurisdiction for an order directing the party that failed to proceed with the appraisal to comply with the demand for the appraisal of the loss.  In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such order.

c. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the extent of the loss or damage and the amount of the loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

d. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

7. The exclusion set forth in paragraph 8. below applies to all coverage under the PROPERTY COVERAGE in all forms and endorsements that comprise this Businessowners Policy, except as provided in paragraph 9 below. This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

8. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

9. However, the exclusion in paragraph 8. above does not apply to the following:

a. Loss or damage caused by or resulting from fungus. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

b. Coverage otherwise provided under the Food Contamination Additional Coverage in the Food Service Plus Endorsement PB 20 02 if that endorsement is attached to this Businessowners Policy.

10. The terms of the exclusion in paragraph 8. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

11. Under Section B. Exclusions,under paragraph 1.exclusion f. War And Miilitary Action  the following is added:

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

12. Under Section E. Property Loss Conditions, 4. Legal Action Against Us, paragraph b., is replaced by the following:

b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

13. Section G. Optional Coverages, paragraph 1. c. is replaced with the following:

This Optional Coverage is cancelled as to any employee immediately upon discovery by:

(1) You; or

(2) Any of your partners, members, managers, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

ACP BPFM3047086185                                        INSURED COPY                                        34      07822

However, this paragraph G.1.c. does not apply to an employee whose dishonest act was committed prior to becoming employed by you and which resulted in the employee's criminal conviction if, after learning about the employee's past criminal conviction, you made a determination to hire or retain the employee utilizing the factors set out in New York Correction Law Article 23-A.

14. Under Section H. Property Definitions, paragraph 14. "Pollutants" is deleted and replaced by the following:

14. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## L. AMENDMENTS TO THE LIABILITY COVERAGE FORM

1. Unless this Policy covers buildings or structures containing 1 to 4 dwelling units the following provisions apply:

   a. The aggregate limits of this Policy as shown in the Declarations will be increased in proportion to any Policy extension provided in accordance with Paragraph F.3.d. above.

   b. Under Section III. LIMITS OF INSURANCE AND DEDUCTIBLE, the last sentence of paragraph 8. does not apply when the Policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

2. Under Section V. DEFINITIONS, paragraph 11. "Loading or unloading" is removed.

3. Under Section V. DEFINITIONS, paragraph 15. "Pollutants" is deleted and replaced by the following:

   15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

4. Under Section IV. LIABILITY CONDITIONS, paragraph 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit, the following is added:

   a. Notice given by or on your behalf; or

   b. Written notice by or on behalf of any claimant;

   to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

5. Under Section IV. LIABILITY CONDITIONS, the following is added:

   **Transfer Of Duties When A Limit Of Insurance Is Used Up**

   a. If we conclude that, based on "occurrences", offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

   (1). Liability and Medical Expenses Limit;

   (2). Medical Expenses Limit; or

   (3). Damage To Premises Rented To You;

   is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

   b. When a limit of insurance described in paragraph a. above has actually been used up in the payment of judgments or settlements:

   (1). We will notify the first Named Insured, in writing, as soon as practicable, that:

   (a) Such a limit has actually been used up; and

   (b) Our duty to defend "suits" seeking damages subject to that limit has also ended.

   (2). We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

   We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

   We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have

**PB 90 31 06 18**

been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

(3). The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

c. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph b.(2).

The duty of the first Named Insured to reimburse us will begin on:

(1). The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph a.; or

(2). The date on which we sent notice in accordance with paragraph b.(1)., if we did not send notice in accordance with paragraph a.

d. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

6. Under Section 1 – COVERAGES A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. INSURING AGREEMENT, paragraph a. is replaced by the following:

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury",

"property damage" or "personal and advertising injury", to which this insurance does not apply.

We may at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

7. Under Section 1 – COVERAGES, B. COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, 1. INSURING AGREEMENT, paragraph a. is replaced by the following:

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply.

We may at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

8. Under Section I – COVERAGES, A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph 3.TENANTS PROPERTY DAMAGE LEGAL LIABILITY is replaced by the following:

**Certain Exclusions Not Applicable**

Exclusions c., d.(1), d.(3) through d.(6), f. through n., p., q., r., t., u., v. and w. do not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, if such "property damage" arises out of a Covered Cause Of Loss provided under the BUSINESSOWNERS PROPERTY COVERAGE FORM. A separate limit of insurance, called Tenants Property Damage Legal Liability Limit, applies to this coverage as described in Section III. LIMITS OF INSURANCE.

9. Under Section IV. LIABILITY CONDITIONS, paragraph 4. Legal Action Against Us, is replaced by the following:

**Legal Action Against Us**

a. Except as provided in Paragraph b.,No no person or organization has a right under this Policy:

(1) To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

(2) To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and a

release of liability signed by us, the insured and the claimant or the claimant's legal representative.

b. With respect to a claim arising out of the death or personal injury of any person, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

HOWEVER, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

(1) Brings an action to declare the rights of the parties under the Policy; and

(2) Names the injured person, someone acting for the injured person or other claimant as a party to the action.

10. Under Section 1 – COVERAGES A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, e. Employer's Liability, the last paragraph is removed.

11. Under Section 1 – COVERAGES A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, paragraph s. Asbestos, Electronic Emissions, Lead or Radon, is deleted and replaced by the following:

s. **Asbestos**

"bodily injury" or "property damage" arising out of:

Asbestos including any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos.

12. Under Section 1 – COVERAGES  A. COVERAGE A – BODILY INJURY AND

ACP BPFM3047086185

PB 90 31 06 18

PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, the following is added:

x. **Electronic emissions**

"bodily injury" or "property damage" arising out of:
Electromagnetic emissions or radiation including any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation.

13. Under Section 1 – COVERAGES A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, the following is added:

y. **Radon**

"bodily injury" or "property damage" arising out of:
Radon or any other radioactive emissions, manmade or natural, including any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions.

14. Under Section 1 – COVERAGES A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, i. War is deleted and replaced by the following:

i. War"

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

15. Under Section 1 – COVERAGES A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS, p. Bodily Injury To Any Insured, is deleted and replaced by the following:

"Bodily injury" to:

1) Any Insured; or

2) Any insured whenever the ultimate benefits will accrue directly or indirectly to any insured or the heirs of any insured.

16. Under Section 1 – COVERAGES, B. COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS, a. "Personal and advertising injury", paragraph (14) is deleted and replaced by the following:

Arising out of Asbestos including any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos.

17. Under Section 1 – COVERAGES, B. COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABLITY, 2. EXCLUSIONS, a. "Personal and advertising injury", the following is added:

Electromagnetic emissions or radiation including any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation.

18. Under Section 1 – COVERAGES, B. COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABLITY, 2. EXCLUSIONS, a. "Personal and advertising injury", the following is added:

Radon or any other radioactive emissions, manmade or natural, including any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other

radioactive emissions or any other duty involving radon or other radioactive emissions.

19. Under Section 1 – COVERAGES, C. COVERAGE C – MEDICAL PAYMENTS, 2. EXCLUSIONS, h., is deleted and replaced by the following:

h. Due to war, however caused, arising, directly or indirectly, out of:

(1) War, including undeclared civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

20. Under SECTION II. WHO IS AN INSURED, 6. Automatic Additional Insureds, paragraph d. is deleted and replaced by the following:

d. Lessors or Leased Equipment

Any person or organization from whom you lease equipment by written contract or agreement is an additional insured, but only with respect to their liability caused, in whole or in part, by your maintenance, operation or use by you of the equipment leased to you by that person or organization, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to "bodily injury" or "property damage" caused, in whole or in part, by the sole negligence of such person or organization.

HOWEVER, their status as additional insured under this Policy ends when their contract or agreement with you for such leased equipment ends.

21. Under SECTION V. DEFINITIONS, definition 3. "Bodily injury" is deleted and replaced by:

"**Bodily injury**" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death resulting from any of these at any time.

22. Under SECTION V. DEFINNITIONS, definition 12 "Mobile equipment" is deleted and replaced by:

"**Mobile equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

 INSURED COPY

PB 90 31 06 18

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**M. AMENDMENT TO THE COMMON POLICY CONDITIONS FORM**

Under H. OTHER INSURANCE:

1. Paragraph 2.a.(2) is removed; and

2. Paragraph 2.c.(1) is removed.

N. The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Policy shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**O. AMENDMENTS TO ENDORSEMENTS**

1. In the EXCLUSION – FUNGI OR BACTERIA endorsement, form PB2999:

    a. paragraphs A.1., A.2., B. and C. do not apply.

    b. Under Section A. AMENDMENTS TO THE PROPERTY COVERAGE FORM, paragraph 4.j.(2) is replaced by the following:

        (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

2. If the LIABILITY FOR GUESTS' PROPERTY, form PB 58 01, is a part of this Policy, under B. DEFENSE, paragraph 1. is replaced by the following:

    1. We have the right and duty to defend the insured against any suit brought

seeking damages that may be covered under this endorsement even if the allegations of the suit are groundless, false or fraudulent.

3. If the REPLACEMENT COST EXTENSION – BUILDING, form PB 54 03, is a part of this Policy, paragraph A. is replaced by the following:

    A. The most we will pay for loss or damage in any one occurrence for that building is the Building Limit of Insurance shown in the Declarations increased to 125% of the amount stated in the Declarations (an increase of 25%). This increased applies after application of the Inflation Guard – Building provisions in Section C. LIMITS OF INSURANCE.

4. If the EXCLUSION – SILICA OR SILICA-RELATED DUST, form PB 05 17, is a part of this Policy:

    a. paragraph A.(1) is deleted and replaced by the following:

        (1) "Bodily injury" arising, in whole or in part, out of the actual, alleged, or threatened inhalation of, or ingestion of, "silica" or "silica-related dust".

    b. paragraph A.(2) is deleted and replaced by the following:

        (2) "Property damage" arising, in whole or in part, out of the actual, alleged, or threatened contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    c. paragraph B.(1)(a) is deleted and replaced by the following:

        (a) The actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

5. If the EXCLUSION – VIOLATION OF CONSUMER PROTECTION, form PB 29 98, is a part of this Policy:

    a. paragraphs A.3. and B.3. are deleted

    b. paragraphs A.4. and B.4. are deleted and replaced by the following:

        4. Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

PB 90 31 06 18

6. If the ADDITIONAL INSURED – GARAGE OPERATIONS PERFORMED BY THE NAMED INSURED, form PB 30 03, is a part of this Policy, under B. ADDITIONAL EXCLUSIONS, paragraph 2. is deleted and replaced by the following:

"Bodily injury" or "property damage" caused, in whole or in part, by the sole negligence of the person or organization designated in the Schedule of this endorsement.

7. If the EMPLOYEE BENEFITS LIABILITY COVERAGE (OCCURRENCE COVERAGE), form PB 42 42, is a part of this Policy:

a. The last paragraph in E.1. LIMITS OF INSURANCE, is deleted and replaced by the following:
The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy period shown in the Declarations of the Policy to which this endorsement is attached, unless the Policy period is extended after issuance of an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance, except when the Policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or late nonrenewal notice. In this case the annual aggregate limit of the expiring Policy shall be increased in proportion to the Policy extension.

b. Paragraph E.2.DEDUCTIBLE, d. is deleted and replaced by the following:
We may pay the deductible amount to effect settlement or any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such deductible amount as we have paid.

c. Paragraph G.1.a. is deleted and replaced by the following:
Giving counsel, other than legal advice, to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs".

8. If the ADDITIONAL INSURED – FAIRS, CARNIVALS OR EXPOSITIONS, form PB 60 01, is a part of this Policy, under B. ADDITIONAL EXCLUSION, paragraph 2. is deleted and replaced by the following:

To "bodily injury" or "property damage" arising out of any sole negligence of the person or organization designated in the Schedule of this endorsement.

9. f the ADDITIONAL INSURED – MUNICIPALITIES OR PUBLIC AGENCY – INSURED PROVIDING PROFESSIONAL SERVICES, form PB 60 03, is a part of this Policy, the last paragraph is deleted and replaced by the following:
This insurance, included any duty we have to defend "suits", does not apply to "bodily injury", "property damage" or "personal and advertising injury" that is caused, in whole or in part, by the sole or primary negligence of the municipality and/or public agency designated in the Schedule of this endorsement, whether or not such negligence has been assumed by you in a contract or agreement.

10. If the GARAGEKEEPERS COVERAGE, form PB 30 02, is a part of this Policy:

a. Under D. Limit of Insurance and Deductible, the first paragraph under paragraph 1. is deleted and replaced by the following:
1. Regardless of the number of "customer's autos:, insureds, premiums paid, claims made or "suits" brought, the most we will pay for each "loss" at each premises is the Garagekeepers Coverage Limit of Insurance shown in the Declaration's 'Schedule of Garagekeepers Coverages' for that premises minus the applicable deductible.

b. Under D. Limit of Insurance and Deductible, paragraphs 2. and 3. are deleted and replaced by the following:
2. The Deductible stated in the Declaration's 'Schedule of Garagekeepers Coverages' is the amount that will be deducted for "loss" to each "customer's auto".
3. The Maximum Deductible stated in the Declaration's 'Schedule of Garagekeepers Coverages' is the most that will be deducted for all "loss" in any one event.

PB 90 31 06 18

Page 13 of 14

PB 90 31 06 18

11. If the ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION, form PB 04 48, is part of this Policy, paragraph a. is deleted and replaced by the following:

a. "Bodily injury" or "property damage" that arises out of, in whole or in part, or is a result of, in while or in part, the sole negligence of the additional insured shown in the Schedule of this endorsement.

12. If the ADDITIONAL INSURED – SERVICES PERFORMED ON PREMISES OF ADDITIONAL INSURED, form PB 60 04, is part of this Policy, paragraph B. is deleted and replaced by the following:

B. This insurance, including our duty to defend "suits", does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of the person or organization designated in the Schedule of this endorsement.

13. If the CAR WASH – DAMAGE TO CUSTOMER'S AUTOS, form PB 63 06, is part of this Policy, the last paragraph under paragraph B. is deleted and replaced by the following:

"Car was operations" means the ownership, maintenance or use of premises for the purpose of a business of cleaning an "auto" with a car wash including ancillary services such as interior vacuuming, cleaning windows and drying. Washing does not include additional services such as hand washing, hand waxing, buffing, steam cleaning or other cleaning or detailing services for which the "auto" is left in the care, custody or control of the insured to complete the service.

14. If IDENTITY RECOVERY COVERAGE, form PB 58 09, is a part of this Policy, then coverage provided on that form is amended as follows:

LIMITS Item g. is deleted and replaced with the following:

g. (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expenses Reimbursement Coverage limit. Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

LIMITS Item h. is deleted in its entirety.

DEFINITIONS 2.g. is deleted and replaced with the following:

g. Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft."

(1) Such costs include:

(A) Costs by the "identity recovery insured" to recover control over his or her personal identity.

(B) Deductibles or service fees from financial institutions.

(2) Such costs do not include:

(A) Costs to avoid, prevent or detect "identity theft" or other loss.

(B) Money lost or stolen.

(C) Costs that are restricted or excluded elsewhere in this endorsement or Policy.

DEFINITIONS 2.h. is deleted in its entirety.

**All terms and conditions of this Policy apply unless modified by this endorsement.**

ACP BPFM3047086185                              INSURED COPY                              34      07830

**Nationwide®**
is on your side

**NATIONWIDE MUTUAL INSURANCE CO**

**CHANGE OF DECLARATIONS ENDORSEMENT - PLEASE READ CAREFULLY.**

| POLICY NUMBER   ACP  BPFM  3047086185 | PREMIER BUSINESSOWNERS POLICY |
|---|---|

NAMED INSURED: **BRUNO'S RESTAURANTE ITALIANO**
**BR RESTAURANT GROUP**

MAILING ADDRESS: **15822A CROSSBAY BLVD**
**HOWARD BEACH, NY    11414-3136**

| AGENT NAME: **New York Coverage Corp Agency** AGENT ADDRESS: **SMITHTOWN NY    11787** | **31  56319** **001** | PREMIUM CREDIT  **$** | **336.00-** |
|---|---|---|---|
| POLICY PERIOD: FROM    **08-05-19**   TO    **08-05-20**     12:01 A.M. Standard Time | | | |
| EFFECTIVE DATE OF CHANGE:                **04-23-20**     12:01 A.M. Standard Time | SURCHARGE/ASSESS | | **4.20-** |
| **NOT A STATEMENT - YOUR BILLING WILL FOLLOW** | TOTAL PREMIUM  **$** | | **340.20-** |
| | | | PREMIUM |
| **✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳ LOCATION / BUILDING ✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳ NO. 002000** | | **$** | **336.00-** |

```
LOC/BLDG DESCRIBED PREMISES
01  01   15822A CROSSBAY BLVD                 HOWARD BEACH          NY
         RESTAURANT

CHANGED COVERAGE B LIMIT
      FROM :      $616,800
      TO   :      $515,000
```

P88114 (01-01) 02

**DIRECT BILL    LO6K  20149**                    **INSURED COPY**                    **R**        **917883493    34    07831**

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

BR RESTAURANT CORP. d/b/a BRUNO'S
RESTAURANTE ITALIANO,

Plaintiff,

-against-

NATIONWIDE MUTUAL INSURANCE
COMPANY,

Defendant.

**AMENDED SUMMONS**

Index No. 604487/2020

**To the above named Defendant:**

**You Are Hereby Summoned** *to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance with a demand for the complaint, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.*

*Plaintiff designates* Nassau County *as the place of trial.*

*The basis of the venue is* Defendant's place of business.

*Dated this* 27th *day of* May, *2020.*

**COLE HANSEN CHESTER LLP**
*Attorneys for Plaintiff*
By: Michael S. Cole, Esq.
*767 Third Avenue – 24th Floor*
*New York, New York 10017*
*Tel: (212) 599-1535*
*Email: mscole@chcllp.com*

**Temporary Operating Address:**
2009 Park Avenue
P.O. Box 160
Atlantic Beach, New York 11509

Case 2:20-cv-02756-GRB-AKT Document 13 Filed 09/03/20 Page 118 of 223 PageID #: 361

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

BR RESTAURANT CORP. d/b/a BRUNO'S
RESTAURANTE ITALIANO,

                                    Plaintiff,

                - against -

NATIONWIDE MUTUAL INSURANCE
COMPANY,

                                    Defendant.

**AMENDED COMPLAINT**

Index No. 604487/2020

The plaintiff BR Restaurant Corp. d/b/a Bruno's Restaurante Italiano, by its attorneys

Cole Hansen Chester LLP, complaining of the defendant respectfully alleges:

*The Parties*

1.      The plaintiff *BR Restaurant Corp. d/b/a Bruno's Restaurante Italiano* (hereinafter

"Bruno's Restaurante") is a restaurant business located at158-22A Crossbay Boulevard, Howard

Beach, New York.

2.      The defendant *Nationwide Mutual Insurance Company* (hereinafter

"Nationwide") is a foreign corporation organized and existing under the laws of State of Ohio

and duly authorized to do insurance business and doing business in the State of New York,

County of Nassau.

Case 2:20-cv-02756-GRB-AKT Document 13 Filed 09/03/20 Page 119 of 223 PageID #: 362

3.     Plaintiff Bruno's Restaurante has a business interruption insurance policy with defendant Nationwide wherein defendant has refused plaintiff's claim for coverage as further detailed below.

### *Statement of Claim in Brief*

4.     Whereas rule of law mandates material ambiguity in an insurance policy held against the insurer, whereas strong equities favor the insured in present extraordinary circumstances: defendant insurer must make good business interruption coverage reasonably promised to the insured per the strict interpretation of the terms of the insurance contract.

5.     The business interruption insurance policy with the insured in this case has been ambiguously if not intentionally written in deceptive manner – formatted as to make coverage appear broader than the insurer is willing to provide. In fitting consequence, the deceptive formatting created an ambiguity in interpreting the coverage at issue.  This ambiguity must be held against the insurer as a matter of law.

6.     The insurance policy as strictly written promises omnibus business interruption insurance coverage except for express conditional limitation on coverage viz. *exclusions* represented as being contained in designated sections only.  The insurer then placed an omnibus exclusion, the exclusion at issue, concerning virus infection, in an undesignated other section.

One not reasonably likely to be found by the insured and contrary to the promise made in the earlier conditional limitation provision.

7.     An insurance company with years of experience, batteries of lawyers, knew or reasonably should have known, formatting the policy in this way is likely to mislead the insured on coverage.  Hoisted on its own petard in doing so, the insurer created ambiguity to be construed against it per the material facts of the claim detailed below.

8.     The plaintiff insured, Bruno's Restaurante, Howard Beach Queens, paid $40,000 per year in premiums to defendant Nationwide for three years – for coverage reasonably expected and never received.

*Material Facts of the Claim*

9.     The subject Nationwide business interruption insurance policy was renewed in 2019 by the insured Bruno's Restaurante as part of an insurance package with a premium of $40,000 per year.

10.     The business interruption insurance coverage promised is for *direct physical loss or damage* to *covered property* from a *covered cause of loss*.

11.     In this case, the insurer denies coverage by letter to the insured dated April 2, 2020 stating "coronavirus and government action" not a covered loss.  More specifically, the

Case 2:20-cv-02756-GRB-ART   Document 13   Filed 09/03/20   Page 121 of 223 PageID #: 364

insurer stated that pursuant to the terms of the policy *there has been no physical loss or damage to the described premises arising from a covered cause of loss.* See defendant insurer's denial letter annexed hereto as **Exhibit A**.

12.     The *described premises* under the policy is Bruno's Restaurante located at 158-22A Crossbay Boulevard, Howard Beach New York.

13.     The insured's claim for coverage of *physical loss* to the described premises arises from prohibition of on-premise use of the restaurant per the civil authority viz. the New York Governor's emergency order prohibiting on-premise operation or use of the restaurant.

14.     Insurance policy *Section 5j* under the heading *Civil Authority* expressly promises to pay for *physical loss or damage* to the described premises caused by civil authority which prohibits access to the premises arising *from any covered cause of loss.*

15.     Introductory paragraph A(3) of the policy defining *covered cause of loss* states cause of loss is covered <u>unless</u> *excluded* or *limited* in the following designated provisions of the policy: *Section B*; as limited in *Section A4*; as limited or excluded in *Section E*; *Section F*.

16.     Nevertheless, at pages 5 and 6 of the insurer's denial letter (Exhibit A) there is quoted *Section K* of the policy entitled *Amendments to Property Coverage*. Billeted at item 8 of Section K is a provision peremptorily stating *virus* as an omnibus exclusion to coverage. Item 8 of Section K is thus deceptively written as an omnibus exclusion to coverage inconsistent and

contrary to the prior conditional limitation limiting all exclusions to business loss coverage to expressly designated sections other than Section K.

17.     The conditional limitation on all policy coverage exclusions limited to designated sections is irreconcilable with the outlier omnibus policy exclusion relied upon by the insurer in denying coverage.  It is ambiguity in coverage created by the contradiction of material terms in the insurance policy.

18.     Ambiguity favors the insured at law.

19.     As a matter of law, the defendant insurer is therefore in breach of contract denying the claim of the plaintiff insured for business interruption loss.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

20.     The plaintiff repeats and re-alleges paragraphs 1 through paragraph 19 as if fully set forth herein.

21.     That by reason of the defendant's breach of the promise of business interruption insurance, the plaintiff has been damaged in the amount of $360,000 (Three Hundred Sixty Thousand Dollars) or such other or greater amount as may be proven at a trial of this action.

**WHEREFORE,** the plaintiff insured demands judgment as follows:

1. On the First Cause of Action against the defendant insurer for breach of contract damages in the amount of $360,000 (Three Hundred Sixty Thousand Dollars) or such other or greater amount as may be proven at a trial of this action.

2. Judgment interest and costs.

3. Such other and further relief as may be just and proper.

Dated: New York, New York
      May 27, 2020

Yours, etc.,

COLE HANSEN CHESTER LLP
Attorneys for Plaintiff
By:  Michael S. Cole, Esq.
767 Third Avenue – 24th Floor
New York, New York  10017
Tel:  (212) 599-1535

**Temporary Operating Address:**
2009 Park Avenue
P.O. Box 160
Atlantic Beach, New York  11509

Case 2:20-cv-02756-GRB-AKT   Document 13   Filed 09/03/20   Page 124 of 223 PageID #: 367

# Exhibit A

Exhibit A



**BRUNO'S RESTAURANTE ITALIANO**
Page **1** of 7

| | |
|---|---|
| Date prepared | April 2, 2020 |
| Claim number | 357142-GK |
| Policy number | ACP BPFM3047086185 |
| Questions? | Contact Claims Associate Jacob Taylor TAYLJ25@nationwide.com Phone 614-435-2878 Fax 877-304-5166 |

BRUNO'S RESTAURANTE ITALIANO
15822A CROSSBAY BLVD
HOWARD BEACH, NY 11414-3136

## Claim details

Insurer: Nationwide Mutual Insurance Company
Policyholder: BRUNO'S RESTAURANTE ITALIANO
Claim number: 357142-GK
Loss date: March 17, 2020

Dear BRUNO'S RESTAURANTE ITALIANO,

We completed our review of this business income loss reported to have occurred on March 17, 2020. We made every effort to provide a fair and thorough evaluation of your policy of insurance and investigation of your loss.

Based on our investigation and review of your policy contract, Nationwide Mutual Insurance Company's opinion is this loss was caused by decrease in business from the coronavirus as well as the resulting government actions. We must respectfully advise you that your policy number ACP BPFM3047086185 does not provide coverage for this loss.

## About our decision

Our investigation indicates that you operate a restaurant. Due to the coronavirus your business has seen a significant decrease in business.

We have analyzed available coverages under your Premier Businessowners policy (PB0002 01/08) and offer the following:

Your Premier Businessowners policy provides coverage in the event of direct physical loss or damage to Covered Property at the described premises, caused by or resulting from a Covered Cause of Loss. However, there was no direct physical loss or damage to Covered Property at the described premises of:

15822A Crossbay Blvd Howard Beach, NY 11414

Coverage for Loss of Business Income is provided as an Additional Coverage under your policy. This additional coverage provides that we will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. However, the

Case 2:20-cv-02756-GRB-AKT   Document 13   Filed 09/03/20   Page 126 of 223 PageID #: 369

suspension of your business operations was not a result of direct physical loss or damage to property at the described premises.

Civil Authority Additional Coverage provides Business Income loss when the action of civil authority prohibits access to the described premises.  The action of civil authority must be taken in response to damage to property, other than the described premises, from any Covered Cause of Loss. There has been no damage to property other than the described premises from a Covered Cause of Loss.

Your policy also includes New York Amendatory Endorsement (PB9031 06/18) which provides that we will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. Because damage from Virus or Bacteria is excluded, the closing of the business was not the result of a Covered Cause of Loss.

In summary, based on the relevant policy provisions and the facts of your claim, the business loss has not occurred as a result of direct physical loss or damage caused by or resulting from a Covered Cause of Loss. Therefore, we are unable to extend coverage for your claim under any of the available coverages in your policy.

The following policy language is provided for your review:

## Policy details

Your Businessowners policy states the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM PB 0002 (ed. 01-08)
Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.
Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section H. PROPERTY DEFINITIONS.

A. COVERAGES
   We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

   1. COVERED PROPERTY
   Covered Property, as used in this policy, means Buildings and Business Personal Property as described in paragraphs a. and b. in this section A.1., if a Limit of Insurance is shown in the Declarations for that type of property. HOWEVER, there is no coverage for property described under A.2. PROPERTY NOT COVERED, unless an exception is stated for that property.

   3. COVERED CAUSES OF LOSS
   This Coverage Form insures against Risks Of Direct Physical Loss unless the loss is:
      a. Excluded in Section B. EXCLUSIONS;

b. Limited in Paragraph A.4. LIMITATIONS in this section; or

c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS; that follow.

5. ADDITIONAL COVERAGES

g. Business Income

(1) Business Income with Ordinary Payroll Limitation

(a) We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle,

the described premises include the area within 1,000 feet of the site at which the described premises are located.

(b) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

(ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(c) We will only pay for loss of "business income" that you sustain during the "period of restoration" and that occurs within the number of consecutive months shown in the Declarations for Business Income – Actual Loss Sustained after the date of direct physical loss or damage. We will only pay for "ordinary payroll expenses" for the number of days shown in the Declarations for Ordinary Payroll Limit following the date of direct physical loss or damage.

j. Civil Authority

(1) We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(2) The coverage for "business income" will begin 72 hours after the time of that action and will apply for a period of up to 30 days after coverage begins.

(3) The coverage for necessary "extra expense" will begin immediately after the time of that action and ends:

(a) 30 days after the time of that action; or

(b) When your "business income" coverage ends; whichever is later.

(4) This Civil Authority Additional Coverage is not subject to the Limits of Insurance

t. Dependent Properties – Business Income

(1) We will pay for the actual loss of "business income" you sustain due to the necessary and unavoidable suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss.

(2) We will only pay for loss of "business income" that occurs within 12 consecutive months

Case 2:20-cv-02756-GRB-AKT   Document 13   Filed 09/03/20   Page 128 of 223 PageID #: 371

after the date of direct physical loss or damage.

(3 This Dependent Properties – Business Income Additional Coverage is not subject to the Limits of Insurance.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

2. We will not pay for loss or damage caused by or resulting from any of the following:

   a. Consequential Losses

   Delay, loss of use or loss of market.

## E. PROPERTY LOSS CONDITIONS

4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

   a. There has been full compliance with all of the terms of this insurance; and

   b. The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

## H. PROPERTY DEFINITIONS

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as following:

3. "Business Income" means the:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other

   businesses; plus

   b. Necessary continuing normal operating expenses incurred, while "operations" are suspended, including payroll.

5. "Dependent property" means property owned or operated by others, not including any described premises, on whom you depend on to:

   a. Deliver materials or services to you, or to others for your account. Services does not include water, steam, fuel, communication, or power supply services.

   b. Purchase your products or services.

   c. Manufacture products for delivery to your customers under contract of sale.

   d. Attract customers to your business. But this does not include firms in the business of promoting or advertising your business.

10. "Operations" mean your business activities occurring at the described premises.

Case 2:20-cv-02756-GRB-AKT Document 13 Filed 09/03/20 Page 129 of 223 PageID #: 372

12. "Period of restoration" means:

a. For other than the Dependent Properties Additional Coverage and Business Income and Extra Expense – Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

(1) The period of time that:

(a) Begins the number of hours shown in the Declarations after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

(b) Ends on the earlier of:

(i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when business is resumed at a new permanent location.

(2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) The expiration date of this policy will not cut short the "period of restoration".

(...)

c. For Dependent Properties Additional Coverage:

(1) The period of time that:

(a) Begins:

(i) 24 hours after the time of direct physical loss or damage for Business Income Additional Coverage; or

(ii) Immediately after the time of direct physical loss or damage for Extra Expense; Caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

(b) Ends on the earlier of:

(i) The date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when your business is resumed at a permanent new location.

(2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) The expiration date of this policy will not cut short the "period of restoration".

The policy also includes the New York Amendatory Endorsement (PB9031 06/18) and the following applies:

K. AMENDMENTS TO THE PROPERTY COVERAGE FORM

Case 2:20-cv-02756-GRB-AKT   Document 13   Filed 09/03/20   Page 130 of 223 PageID #: 373

7. The exclusion set forth in paragraph 8. below applies to all coverage under the PROPERTY COVERAGE in all forms and endorsements that comprise this Businessowners Policy, except as provided in paragraph 9 below. This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

8. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

9. However, the exclusion in paragraph 8. above does not apply to the following:

a. Loss or damage caused by or resulting from fungus. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

b. Coverage otherwise provided under the Food Contamination Additional Coverage in the Food Service Plus Endorsement PB 20 02 if that endorsement is attached to this Businessowners Policy.

10. The terms of the exclusion in paragraph 8. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

## Additional information

We expressly reserve all other rights, defenses, or contentions, which are available to us under the policy of insurance, by law or otherwise, and do not waive any such rights or defenses which we now have or which may become known to us in the future.

NEW YORK INSURANCE REGULATIONS REQUIRE US TO ADVISE YOU THAT IN THE EVENT YOU WISH TO CONTEST THIS DENIAL IN LITIGATION, THE POLICY REQUIRES YOU TO COMMENCE AN ACTION WITHIN 2 YEAR(S) OF THE DATE OF LOSS. To recover damages from this claim, you must either settle your claim or file a lawsuit against the responsible party(ies) before the Statute of Limitations expires.

If you have information about this claim that may affect our current decision — please forward it to us as soon as possible.

## For more information

If you have any questions or concerns, please contact me at 614-435-2878 or TAYLJ25@nationwide.com.

Sincerely,

Jacob Taylor
Nationwide Mutual Insurance Company
PO Box 182068
Columbus, OH 43218-2068

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at http://www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write to or visit the Consumer Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: One State Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257;

Case 2:20-cv-02756-GRB-AKT  Document 13  Filed 09/03/20  Page 131 of 223 PageID #: 374

**BRUNO'S RESTAURANTE ITALIANO**
**Claim #** 357142-GK
Page **7** of 7

1399 Franklin Avenue, Garden City, NY 11530; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 14202. Call 212-480-6400 or toll free 800-342-3736 (M-F from 8:30am – 4:30pm).

Any person who knowingly and with intent to defraud an insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Case 2:20-cv-02756-GRB-AKT Document 13 Filed 09/03/20 Page 132 of 223 PageID #: 375

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

BR RESTAURANT CORP. d/b/a BRUNO'S RESTAURANTE ITALIANO,

INDEX NUMBER: 604487/2020

*Plaintiff*

vs

NATIONWIDE MUTUAL INSURANCE COMPANY,

*Defendant*

## AFFIDAVIT OF SERVICE

State of Ohio }
County of Franklin }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the State of Ohio.

That on **06/02/2020** at **9:40 AM** at **50 W Broad Street, Columbus, OH 43215**

deponent served a(n) **Amended Summons and Amended Complaint with Exhibit A**

on **Nationwide Mutual Insurance Company c/o Corporation Service Company**, Registered Agent,

by delivering thereat a true copy to **Deanna Schauseil** personally, authorized to accept service thereof.

Description of Person Served:
Gender: Female
Skin: White
Hair: Brown
Age: 36 - 50 Yrs.
Height: 5' 4" - 5' 8"
Weight:131-160 Lbs.

Notes pertaining to service:

On 06/02/2020 at 9:25 AM, deponent attempted service on defendant **Nationwide Mutual Insurance Company** at **One West Nationwide Plaza, Columbus, OH 43215**.  Deponent was advised by security at this location to serve the documents c/o their registered agent Corporation Service Company.

Sworn to before me this
3 ᴺᴰ day of June, 2020

------------------------
NOTARY PUBLIC

Jeffrey A. Cremeans
Notary Public, State of Ohio
My Commission Expires 6-14-24

------------------------
Erika Cremeans

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160

EXHIBIT C



| | |
|---|---|
| **Date prepared** | April 2, 2020 |
| **Claim number** | 357142-GK |
| **Policy number** | ACP BPFM3047086185 |
| **Questions?** | Contact Claims Associate |
| | Jacob Taylor |
| | TAYLJ25@nationwide.com |
| | Phone 614-435-2878 |
| | Fax 877-304-5166 |

BRUNO'S RESTAURANTE ITALIANO
15822A CROSSBAY BLVD
HOWARD BEACH, NY  11414-3136

## Claim details

| | |
|---|---|
| Insurer: | Nationwide Mutual Insurance Company |
| Policyholder: | BRUNO'S RESTAURANTE ITALIANO |
| Claim number: | 357142-GK |
| Loss date: | March 17, 2020 |

Dear BRUNO'S RESTAURANTE ITALIANO,

We completed our review of this business income loss reported to have occurred on March 17, 2020. We made every effort to provide a fair and thorough evaluation of your policy of insurance and investigation of your loss.

Based on our investigation and review of your policy contract, Nationwide Mutual Insurance Company's opinion is this loss was caused by decrease in business from the coronavirus as well as the resulting government actions. We must respectfully advise you that your policy number ACP BPFM3047086185 does not provide coverage for this loss.

## About our decision

Our investigation indicates that you operate a restaurant. Due to the coronavirus your business has seen a significant decrease in business.

We have analyzed available coverages under your Premier Businessowners policy (PB0002 01/08) and offer the following:

Your Premier Businessowners policy provides coverage in the event of direct physical loss or damage to Covered Property at the described premises, caused by or resulting from a Covered Cause of Loss. However, there was no direct physical loss or damage to Covered Property at the described premises of:

15822A Crossbay Blvd Howard Beach, NY 11414

Coverage for Loss of Business Income is provided as an Additional Coverage under your policy. This additional coverage provides that we will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. However, the

suspension of your business operations was not a result of direct physical loss or damage to property at the described premises.

Civil Authority Additional Coverage provides Business Income loss when the action of civil authority prohibits access to the described premises.  The action of civil authority must be taken in response to damage to property, other than the described premises, from any Covered Cause of Loss. There has been no damage to property other than the described premises from a Covered Cause of Loss.

Your policy also includes New York Amendatory Endorsement (PB9031 06/18) which provides that we will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. Because damage from Virus or Bacteria is excluded, the closing of the business was not the result of a Covered Cause of Loss.

In summary, based on the relevant policy provisions and the facts of your claim, the business loss has not occurred as a result of direct physical loss or damage caused by or resulting from a Covered Cause of Loss. Therefore, we are unable to extend coverage for your claim under any of the available coverages in your policy.

The following policy language is provided for your review:

## Policy details

Your Businessowners policy states the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM PB 0002 (ed. 01-08)
Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.
Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section H. PROPERTY DEFINITIONS.

A. COVERAGES
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. COVERED PROPERTY
Covered Property, as used in this policy, means Buildings and Business Personal Property as described in paragraphs a. and b. in this section A.1., if a Limit of Insurance is shown in the Declarations for that type of property. HOWEVER, there is no coverage for property described under A.2. PROPERTY NOT COVERED, unless an exception is stated for that property.

3. COVERED CAUSES OF LOSS
This Coverage Form insures against Risks Of Direct Physical Loss unless the loss is:
a. Excluded in Section B. EXCLUSIONS;

b. Limited in Paragraph A.4. LIMITATIONS in this section; or

c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS; that follow.

5. ADDITIONAL COVERAGES

g. Business Income

(1) Business Income with Ordinary Payroll Limitation

(a) We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

(b) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

(ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(c) We will only pay for loss of "business income" that you sustain during the "period of restoration" and that occurs within the number of consecutive months shown in the Declarations for Business Income – Actual Loss Sustained after the date of direct physical loss or damage. We will only pay for "ordinary payroll expenses" for the number of days shown in the Declarations for Ordinary Payroll Limit following the date of direct physical loss or damage.

j. Civil Authority

(1) We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(2) The coverage for "business income" will begin 72 hours after the time of that action and will apply for a period of up to 30 days after coverage begins.

(3) The coverage for necessary "extra expense" will begin immediately after the time of that action and ends:

(a) 30 days after the time of that action; or

(b) When your "business income" coverage ends; whichever is later.

(4) This Civil Authority Additional Coverage is not subject to the Limits of Insurance

t. Dependent Properties – Business Income

(1) We will pay for the actual loss of "business income" you sustain due to the necessary and unavoidable suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss.

(2) We will only pay for loss of "business income" that occurs within 12 consecutive months

after the date of direct physical loss or damage.

(3 This Dependent Properties – Business Income Additional Coverage is not subject to the Limits of Insurance.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Consequential Losses

Delay, loss of use or loss of market.

## E. PROPERTY LOSS CONDITIONS

4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

## H. PROPERTY DEFINITIONS

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as following:

3. "Business Income" means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other

businesses; plus

b. Necessary continuing normal operating expenses incurred, while "operations" are suspended, including payroll.

5. "Dependent property" means property owned or operated by others, not including any described premises, on whom you depend on to:

a. Deliver materials or services to you, or to others for your account. Services does not include water, steam, fuel, communication, or power supply services.

b. Purchase your products or services.

c. Manufacture products for delivery to your customers under contract of sale.

d. Attract customers to your business. But this does not include firms in the business of promoting or advertising your business.

10. "Operations" mean your business activities occurring at the described premises.

12. "Period of restoration" means:

a. For other than the Dependent Properties Additional Coverage and Business Income and Extra Expense – Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

(1) The period of time that:

(a) Begins the number of hours shown in the Declarations after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

(b) Ends on the earlier of:

(i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when business is resumed at a new permanent location.

(2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) The expiration date of this policy will not cut short the "period of restoration".

(...)

c. For Dependent Properties Additional Coverage:

(1) The period of time that:

(a) Begins:

(i) 24 hours after the time of direct physical loss or damage for Business Income Additional Coverage; or

(ii) Immediately after the time of direct physical loss or damage for Extra Expense; Caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

(b) Ends on the earlier of:

(i) The date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when your business is resumed at a permanent new location.

(2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(3) The expiration date of this policy will not cut short the "period of restoration".

The policy also includes the New York Amendatory Endorsement (PB9031 06/18) and the following applies:

K. AMENDMENTS TO THE PROPERTY COVERAGE FORM

7. The exclusion set forth in paragraph 8. below applies to all coverage under the PROPERTY COVERAGE in all forms and endorsements that comprise this Businessowners Policy, except as provided in paragraph 9 below. This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

8. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

9. However, the exclusion in paragraph 8. above does not apply to the following:

a. Loss or damage caused by or resulting from fungus. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

b. Coverage otherwise provided under the Food Contamination Additional Coverage in the Food Service Plus Endorsement PB 20 02 if that endorsement is attached to this Businessowners Policy.

10. The terms of the exclusion in paragraph 8. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

## Additional information

We expressly reserve all other rights, defenses, or contentions, which are available to us under the policy of insurance, by law or otherwise, and do not waive any such rights or defenses which we now have or which may become known to us in the future.

NEW YORK INSURANCE REGULATIONS REQUIRE US TO ADVISE YOU THAT IN THE EVENT YOU WISH TO CONTEST THIS DENIAL IN LITIGATION, THE POLICY REQUIRES YOU TO COMMENCE AN ACTION WITHIN 2 YEAR(S) OF THE DATE OF LOSS. To recover damages from this claim, you must either settle your claim or file a lawsuit against the responsible party(ies) before the Statute of Limitations expires.

If you have information about this claim that may affect our current decision — please forward it to us as soon as possible.

## For more information

If you have any questions or concerns, please contact me at 614-435-2878 or TAYLJ25@nationwide.com.

Sincerely,

Jacob Taylor
Nationwide Mutual Insurance Company
PO Box 182068
Columbus, OH 43218-2068

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at http://www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write to or visit the Consumer Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: One State Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257;

1399 Franklin Avenue, Garden City, NY 11530; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 14202. Call 212-480-6400 or toll free 800-342-3736 (M-F from 8:30am – 4:30pm).

Any person who knowingly and with intent to defraud an insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

EXHIBIT D



No. 202

E X E C U T I V E   O R D E R

**Declaring a Disaster Emergency in the State of New York**

**WHEREAS**, on January 30, 2020, the World Health Organization designated the novel coronavirus, COVID-19, outbreak as a Public Health Emergency of International Concern;

**WHEREAS**, on January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19;

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and more are expected to continue; and

**WHEREAS**, New York State is addressing the threat that COVID-19 poses to the health and welfare of its residents and visitors.

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the Laws of the State of New York, hereby find, pursuant to Section 28 of Article 2-B of the Executive Law, that a disaster is impending in New York State, for which the affected local governments are unable to respond adequately, and I do hereby declare a State disaster emergency for the entire State of New York. This Executive Order shall be in effect until September 7, 2020; and

**IN ADDITION**, this declaration satisfies the requirements of 49 C.F.R. 390.23(a)(I)(A), which provides relief from Parts 390 through 399 of the Federal Motor Carrier Safety Regulations (FMCSR). Such relief from the FMCSR is necessary to ensure that crews are available as needed.

**FURTHER**, pursuant to Section 29 of Article 2-B of the Executive Law, I direct the implementation of the State Comprehensive Emergency Management Plan and authorize all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 6, 2020 the following:

Section 112 of the State Finance Law, to the extent consistent with Article V, Section 1 of the State Constitution, and to the extent necessary to add additional work, sites, and time to State contracts or to award emergency contracts, including but not limited to emergency contracts or leases for relocation and support of State operations under Section 3 of the Public Buildings Law; or emergency contracts under Section 9 of the Public Buildings Law; or emergency contracts for professional services under Section 136-a of the State Finance Law; or emergency contracts for commodities, services, and technology under Section 163 of the State Finance Law; or design-build or best value contracts under and Part F of Chapter 60 of the Laws of 2015 and Part RRR of Chapter 59 of the Laws of 2017; or emergency contracts for purchases of commodities, services, and technology through any federal GSA schedules, federal 1122 programs, or other state, regional, local, multi-jurisdictional, or cooperative contract vehicles;

Section 163 of the State Finance Law and Article 4-C of the Economic Development Law, to the extent necessary to allow the purchase of necessary commodities, services, technology, and materials without following the standard notice and procurement processes;

Section 97-G of the State Finance Law, to the extent necessary to purchase food, supplies, services, and equipment or furnish or provide various centralized services, including but not limited to, building design and construction services to assist affected local governments, individuals, and other non-State entities in responding to and recovering from the disaster emergency;

Section 359-a, Section 2879, and 2879-a of the Public Authorities Law to the extent necessary to purchase necessary goods and services without following the standard procurement processes;

Sections 375, 385 and 401 of the Vehicle and Traffic Law to the extent that exemption for vehicles validly registered in other jurisdictions from vehicle registration, equipment and dimension requirements is necessary to assist in preparedness and response to the COVID-19 outbreak;

Sections 6521 and 6902 of the Education Law, to the extent necessary to permit unlicensed individuals, upon completion of training deemed adequate by the Commissioner of Health, to collect throat or nasopharyngeal swab specimens from individuals suspected of being infected by COVID-19, for purposes of testing; and to the extent necessary to permit non-nursing staff, upon completion of training deemed adequate by the Commissioner of Health, to perform tasks, under the supervision of a nurse, otherwise limited to the scope of practice of a licensed or registered nurse;

Subdivision 6 of section 2510 and section 2511 of the Public Health Law, to the extent necessary to waive or revise eligibility criteria, documentation requirements, or premium contributions; modify covered health care services or the scope and level of such services set forth in contracts; increase subsidy payments to approved organizations, including the maximum dollar amount set forth in contracts; or provide extensions for required reports due by approved organizations in accordance with contracts;

Section 224-b and subdivision 4 of section 225 of the Public Health Law, to the extent necessary to permit the Commissioner of Health to promulgate emergency regulations and to amend the State Sanitary Code;

Subdivision 2 of section 2803 of the Public Health Law, to the extent necessary to permit the Commissioner to promulgate emergency regulations concerning the facilities licensed pursuant to Article 28 of the Public Health Law, including but not limited to the operation of general hospitals;

Subdivision 3 of section 273 of the Public Health Law and subdivisions 25 and 25-a of section 364-j of the Social Services Law, to the extent necessary to allow patients to receive prescribed drugs without delay;

Section 400.9 and paragraph 7 of subdivision f of section 405.9 of Title 10 of the NYCRR, to the extent necessary to permit general hospitals and nursing homes licensed pursuant to Article 28 of the Public Health Law ("Article 28 facilities") that are treating patients during the disaster emergency to rapidly discharge, transfer, or receive such patients, as authorized by the Commissioner of Health, provided such facilities take all reasonable measures to protect the health and safety of such patients and residents, including safe transfer and discharge practices, and to comply with the Emergency Medical Treatment and Active Labor Act (42 U.S.C. section 1395dd) and any associated regulations;

Section 400.11 of Title 10 of the NYCRR, to the extent necessary to permit Article 28 facilities receiving patients as a result of the disaster emergency to complete patient review instruments as soon as practicable;

Section 405 of Title 10 of the NYCRR, to the extent necessary to maintain the public health with respect to treatment or containment of individuals with or suspected to have COVID-19;

Subdivision d and u of section 800.3 of Title 10 of the NYCRR, to the extent necessary to permit emergency medical service personnel to provide community paramedicine, transportation to destinations other than hospitals or health care facilities, telemedicine to facilitate treatment of patients in place, and such other services as may be approved by the Commissioner of Health;

Paragraph 3 of subdivision f of section 505.14 of Title 18 of the NYCRR, to the extent necessary to permit nursing supervision visits for personal care services provided to individuals affected by the disaster emergency be made as soon as practicable;

Sections 8602 and 8603 of the Education Law, and section 58-1.5 of Title 10 of the NYCRR, to the extent necessary to permit individuals who meet the federal requirements for high complexity testing to perform testing for the detection of SARS-CoV-2 in specimens collected from individuals suspected of suffering from a COVID-19 infection;

Subdivision 4 of section 6909 of the Public Health Law, subdivision 6 of section 6527 of the Education Law, and section 64.7 of Title 8 of the NYCRR, to the extent necessary to permit physicians and certified nurse practitioners to issue a non-patient specific regimen to nurses or any such other persons authorized by law or by this executive order to collect throat or nasopharyngeal swab specimens from individuals suspected of suffering from a COVID-19 infection, for purposes of testing, or to perform such other tasks as may be necessary to provide care for individuals diagnosed or suspected of suffering from a COVID-19 infection;

Section 596 of Title 14 of the NYCRR to the extent necessary to allow for rapid approval of the use of the telemental health services, including the requirements for in-person initial assessment prior to the delivery of telemental health services, limitations on who can deliver telemental health services, requirements for who must be present while telemental health services are delivered, and a recipient's right to refuse telemental health services;

Section 409-i of the Education Law, section 163-b of the State Finance Law with associated OGS guidance, and Executive Order No. 2 are suspended to the extent necessary to allow elementary and secondary schools to procure and use cleaning and maintenance products in schools; and sections 103 and 104-b of the General Municipal Law are suspended to the extent necessary to allow schools to do so without the usual advertising for bids and offers and compliance with existing procurement policies and procedures;

Article 7 of the Public Officers Law, section 41 of the General Construction Law, and section 3002 of the Public Health Law, to the extent necessary to permit the Public Health and Health Planning Council and the State Emergency Medical Services Council to meet and take such actions as authorized by law, as may be necessary to respond to the COVID-19 outbreak, without meeting quorum requirements or permitting the public in-person access to meetings, provided that any such meetings must be webcast and means for effective public comment must be made available; and

**FURTHER**, I hereby temporarily modify, for the period from the date of this Executive Order through April 6, 2020, the following laws:

Section 24 of the Executive Law; Sections 104 and 346 of the Highway Law; Sections 1602, 1630, 1640, 1650, and 1660 of the Vehicle and Traffic Law; Section 14(16) of the Transportation Law; Sections 6-602 and 17-1706 of the Village Law; Section 20(32) of the General City Law; Section 91 of Second Class Cities Law; Section 19-107(ii) of the New York City Administrative Code; and Section 107.1 of Title 21 of the New York Codes, Rules and Regulations, to the extent necessary to provide the Governor with the authority to regulate traffic and the movement of vehicles on roads, highways, and streets.

G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

seventh day of March in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor

EXHIBIT E



No. 202.3

<u>E X E C U T I V E   O R D E R</u>

**CONTINUING TEMPORARY SUSPENSION AND MODIFICATION OF LAWS RELATING TO THE DISASTER EMERGENCY**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS,** one state acting alone cannot control the continued spread of this disease and it requires coordination and cooperation amongst the states; and

**NOW, THEREFORE,** I, Governor Andrew M. Cuomo, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, or to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives and suspensions and modifications for the period from the date of this Executive Order 202.3 through April 15, 2020:

- The directive requiring large gatherings and events to be cancelled or postponed if they had anticipated attendance in excess of 500 people by virtue of Executive Order 202.1 dated March 12, 2020, is hereby amended and modified to require that any large gathering or event (concert, conference, worship service, performance before a large audience, etc.) shall be cancelled or postponed if more than fifty persons are expected in attendance, at any location in New York State until further notice.

- Any restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption. Notwithstanding any provision of the alcohol and beverage control law, a retail on-premises licensee shall be authorized for the duration of this Executive Order to sell alcohol for off-premises consumption, which shall include either take-out or delivery, subject to reasonable limitations set by the State Liquor Authority.

- Any facility authorized to conduct video lottery gaming, or casino gaming shall cease operation effective at 8 pm on March 16, 2020, and until further notice. For a Class III

Tribal Gaming enterprise or Class II Tribal Gaming enterprise, any facility should also close to the public until further notice.

- Any gym, fitness centers or classes, and movie theaters shall also cease operation effective at 8 pm on March 16, 2020 until further notice.

- No local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law and any local emergency order or any local administrative codes, charters, laws, rules or regulations, are hereby suspended with respect to any such order issued under such authority different or in conflict with Executive directives.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

sixteenth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor

EXHIBIT F

```
 1                          STATE OF MICHIGAN

 2              IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

 3   _____

 4   GAVRILIDES MANAGEMENT COMPANY,

 5                       Plaintiff,

 6   vs.                                        File No. 20-258-CB

 7

 8   MICHIGAN INSURANCE COMPANY,

 9            Defendant.

10   _____/

11

12              DEFENDANTS MOTION FOR SUMMARY DISPOSITION

13     BEFORE THE HONORABLE JOYCE DRAGANCHUK, CIRCUIT COURT JUDGE

14            LANSING, MICHIGAN - WEDNESDAY, JULY 01, 2020

15

16

17   APPEARANCES:

18   For the Plaintiff:          Matthew J. Heos-P73786

19                               3452 East Lake Lansing Road

20                               East Lansing, Michigan 48823

21                               517-256-4240

22

23

24   For the Defendant:          Henry Emrich-P29948

25                               2025 East Beltline Avenue SE-#600

26                               Grand Rapids, Michigan 49546

27                               616-285-0143

28

29

30   Recorded/transcribed by:    Susan C. Melton, CER 7548

31                               Certified Electronic Reporter

32                               (517) 483-6500 x6703

33

34

35

36

37

38

39

40

41

42

43

44
```

TABLE OF CONTENTS

WITNESSES                                                    PAGE

None.

EXHIBITS

None admitted.

| | |
|---|---|
| 1 | Lansing, Michigan |
| 2 | Wednesday, July 01, 2020 |
| 3 | 2:58:57 PM |
| 4 | THE COURT: This is, pardon me if I massacre |
| 5 | this, Gavri--, Gavrilides Management Company, et al versus |
| 6 | Michigan Insurance Company, docket number 20-258-CB. And |
| 7 | this is the time set for Defendant Michigan Insurance |
| 8 | Company's Motion for Summary Disposition. And just for the |
| 9 | record, could I have your appearances, please? |
| 10 | MR. HEOS: Yes, your Honor. Matthew Heos and Nick |
| 11 | Gavrilides is here in the courtroom also with me. He is |
| 12 | the owner of the immediate plaintiff company's. |
| 13 | MR EMRICH: Henry Emrich on behalf of Michigan |
| 14 | Insurance Company, your Honor and my assistant Chenney |
| 15 | Ward. |
| 16 | THE COURT: Okay, thank you. And your motion, Mr. |
| 17 | Emrich, if you wish to go ahead. |
| 18 | MR. EMRICH: Thank you, your Honor. I am going to |
| 19 | assume that the Court has read all of the pleadings in |
| 20 | this case, so I'll try not to belabor some of the points. |
| 21 | I think the, the key fact that we need to focus on is that |
| 22 | as we've argued is that there's no question here but the |
| 23 | policies that insure Mr. Gavrilides properties against, |
| 24 | against direct physical loss or damage to the property and |
| 25 | contrary, any claim with the policy benefits in question |

3

1 this business income coverage is illusory, the policy in

2 question here clearly provides that for the business

3 coverage, the business income coverage to apply and, and

4 most of the other primary coverages under their policy,

5 there must be a direct physical loss of or damage to the

6 insured property in order for it to apply.

7 And I think it's important as we'll discuss

8 later in our argument depending on what Mr. Heos has to

9 say, why this is important, we must focus on the fact that

10 there must be direct physical loss or damage to the

11 insured property and not direct physical loss of use of or

12 damage to the property as has been suggested by Mr.

13 Gavrilides and his attorney in order for the coverage at

14 issue to apply.

15 While I acknowledge, your Honor, that this is a

16 somewhat unique, extraordinary if you will, matter to be

17 filing at this point in the proceedings as our initial

18 pleading; I think it's important to understand that when

19 we look at Mr. Gavrilides complaint, it does not contain

20 one single allegation that this insured property has in

21 any way been damaged or lost. To the contrary, the

22 allegations in the complaint affirmatively allege that the

23 plaintiff business interruption claim is based on the

24 "Stay at Home" orders of Governor Whitmer. There is no

25 allegation of any kind that the property in question has

4

1     in any way been damaged, lost or anything of the sort.

2            Given that this motion has been brought under

3     2.116(c)(10), plaintiff must produce some evidence to

4     contradict the uncontroverted facts that have been alleged

5     not only in the complaint, but in the affidavit submitted

6     Mr. Gavrilides and in any of the other materials that Mr.

7     Heos has attached to his response as, as indicated, most

8     importantly, the affidavit of Mr. Gavrilides that

9     reiterates the admissions in the complaint that there has

10    not been any loss of or damage to either of the properties

11    for which they seek coverage.

12           The insureds property today exists in the very

13    same condition as it existed the day prior to the

14    effective date of the "Stay at Home" order.  They have not

15    been lost, they have not been damaged, they have not

16    required any repairs because of any damage to those

17    properties. The business operation, its, its operation as

18    a restaurant today is, is the same as the day prior to the

19    effective date of the order, albeit with some modifi-

20    cations that had been required to avoid grouping and to

21    maintain social distancing in, in a sense improvements to

22    the real estate.  Not repairs, you know, and, and it's

23    been maintained as a take-out, take-out operation at least

24    until recently when they resumed the dining operation.

25    There has been no loss of or damage to either building

5

1         that has prevented the plaintiff from operating as a

2         restaurant or entering it for that matter if--, as they

3         have. If plaintiffs wanted to sell either building today,

4         they could do so. And while plaintiffs have provided some

5         speculative evidence about the decreased value of that

6         property, although, as I read Mr.--, as I read the

7         materials that Mr. Heos kindly attached to his response,

8         the fact of the matter is it pointed out in that article

9         was that while they operation of a commercial property may

10        get harder, it's not impossible to operate it in the

11        future under our new normal.

12              Because plaintiffs complaint, the affidavit, the

13        other information that has been provided to your Honor

14        provides no evidence of any damage to that property.

15        Plaintiffs could never prove that either property suffered

16        any direct physical loss from the imposition of Governor

17        Whitmer's emergency order. And thus, could never recover

18        business interruption coverage under this policy based on

19        the facts that have been presented to the Court. The same

20        holds true under the business cover, income coverage, if a

21        civil authority prevents or prohibits access to either

22        property because of direct physical damage to an adjacent

23        or nearby property for the very same reason. There has

24        been no direct physical loss or damage to any adjacent

25        property that has been alleged, that has been provided to

6

1    the Court in Mr. Heos response. And frankly, when you look

2    at the order that they have, that is at issue in this

3    case, there's nothing there that prevents access to Mr.

4    Gavrilides properties whatsoever.

5            In summary, your Honor, there are no facts

6    alleged in the complaint or in any of the materials that

7    I've looked at, including Mr. Gavrilides affidavit, that

8    shows there has been direct physical loss of or damage to

9    the insured property. And for those reasons, your Honor,

10   we believe that our motion--, for those reasons alone, we

11   believe our motion for summary disposition should be

12   granted.

13           I'd just like to make a couple of additional

14   points before I shut up. I really believe summary

15   disposition is warranted on this basis alone and I would

16   turn the Court to the case that we've discussed in our, in

17   our brief, your Honor, that's referred to Universal

18   Insurance Production versus Chubb. And that's the decision

19   of the Eastern District of Michigan involving a claim that

20   involved insured property. It was damaged by a pervasive

21   odor that developed in the property as a result of mold

22   that grew in the property because of some water seepage.

23   And why that case is important is because it discusses the

24   Michigan Rules of Contract Interpretation, that still

25   apply today, policy language is clear and unambiguous on

7

1    its face, which we believe is clearly the case here that

2    states that the words and the terms of the policy should

3    be enforced utilizing plain and commonly understood

4    meanings.

5             And when I said earlier that that's important

6    when we talk about what direct physical loss of or damage

7    to property means, it means we look at those words. We

8    don't add words such as loss of use, that Mr. Heos and Mr.

9    Gavrilides have added in order to understand what we're

10   talking about here. We look at the language in the policy.

11   Every case that Mr. Heos produced your Honor, says the

12   very same thing. In Univer--, Universal, like here, the

13   policy was an 'all-risk' policy that required, like here,

14   direct physical loss or damage to the insured property in

15   order to trigger coverage unless that coverage was

16   excluded.

17            As Universal pointed out, applying a dictionary

18   meaning of direct and physical as meaning something

19   immediate or proximate as a premise to something that is

20   distant or incidental and physical meaning something that

21   has a material existence meant in the context of a loss

22   involving a contaminant that, unlike here, per the uncon-

23   troverted allegations of the complaint and other evidence

24   produced by plaintiff in response to this motion. That in

25   order for direct physical loss of the property in this

1  context, the contaminant must actually alter the structure

2  integrity of the property in order to trigger coverage

3  under language that is at issue in this case.  And it

4  didn't happen in Universal, as the Court denied coverage

5  there, granted affirmed summary disposition. And

6  importantly your Honor, it hasn't even been alleged in

7  this case. Regardless of any authority to the contrary,

8  anywhere else in the country, this remains the law in our

9  courts when interpreting policy terms at issue. There is a

10  requirement that there be direct physical loss of or

11  damage to property. And the allegations produced here in

12  the complaint and the evidence that's been attached have

13  specifically acknowledged no such contamination and no

14  such damage to the property as a result of that contami-

15  nation.

16      As in Universal, your Honor, the mere presence

17  of odor or even mold was not any evidence of structural or

18  tangible damage to the insured property. And as such, no

19  direct physical loss or damage to the property had-, was

20  occurred. Here, your Honor, we have the very same thing

21  except that we have not even had any allegations of any

22  damage to the property caused by this unfortunate, this

23  horrible virus.

24      Finally, and although we do not believe the

25  Court even has to get to this point, even if we assume for

9

1      purposes of this motion that contamination occurred on

2      each premises and that somehow effected the structural

3      integrity of either building, again, neither scenario is

4      alleged. And even if it were, we do not believe under the

5      circumstances and the science that exists that it would

6      necessarily constitute direct physical loss over damage to

7      the property. The buyer's exclusion of the policy, which

8      clearly and unequivocally states that it applies to all

9      coverages and endorsement and that the company will not

10     pay for loss or damages caused by or resulting from any

11     virus, bacteria or other microorganism that induces or is,

12     is capable of inducing physical distress, illness or

13     disease. And Lord knows, that that has certainly been the

14     case with what's happened with Covid-19 throughout our

15     country.

16            Clearly, your Honor, that exclusion, again, I

17     don't believe you even have to get there, but that

18     exclusion would clearly exclude any claim here even if

19     plaintiff's could prove direct physical loss of or damage

20     to the insured property or any nearby property that

21     resulted in a civil authority issuing an order prohibiting

22     access to the property.  As of eight days ago, your Honor,

23     they have only been few jurisdictions in this country,

24     Florida and Pennsylvania, that have discussed and applied

25     this, a similar exclusion as at issue in this case and in

1    every one of those cases, the Court has enforced that

2    exclusion as written because it's clear and unambiguous.

3    Again, your Honor, for all the reasons that we've set

4    forth here today and the brief that we filed and our

5    reply, we request that the Court grant our Motion for

6    Summary Disposition at this time. Thank you.

7                 THE COURT:   Thank you. Mr. Heos?

8                 MR. HEOS: Thank you, your Honor and may it

9    please the Court. And obviously Mr. Emrich and I have a

10   different interpretation of direct physical loss of or

11   damage to covered properties because here the loss comes

12   from the issue of the executive order restricting use of

13   property. Physically you cannot use for, for dine-in

14   services any of the interior of the building for a period

15   of time. And a complete prohibition isn't contemplated by

16   the language of the contract, I think a limited

17   restriction also falls within the coverage. And I think

18   that if you're gonna accept the defendants argument you

19   would have to limit the meaning to destruction of the

20   physical building itself, but we know that the coverage

21   extends to non-destructive loss, civil authority being

22   one.

23                 I put in example in the brief subterranean

24   pollution, you can look at asbestos or a computer virus is

25   something that would occur that there would be no physical

11

1       destruction to the property itself. The fact of the matter

2       is that Mr. Gavrilides can't use the covered properties

3       because of or he's lost rather the use of those properties

4       because of the order and it looks like that will continue

5       in some form for a while. So, I think that counsel is

6       wrong in trying to limit the scope even with the case law

7       he cited, most of which is persuasive and not binding.

8       That's number one, Judge.

9              And as for the virus exclusion itself, the only

10      case law we have relates to person to person transmission

11      of a virus at the covered property. And I think that fits

12      more with what's going on. We see in the news that Harpers

13      in East Lansing and even the Hotcat in Kalamazoo is making

14      headlines of people contracting Covid there. But, the

15      impetus of the order was to protect public health and

16      welfare, which is the governor's duty. It's not caused by

17      a virus. It would be the same order as with the damn in

18      Midland being issued to protect public health and welfare.

19      It wasn't caused by a flood. It was caused by the

20      Governor's duty to act and protect the people she's

21      charged with protecting and I think that's what happening.

22             Or it's distinguishable from the case and I

23      think it's Bowler, the case cited regarding the virus. And

24      I think that if you go further in accepting defendant's

25      position, then we get into the illusory promise of well if

12

1    the government issues an order, we're not gonna cover it

2    because any decision of a government body or group of

3    people is excluded. And so then, you get into the circle

4    in the contract where if you're going to buy into counsels

5    logic, it would make that provision illusory. And for

6    those reasons, I think that the motion should actually

7    roll back on the defendants because the language to

8    support the claim, to the extent that the Court thinks

9    there's a deficiency in my pleading and is gonna grant

10   defendants motion, I'd like Leave to Amend the Complaint.

11   But, I don't think that's the case here. And with that,

12   I'll leave it, if the Court would like to ask any

13   questions, I'm happy to take them.

14           THE COURT: I don't have any. Thank you. I'll

15   give Mr. Emrich rebuttal time.

16           MR. EMRICH: Thank you, your Honor. Your Honor,

17   what I would say is that when we talk about these cases

18   that Mr. Heos has mentioned that might provide coverage in

19   certain situations, I read those cases a little while ago

20   and I'm kind of tired reading some of these cases about

21   insurance coverage. But, the point in every one of those

22   cases is that the condition she referred to actually

23   caused damage to the property.

24           In this case, there has not been any such

25   damage. And if we look at what the coverage for business

13

1    loss or business--, the business income loss that they're

2    seeking says, it says that if the business, the coverage

3    would apply if the business operation is suspended

4    provided the suspension must be caused by the direct

5    physical loss of or damage to property. In this case, that

6    hasn't occurred. Nothing prevents Mr. Gavrilides from

7    using that property. It has been used as such. The fact

8    that there may be other coverages that may provide some

9    limited coverage, they're against what Mr. Heos is arguing

10   because clearly, if those coverages were covered under

11   this language, then why have a special coverage that

12   provides certain conditions for its application.

13            The point is, in each of those civil authority

14   cases that he talked about, the property actually

15   sustained damage. Here it didn't sustain damage. As to his

16   claim in this case, that he wants an opportunity to amend

17   his complaint if the Court feels compelled to grant my

18   motion, what is that going to accomplish? He's already

19   alleged in his complaint and his client has already signed

20   an affidavit where he no doubt put his hand up and swore

21   to the contents of that affidavit in which he said there

22   has been no damage to that property.

23            We don't create coverage by-, because somebody

24   thinks they ought to have coverage. But, that, that, that

25   whole line of cases Roy versus Continental Insurance and

14

1      some of the other cases in our, in our brief that we

2      cited, clearly supports the notion that the reasonable

3      expectation concept doesn't apply in Michigan. It just

4      doesn't cut it. There is no coverage here, your Honor.

5      That exclusion is clear. If the Court feels that there may

6      be or that there may be a situation that would give rise

7      to, but again, you have to come forward at the time that

8      you, that you respond to this motion with some evidence

9      that suggests that. That hasn't happened here. I mean even

10     when you look at the response that he's filed, he talks

11     about scenario's that have absolutely no bearing to this

12     case.

13             And you know, I'll just make one last point,

14     your Honor, you know, when I was a young Prosecutor, I had

15     the benefit of being able to argue a number of cases to

16     juries that required me to prove the defendant's guilt

17     beyond a reasonable doubt. And in those cases, I was

18     trained to listen closely to the defendant's argument and

19     had been the case where the facts were particularly

20     egregious, a defense attorney would often not even talk

21     about those facts and talk about the law. And he talked

22     about how that law was somehow created this reasonable

23     doubt in hopes of creating some confusion on the part of

24     one juror who might then find in his clients favor because

25     reasonable doubt existed. And, and in those cases, I would

15

1      make sure that when I got up in rebuttal, just as I have

2      been given the opportunity to here, I would point that out

3      to the jury and indicate to them that there's a reason for

4      that. And that's because they didn't want you to talk

5      about the facts that clearly supported conviction.

6      On the other hand, if it was a case where the

7      law, you know, or the facts may have been murky, but the

8      law was clear, the defense attorney would only focus on,

9      you know, on those facts and not talk about the law. And

10     again, I point that out to the jury there. But, in this

11     case, you know, and there were cases back then to, like

12     our case here that were neither supported by the facts or

13     the law. Which I believe is clearly the case in this case.

14     And the defense attorney would get up and argue something

15     that to the jury that had absolutely nothing to do with

16     the case in hopes of confusing them. Just like Mr. Heos

17     has suggested by talking about these asbestos cases or

18     some of these other cases that have nothing to do with

19     this.

20     Well in this case, when you look at his

21     responsive pleading, he talks about an accident situation

22     that has absolutely no application here. Nothing to do

23     with this case. While in his argument, he starts out

24     talking about a discussion of the virus of racism and as

25     there, as there, we would point out, if we were in front

1       of a jury, just like I'd point out to them and I'm

2       pointing out to you, it hasn't got anything to do with

3       this case. Your Honor, the reason for that and the reason

4       for the topic of that is that he knows that neither the

5       facts or the law support his claim and nothing he could

6       file as an amendment would change that.

7              He is hoping to somehow create this little bit

8       of possibility, some scintilla that some evidence is gonna

9       pop up that shows that the property has been damaged in

10      hopes that he could trigger coverage. And as this Court

11      knows under the cases we've discussed in our brief, that

12      is not sufficient to deny summary disposition in a case

13      that clearly warrants it even at this early stage.

14             Thank you your Honor for your patience. Thank

15      you Mr. Heos, we've never met. I've heard a lot of good

16      things about you. Mr. Gavrilides, nice to have met you,

17      very sorry for the situation you're in. It's just crazy

18      all the way around. And just like having to argue this

19      case on TV is really just disconcerting for me.  But, in

20      any event, thank you your Honor for your patience.

21             THE COURT: Thank you. You're on Youtube not TV.

22      But--

23             MR. EMRICH: I meant screen.  Yeah, whatever.

24             THE COURT: Right.

25             MR. EMRICH: The screen.

17

1            THE COURT: I, I did read the briefs. I studied

2     them very carefully and I've listened to the argument of

3     counsel today. And taking all the-, that together I, I

4     note that the plaintiff speaks of and focuses on arguments

5     about access to the property, use of the property and

6     definitions of loss and damage. But, the first inquiry has

7     to start with a full look, not just isolating some words

8     or phrases from the policy. But, a full look at the

9     coverage that's provided under the policy.

10            Coverage is provided for actual loss of business

11     income sustained during a suspension of operations. The

12     policy goes on to provide the 'suspension must be caused

13     by direct physical loss of or damage to property.' And it

14     also provides 'the loss or damage must be caused by or

15     result from a covered cause of loss. The causes of loss

16     special form provides that a covered cause of loss means

17     risks of direct physical loss.'

18            So, whether we're talking about the cause for

19     the suspension of the business or the cause for the loss

20     or the damage, it is clear from the policy coverage

21     provision only direct physical loss is covered. Under

22     their common meanings and under federal case law as well,

23     that the plaintiff has cited that interprets this standard

24     form of insurance, direct physical loss of or damage to

25     the property has to be something with material existence.

18

1       Something that is tangible. Something according to the one

2       case that the plaintiff has cited from the Eastern

3       District, that alters the physical integrity of the

4       property.  The complaint here does not allege any physical

5       loss of or damage to the property. The complaint alleges a

6       loss of business due to executive orders shutting down the

7       restaurants for dining, for dining in the restaurant due

8       to the Covid-19 threat.

9               But, the complaint also states that a no time

10      has Covid-19 entered the Soup Spoon or the Bistro through

11      any employee or customer and in fact, states that it has

12      never been present in either location. So, there simply

13      are no allegations of direct physical loss of or damage to

14      either property. The plaintiff seems to make in the

15      briefing, at least, two arguments about the language in

16      the coverage provision and what it means.

17              The first argument is that the plaintiff says

18      coverage applies to "direct physical loss or damage to

19      property."  Even if that were the wording of the coverage

20      provision, it wouldn't save the plaintiff from the

21      requirement that the loss or damage must be physical and

22      the analysis could end right there. But, I have to go on

23      to say that this is not even the wording of the coverage

24      provision. Coverage according to the policy applies to a

25      suspension caused by "direct physical loss of or damage to

1    property." So, I'm not going to get into a detailed

2    analysis of the rules of grammar. But, common rules of

3    grammar would apply to make that phrase a short-cut way of

4    saying "direct physical loss of property or direct

5    physical damage to property." So, again, the plaintiff

6    just can't avoid the requirement that there has to be

7    something that physically alters the integrity of the

8    property. There has to be some tangible, i.e., physical

9    damage to the property.

10          Then the plaintiff in the briefing, at least,

11    seems to make a second argument that and this is not 100%

12    clear, but, it seems like the plaintiff is saying that the

13    physical requirement is met because people were physically

14    restricted from dine-in services. But, that argument is

15    just simply nonsense. And it comes nowhere close to

16    meeting the requirement that there's some, there has to be

17    some physical alteration to or physical damage or tangible

18    damage to the integrity of the building.

19          So, the next argument that the plaintiff makes

20    is that the virus and bacteria exclusion is vague and

21    can't apply here.  The plaintiff has not adequately

22    explained how the term virus is vague. And in fact,

23    supplies a completely workable, understandable, usable

24    definition of the word virus. The argument in this regard

25    really seems to be more that the virus exclusion doesn't

20

1   apply. And it goes something like this as far as I can

2   tell, first, a virus can't cause physical loss or damage

3   to property because virus' harm people, not property.

4   Second, the damage caused here was really caused by

5   actions of the civil authority to protect public health.

6   And then third, therefore, coverage for acts of any

7   person, group, organization or governmental body applies.

8   But, that argument bring us right back to the direct

9   physical loss or damage requirement.  Again, going back to

10  the cause of loss special form B, as in boy, exclusions

11  provides that acts of government are only covered when

12  they result in a covered cause of loss.  A covered cause

13  of loss, again, is direct physical loss. So, even if the

14  virus exclusion did not apply, which the plaintiff has not

15  supported that it doesn't apply, I only argue that it's

16  vague, which I reject. But, even if it did not apply, it

17  could only be coverage for governmental actions that

18  resulted in direct physical loss or damage.

19          And then, finally, the plaintiff argues that the

20  policy has a contradiction in it that renders it illusory.

21  So, the plaintiff says that the policy extends coverage

22  for governmental acts. But, then, it takes it away in the

23  causes of loss special form.  But, that's simply not true.

24  Coverage is provided for actual loss of business income

25  sustained during the suspension of operations.  However,

21

1    according to the coverage provision, the suspension must

2    be caused by direct physical loss of or damage to

3    property.  And governmental acts are likewise covered if

4    it results in a covered cause of loss, which is again, a

5    direct physical loss.  There is no granting of coverage

6    and then excluding the same coverage in the policy. As a

7    matter of fact, the policy is consistent throughout and

8    consistent with federal law cited by the plaintiff. It

9    requires physical loss or damage.

10    There is a virus exclusion even if plaintiff was

11    alleging, was alleging, even if there were allegations in

12    the complaint alleging actual physical loss or damage,

13    which the complaint does not do. But, there is a virus

14    exclusion that would also apply. And governmental action

15    that results in direct physical loss is covered. But

16    again, there is no direct physical loss alleged here.

17    Now, I have to address a little bit this, that

18    it was brought as a (c)(10) motion. The actually the

19    defendant hasn't provided any support by way of factual

20    support, depositions, affidavits, et cetera, for a (c)(10)

21    motion. So, if the defendant doesn't do that, then the

22    plaintiff has no burden under Maiden versus Rosewood. So,

23    there's no shifting burden until the moving party first

24    does it. But, I don't think it properly is labeled a

25    (c)(10) motion. I think it's a (c)(8) motion. Because this

|    |                                                             |
|----|-------------------------------------------------------------|
| 1  | is the motion that can be decided as a matter of law. Take  |
| 2  | all the allegations in the complaint as true and examine    |
| 3  | nothing more than the contract upon which the complaint is  |
| 4  | based, the policy of insurance and as a matter of law, the  |
| 5  | plaintiffs complaint cannot be sustained. And although the  |
| 6  | plaintiff has requested a chance to amend without any       |
| 7  | indication of how they would do that, there actually is no  |
| 8  | factual development that could change the fact that the     |
| 9  | complaint is complaining about the loss of access or use    |
| 10 | of the premised due to executive orders and the Covid-19    |
| 11 | virus crisis. So, there's no factual development that       |
| 12 | could possibly change that or amendment to the complaint    |
| 13 | that could possibly change that those things do not         |
| 14 | constitute the direct physical damage or injury that's      |
| 15 | required under the policy as I've outlined.                 |
| 16 | So, for those reasons, I am granting the                    |
| 17 | Defendant's Motion for Summary Disposition. I'm doing it    |
| 18 | under MCR 2.116 (c)(8). And Mr.—                            |
| 19 | MR. EMRICH: Thank you, your Honor.                          |
| 20 | THE COURT: Mr. Emrich, will you submit an order?            |
| 21 | MR. EMRICH: Certainly will, your Honor.                     |
| 22 | THE COURT: Okay.                                            |
| 23 | MR. EMRICH: Thank you.                                      |
| 24 | THE COURT: Thank you.                                       |
| 25 | MR. HEOS: Thank you very much.                              |

23

1                        THE COURT: That will conclude our hearing.

2                        (Hearing concludes at 3:32:35 PM.)

3

4

5

6

7

8

9

10          STATE OF MICHIGAN)

11                           )

12          COUNTY OF INGHAM)

13

14

15

16          I certify that that this transcript, consisting of 24

17     pages, is a complete, true, and correct transcript of the

18     proceedings and testimony taken in this case on Wednesday,

19     July 01, 2020.

20

21

22     July 09, 2020                    _____

23                                      Susan C. Melton-CER 7548
24                                      30th Circuit Court
25                                      313 West Kalamazoo Avenue
26                                      Lansing, Michigan 48901
27                                      517-483-6500 ext. 6703

28

                                      24

EXHIBIT G

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION—CIVIL ACTIONS BRANCH**

| | | |
|---|---|---|
| **ROSE'S 1, LLC, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | Civil Case No. 2020 CA 002424 B |
| | * | Civil II, Calendar I |
| **v.** | * | Judge Kelly A. Higashi |
| | * | |
| **ERIE INSURANCE EXCHANGE,** | * | |
| | * | |
| **Defendant.** | * | |

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND**
**GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") and Defendant's Cross-Motion for Summary Judgment ("Defendant's Motion"). While the Court is sympathetic to the plight of Plaintiffs, it must grant summary judgment to Defendant as a matter of law.

**I.      FACTS**

Plaintiffs own and operate a number of prominent restaurants in the District of Columbia. They all purchased "Ultrapack Plus Commercial Property Coverage" from Defendant Erie Insurance Exchange. Included in this policy is coverage for "loss of 'income' and/or 'rental income'" sustained "due to partial or total 'interruption of business' resulting directly from 'loss or damage'" to the property insured. Rose's 1 Ultrapack Plus Commercial Property Coverage ("Coverage") at 3. The coverage document further states that the "policy insures against direct physical 'loss'" with the exception of several exclusions that are not relevant to this matter. *Id.* at 4.

This case comes in the context of the COVID-19 pandemic. COVID-19 is "a novel severe acute respiratory illness that has killed … more than 100,000 nationwide. At this time, there is no known cure, no effective treatment, and no vaccine. Because people may be

infected but asymptomatic, they may unwittingly infect others." *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring).  On March 11, 2020, D.C. Mayor Muriel Bowser declared a state of emergency and a public health emergency due to the "imminent hazard of or actual occurrence of widespread exposure" to COVID-19.  Plaintiffs' Statement of Material Facts ("SMF") ¶3.  On March 16, Mayor Bowser issued an order prohibiting table seating at restaurants and bars in D.C.  SMF ¶4.  On March 20, Mayor Bowser extended this ban to "standing customers at restaurants, bars, taverns, and multi-purpose facilities."  SMF ¶5.  On March 24, Mayor Bowser ordered the closure of all non-essential businesses.  SMF ¶6.  On March 30, she ordered all D.C. residents to stay in their residences except for limited "essential" reasons, a restriction that continued for several months.  SMF ¶¶7-8.

As a result of Mayor Bowser's orders, the restaurant Plaintiffs were forced to close their businesses and suffered serious revenue losses.  SMF ¶¶21-22.  To cover those losses, they filed insurance claims with Defendant pursuant to insurance policies that "are substantively identical in all ways relevant to this action."  SMF ¶78.  When Defendant denied their claims, Plaintiffs filed this lawsuit seeking a declaratory judgment that their claims were covered by the express language of their insurance contracts with Defendant.  Both sides subsequently moved for summary judgment.

## II.     SUMMARY JUDGMENT STANDARD

D.C. Superior Court Rule of Civil Procedure 56 allows a court to grant summary judgment to a party when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  D.C. Super. Ct. Civ. R. 56(a); *Perkins v. District of Columbia*, 146 A.3d 80, 84 (D.C. 2016).  In considering a motion for summary judgment, the

2

court must view the evidence "in the light most favorable to the nonmoving party, who is entitled to all favorable inferences which may reasonably be drawn from the evidentiary materials." *Phelan v. City of Mt. Rainier*, 805 A.2d 930, 936 (D.C. 2002) (internal quotation marks omitted). The Court "may not resolve issues of fact or weigh evidence at the summary judgment stage." *Fry v. Diamond Construction, Inc.*, 659 A.2d 241, 245 (D.C. 1995) (internal quotation marks omitted). Even if no material dispute of fact exists, the moving party must still establish that it is entitled to judgment as a matter of law. D.C. Super. Ct. Civ. R. 56(a).

## III.   ANALYSIS

Under District of Columbia law, "[c]ontract principles are applicable to the interpretation of an insurance policy." *Carlyle Inv. Mgmt. LLC v. Ace Am. Ins. Co.*, 131 A.3d 886, 894 (D.C. 2016). "The proper interpretation" of an insurance contract, "including whether [the] contract is ambiguous, is a legal question." *Id.* (internal quotation mark omitted) (quoting *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006)). "[A]n insurance policy is to be . . . enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1205 (D.C. 1999) (internal quotation marks omitted) (quoting *Peerless Ins. Co. v. Gonzalez*, 697 A.2d 680, 682 (Conn. 1997)). A court must "give the words used in an insurance contract their common, ordinary, and . . . popular meaning," *Id.* (omission in original) (internal quotation marks omitted) (quoting *Quadrangle Dev. Corp. v. Hartford Ins. Co.*, 645 A.2d 1074, 1075 (D.C. 1994)), and must interpret the contract "as a whole, giving reasonable, lawful, and effective meaning to all its terms, and ascertaining the meaning in light of all the circumstances surrounding the parties at the time the contract was made," *Carlyle Inv. Mgmt.*, 131 A.3d at 895 (internal quotation mark omitted) (quoting *Debnam v. Crane Co.*, 976 A.2d 193, 197 (D.C. 2009)).

"[I]f the provisions of the contract are ambiguous, the correct interpretation becomes a question for a factfinder." *Carlyle Inv. Mgmt.*, 131 A.3d 886 at 895 (internal quotation marks omitted) (quoting *Debnam*, 976 A.2d at 197-98).  "Where," however, "insurance contract language is not ambiguous, summary judgment is appropriate because a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Fogg v. Fidelity Nat. Title Ins. Co.*, 89 A.3d 510, 514 (D.C. 2014) (internal quotation marks omitted) (quoting *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 66 (D.C. 2002)). Indeed, the Court "should not seek out ambiguity where none exists." *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1172 (D.C. Cir. 2003) (citing *Medical Serv. of Dist. of Columbia v. Llewellyn*, 208 A.2d 734, 736 (D.C. 1965)).

At the most basic level, the parties dispute whether the closure of the restaurants due to Mayor Bowser's orders constituted a "direct physical loss" under the policy.  Plaintiffs start with dictionary definitions to support their case.  For example, they cite the American Heritage Dictionary definition of "direct" as "[w]ithout intervening persons, conditions, or agencies; immediate."  Plaintiffs' Motion at 9-10.  They also cite the Oxford English Dictionary definition of "physical" as pertaining to things "[o]f or pertaining to matter, or the world as perceived by the senses; material as [opposed] to mental or spiritual." *Id*. at 10.  As for "loss," it is defined by the coverage document as "direct and accidental loss of or damage to covered property."  Coverage at 36.

Plaintiffs use these definitions to make three primary arguments.  *First*, Plaintiffs argue that the loss of use of their restaurant properties was "direct" because the closures were the direct result of the mayor's orders without intervening action.  Plaintiffs' Motion at 9-10.  But those orders were governmental edicts that commanded individuals and businesses to take certain

4

actions.  Standing alone and absent intervening actions by individuals and businesses, the orders did not effect any direct changes to the properties.

*Second*, Plaintiffs argue that their losses were "physical" because the COVID-19 virus is "material" and "tangible," and because the harm they experienced was caused by the mayor's orders rather than "some abstract mental phenomenon such as irrational fear causing diners to refrain from eating out."  Plaintiffs' Motion at 11.  But Plaintiffs offer no evidence that COVID-19 was actually present on their insured properties at the time they were forced to close.  And the mayor's orders did not have any effect on the material or tangible structure of the insured properties.

*Third*, Plaintiffs argue that by defining "loss" in the policy as encompassing either "loss" or "damage," Defendant must treat the term "loss" as distinct from "damage," which connotes physical damage to the property.  Plaintiffs' Motion at 11-12.  In contrast, Plaintiffs argue, "loss" incorporates "loss of use," which only requires that Plaintiffs be deprived of the use of their properties, not that the properties suffer physical damage.  *Id*. at 12-13.  But under a natural reading of the term "direct physical loss," the words "direct" and "physical" modify the word "loss."  As such, pursuant to Plaintiffs' dictionary definitions, any "loss of use" must be caused, without the intervention of other persons or conditions, by something pertaining to matter—in other words, a direct physical intrusion on to the insured property.  Mayor Bowser's orders were not such a direct physical intrusion.

Further, none of the cases cited by Plaintiffs stand for the proposition that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy.  In *Gregory Packaging, Inc. v. Travelers Property Casualty Co. of America*, the court found that the release of ammonia into a juice cup packaging factory was a "direct physical loss" because it constituted

5

"an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event *directly upon the property* causing it to become unsatisfactory for future use or requiring that repairs be made to make it so."  2014 U.S. Dist. LEXIS 165232 at *13-19 (D.N.J. Nov. 25, 2014) (quoting *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 319-20 (Ga. Ct. App. 2003)) (internal quotation marks omitted) (emphasis added).  Similarly, in *Western Fire Insurance Co. v. First Presbyterian Church*, the Colorado Supreme Court found a "direct physical loss" when gasoline fumes from an unknown source entered an insured church and the fire department ordered the church's closure.  437 P.2d 52, 55 (Colo. 1968).  The court based its reasoning on the fact that the church "became so infiltrated and saturated as to be uninhabitable, making further use of the building highly dangerous."  *Id.*  At the same time, the Court noted that "[i]t is perhaps quite true" that the fire department's closure order, "*standing alone*, does not in and of itself constitute a 'direct physical loss.'"  *Id*. (emphasis added).  All of the other cases cited by Defendant involved some compromise to the physical integrity of the insured property.  *See Port Authority v. Affiliated FM Insurance Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (presence of asbestos in building was not "physical loss" because building owner could not show real or imminent "contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable"); *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed. Appx. 823, 826-27 (3d Cir. 2005) (presence of bacterium on property could constitute "direct physical loss" if it "reduced the use of the property to a substantial degree"); *TRAVCO Insurance Co. v. Ward*, 715 F. Supp. 2d 699, 709-10 (E.D. Va. 2010), *aff'd* 504 F. Appx. 251 (4th Cir. 2013) (home rendered uninhabitable by toxic gases released by defective drywall constituted "direct physical loss"); *Mellin v. Northern Security Insurance Company, Inc.*, 115 A.3d 799, 805 (N.H. 2015) (cat urine odor from neighboring apartment may constitute "direct

physical loss" if plaintiff could show "distinct and demonstrable alteration to the unit"); *Murray v. State Farm Fire & Casualty Co.*, 509 S.E.2d 1, 16-17 (W.Va. 1998) (landslide rendering homes uninhabitable, due to either actual physical damage or palpable future risk of physical damage from a follow-on landslide, was a "direct physical loss"); *Sentinel Management Co. v. New Hampshire Insurance Co.*, 563 N.W.2d 296, 300-01 (Minn. Ct. App. 1997) (asbestos contamination in building was "direct physical loss" when "property rendered useless").

In contrast, courts have rejected coverage when a business's closure was not due to direct physical harm to the insured premises. In *Roundabout Theatre Co. v. Continental Casualty Co.*, the City of New York ordered the closure of a theater after a portion of a neighboring building under construction collapsed onto the street and adjacent buildings. 302 A.D.2d 1, 2-3 (N.Y. App. Div. 2002). The theater itself sustained minor damage that was repaired in one day. *Id.* at 3. Nonetheless, the court found that the theater did not suffer a "direct physical loss" as a result of the city-mandated closure. *Id.* at 7. It found that "[t]he plain meaning of the words 'direct' and 'physical'" narrowed the scope of coverage and mandated "the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.* Similarly, in *Newman Myers Kreines Gross, P.C. v. Great Northern Insurance Co.*, a federal district court found that a law firm did not suffer a "direct physical loss" when an electric utility preemptively shut off power in advance of Hurricane Sandy. 17 F. Supp. 3d 323 (S.D.N.Y. 2014). The court distinguished the cases cited by the law firm (several of which were also cited by Plaintiffs in this case) as either "involv[ing] the closure of a building due to either a physical change for the worse in the premises … or a newly discovered risk to its physical integrity." *Id.* at 330. Citing *Roundabout*, the Court reasoned:

> The critical policy language here—"direct physical loss or damage"—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to

> trigger loss of business income and extra expense coverage.  Newman Myers simply cannot show any such loss or damage to the 40 Wall Street Building as a result of either (1) its inability to access its office from October 29 to November 3, 2012, or (2) Con Ed's decision to shut off the power to the Bowling Green network.  The words "direct" and "physical," which modify the phrase "loss or damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.

*Id.* at 331; *see also United Airlines, Inc. v. Insurance Co. of State of Pa*., 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the modifier 'physical' before 'damages' . . . supports [defendant's] position that physical damage is required before business interruption coverage is paid."); *Philadelphia Parking Auth. v. Federal Insurance Co.,* 385 F. Supp. 2d 280, 287-88 (S.D.N.Y. 2005) (noting that "'direct physical' modifies both loss and damage," and therefore "the interruption in business must be caused by some physical problem with the covered property . . . which must be caused by a 'covered cause of loss'").

While the Court can find no published cases in this jurisdiction analyzing the exact term "direct physical loss," cases addressing similar issues do not help Plaintiffs.  Most relevantly, in *Bros., Inc. v. Liberty Mutual Fire Insurance Co.*, the District of Columbia Court of Appeals considered whether a restaurant could recover on its claim after it lost business due to a curfew imposed by the D.C. government as a result of the riots following the assassination of Dr. Martin Luther King, Jr. in 1968.  268 A.2d 611 (D.C. 1970).  The insurance contract included this relevant language:

> In consideration of the premium for this coverage shown on the first page of this policy [Building and Contents] . . . the coverage of this policy is extended to include direct loss by . . . Riot . . . [and] Civil Commotion . . . .

> When this Endorsement is attached to a policy covering Business Interruption, . . . the term "direct," as applied to loss, means loss, as limited and conditioned in such policy, *resulting from direct loss to described property from perils insured against*; . . . .

8

*Id.* at 613 (emphasis in original).[1]   The Court of Appeals interpreted the term "direct loss" in the contract to mean "a loss proximately resulting from physical damage to the property or contents caused by a riot or civil commotion."  *Id.*  Under that definition, the Court found that the restaurant was unable to recover, since, "at the most," the restaurant's lost business due to the curfew "was an indirect, if not remote, loss resulting from riots" and there was no "physical damage to the property."  *Id.*  Accordingly, while the Court agrees with Plaintiffs that *Bros., Inc.* is not directly on point, the case does support the proposition that, in the context of property insurance, the term "direct loss" implies some form of direct physical change to the insured property.

With both dictionary definitions and the weight of case law supporting Defendant's interpretation of the term "direct physical loss," Plaintiffs' additional arguments are unconvincing.  First, Plaintiffs argue that because the insurance contract has specific exclusions for "loss of use" under some coverage lines but not for Income Protection coverage, the Court should infer that the Income Protection coverage covers losses such as Plaintiffs'.  Plaintiffs' Motion at 13-14.  But as already discussed, even if "loss of use" was covered, Plaintiffs would still have to show that the loss of use was a "direct physical loss" similar to those in the cases discussed *supra* at 5-7.  And for the reasons explained in this order, there was no "direct physical loss" to Plaintiffs.  Second, Plaintiffs argue that, unlike some similar insurance policies, their policies do not include a specific exclusion for pandemic-related losses.  *Id.* at 19-20.  But again,

---

[1] This Court notes that the phrase at issue in the *Bros., Inc.* contract was "direct loss," as opposed to "direct physical loss," at issue in the present case, and that in the *Bros., Inc.* case, there was an issue as to whether the "Building and Contents" Form, which was mistakenly attached to the policy at the time of signing, or the "Business Interruption" Form, which the insurance company later substituted, was construed by the trial court.  However, the Court of Appeals found it "unnecessary to ascertain which of the two forms was construed by the trial court," 268 A.2d at 612, as the Court found that the insurance company prevailed under both forms.

even in the absence of such an exclusion, Plaintiffs would still be required to show a "direct physical loss."  Because they cannot do so, the Court grants summary judgment to Defendant.

Accordingly, it is this **6th** day of **August, 2020**, hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED**; and it is further

**ORDERED** that Defendant's Cross-Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that judgment is **ENTERED** in favor of Defendant Erie Insurance Exchange and against Plaintiffs, the initial scheduling conference is **VACATED**, and the case is **CLOSED**.



**Kelly A. Higashi**
Associate Judge
(Signed in Chambers)

**COPIES TO:**
David L. Feinberg
Michael C. Davis
George E. Reede, Jr.
Jessica Pak
*Via CaseFileXpress*

EXHIBIT H

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DIESEL BARBERSHOP, LLC; | § | No. 5:20–CV–461–DAE |
| WILDERNESS OAKS CUTTERS, | § | |
| LLC; DIESEL BARBERSHOP | § | |
| BANDERA OAKS, LLC; DIESEL | § | |
| BARBERSHOP DOMINION, LLC; | § | |
| DIESEL BARBERSHOP ALAMO | § | |
| RANCH, LLC; AND HENLEY'S | § | |
| GENTLEMEN'S GROOMING, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by State Farm Lloyds

("Defendant" or "State Farm") on May 8, 2020. (Dkt. # 9.) Plaintiffs Diesel

Barbershop, LLC; Wilderness Oak Cutters, LLC; Diesel Barbershop Bandera

Oaks, LLC; Diesel Barbershop Dominion, LLC; Diesel Barbershop Alamo Ranch,

LLC; and Henley's Gentlemen's Grooming, LLC (collectively "Plaintiffs")

responded on May 22, 2020 (Dkt. # 14), and Defendant filed a reply on May 29,

2020 (Dkt. # 17). The Court presided over a virtual hearing on July 29, 2020,

during which Shannon Loyd, Esq., represented Plaintiffs and Neil Rambin, Esq.

and Susan Egeland, Esq. represented Defendant. After careful consideration of the

1

memorandum filed in support of and against the motion and after hearing arguments from counsel, the Court—for the reasons that follow—**GRANTS** Defendant's Motion to Dismiss.

<u>FACTUAL BACKGROUND</u>

On February 11, 2020, the World Health Organization identified the 2019 Coronavirus ("COVID-19") as a disease.  Since then, COVID-19 has spread across the world, and health organizations, including the Center for Disease Control ("CDC"), characterize COVID-19 as a global pandemic.  (<u>See</u> Dkt. # 8.) The outbreak in the United States is a rapidly evolving situation, and the state of Texas saw an exponential increase in COVID-19 cases.  To stop "community spread" of COVID-19, state and local governments have issued executive orders that limit the opening of certain businesses and require social distancing.  Bexar County Judge Nelson Wolff and Texas Governor Greg Abbott have issued executive orders throughout this crisis, and below are the relevant orders (the "Orders") for the purposes of this case.

a.  <u>The Bexar County Orders</u>

County Judge Wolff issued multiple executive orders pertaining to the "state of local disaster . . . due to imminent threat arising from COVID-19."  (Dkt. # 8, Exh. B.)  On March 23, 2020, County Judge Wolff issued an order requiring "all businesses operating within Bexar County" save for those "exempted" to

2

"cease all activities" at any business located in Bexar County from March 24, 2020 until April 9, 2020. (Id.) The order defines exempted businesses as those pertaining to: (a) healthcare services, (b) government functions, (c) education and research, (d) infrastructure, development, operation and construction, (e) transportation, (f) IT services, (g) food, household staples, and retail, (h) services to economically disadvantaged populations, (i) services necessary to maintain residences or support exempt businesses, (j) news media, (k) financial institutions and insurance services, (l) childcare services, (m) worship services, (n) funeral services, and (o) CISA sectors. (Id.) County Judge Wolff notes that he is authorized "to take such actions as are necessary in order to protect the health, safety, and welfare of the citizens of Bexar County" and "has determined that extraordinary emergency measures must be taken to mitigate the effects of this public health emergency and to facilitate a cooperative response" in line with Governor Abbott's "declaration of public health disaster." (Id.)

In a supplemental executive order dated April 17, 2020, County Judge Wolff emphasizes that "the continued spread of COVID-19 by pre- and asymptomatic individuals is a significant concern in Bexar County and on April 3, 2020, the [CDC] recommended cloth face coverings be worn by the general public to slow the spread of COVID-19 and implementing this measure would assist in reducing the transmission of COVID-19 in San Antonio and Bexar County." (Id.)

The goal of the supplemental order was to "reduce the spread of COVID-19 in and around Bexar County" and to "continue to protect the health and safety of the community and address developing and the rapidly changing circumstances when presented by the current public health emergency."  (Id.)

> b.  <u>The State of Texas Order</u>

On March 31, 2020, Texas Governor Greg Abbott signed an executive order closing all "non-essential" businesses from April 2, 2020 until April 30, 2020.  (Dkt. # 8, Exh. C.)  Governor Abbott's order provides the following:

> NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective 12:01 a.m. on April 2, 2020, and continuing through April 30, 2020, subject to extension based on the status of COVID-19 in Texas and the recommendations of the CDC and the White House Coronavirus Task Force:
>
> > In accordance with guidance from DSHS Commissioner Dr. Hellerstedt, and to achieve the goals established by the President to reduce the spread of COVID-19, every person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not in the same household.
> >
> > "Essential services" shall consist of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, plus religious services. . . .
> >
> > In accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms, massage

4

establishments, tattoo studios, piercing studios, or cosmetology salons; provided, however, that the use of drive-thru, pickup, or delivery options for food and drinks is allowed and highly encouraged throughout the limited duration of this executive order.

(Dkt. # 8, Exh. C.)

      c.    <u>Plaintiffs' Insurance Policies</u>

Plaintiffs run barbershop businesses; a type of business deemed non-exempt and non-essential under the Orders. (Dkt. # 8.) State Farm issued insurance policies (the "Policies")[1] to Plaintiffs regarding the insured properties (the "Properties") that are subject of this dispute. (<u>See</u> Dkt. # 9, Exhs. A-1–A-6.)

The Policies state, in relevant part, the following:

When a Limit Of Insurance is shown in the Declarations for that type of property as described under Coverage A – Buildings, Coverage B – Business Personal Property, or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under SECTION I — COVERED CAUSES OF LOSS.

(<u>Id.</u>) The Policies note in Section I–Covered Causes of Loss that State Farm will "insure for accidental direct physical loss to Covered Property" unless the loss is excluded under Section I–Exclusions or limited in the Property Subject to Limitations provision. (<u>Id.</u>) The Policies further contain a "Fungi, Virus, or

---

[1] Defendant attaches each Plaintiff's policy and endorsement to the policy to the motion to dismiss. (<u>See</u> Dkt. # 9, Exhs. A-1–A-6.) Defendant asserts that "the relevant provisions of the policies are identical" (Dkt. # 9), and thus this Court shall cite the policies together without analyzing each Plaintiff's policy separately.

Bacteria" exclusion (the "Virus Exclusion"), which contains lead-in language and

states the following:

> 1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> > . . .
> >
> > **j. Fungi, Virus Or Bacteria**
> >
> > . . .
> >
> > > (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Id.) The Policies also contain an endorsement modifying the businessowners

coverage form, including a Civil Authority provision which states in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> > 1. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> >
> > 2. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Id.)  There are various other exclusions within the Policies including for example, the "Ordinance or Law," the "Acts or Decisions" and the "Consequential Loss" exclusions.  (Dkt. # 9.)

## PROCEDURAL HISTORY

Plaintiffs assert that due to the COVID-19 outbreak and the Orders, Plaintiffs "have sustained and will sustain covered losses" under the terms of the Policies.  (Dkt. # 8.)  Plaintiffs filed a claim with State Farm seeking coverage for business interruption to the Properties pursuant to the Policies in March 2020.  (Id.) Without seeking additional documentation or information, and without further investigation, State Farm denied Plaintiffs' claims.  (Dkt. # 8, Exh. D.)  In the denial letter, State Farm asserted that Plaintiffs' claims are not covered as the "policy specifically excludes loss caused by enforcement of ordinance or law, virus, and consequential losses."  (Id.)  State Farm argued that there is a requirement "that there be physical damage, within one mile of the described property" and "that the damage be the result of a Covered Cause of Loss" which, State Farm asserted, a "virus is not."  (Id.)

Plaintiffs sued State Farm in state court on April 8, 2020, after State Farm denied Plaintiffs coverage.  (Dkt. # 1, Exh. C.)  Defendant timely removed the action to this Court on April 13, 2020.  (Dkt. # 1.)  In their second amended complaint, Plaintiffs bring claims of breach of contract, noncompliance with the

Texas Insurance Code, and breach of the duty of good faith and fair dealing. (Dkt. # 8.) Attached to Plaintiffs' second amended complaint are the Policies, Orders, and State Farm's letter denying coverage.

On May 8, 2020, State Farm filed a motion to dismiss for failure to state a claim. (Dkt. # 9.) The Court granted the parties' joint motion to stay discovery pending a ruling on the motion to dismiss on May 18, 2020. (Dkt. # 12.) Plaintiffs responded to the motion to dismiss on May 22, 2020 (Dkt. # 14), and a week later, Defendant filed its reply (Dkt. # 17). Defendant filed a notice of supplemental authority on July 14, 2020 (Dkt. # 21), and Plaintiffs filed a notice of supplemental authority on July 28, 2020 (Dkt. # 22). The Court held a virtual hearing on this matter on July 29, 2020. Defendant filed an additional notice of supplemental authority on August 7, 2020 (Dkt. # 25), and Plaintiffs filed another notice of supplemental authority on August 12, 2020 (Dkt. # 27). Defendant filed its third notice of supplemental authority on August 13, 2020 (Dkt. # 28), notifying the Court of the United States Judicial Panel on Multidistrict Litigation's decision to deny the creation of an industry-wide multidistrict litigation. (Id., Exh. A.)

## TEXAS CONTRACT-INTERPRETATION STANDARDS

"Insurance policies are contracts and are governed by the principles of interpretation applicable to contracts." Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th Cir. 1995). Under Texas contract-interpretation standards, the

8

"paramount rule is that courts enforce unambiguous policies as written" such that court must "honor plain language, reviewing policies as drafted, not revising them as desired." Pan Am Equities, Inc. v. Lexington Ins. Co., 959 F.3d 671, 674 (5th Cir. 2020). Importantly, an "ambiguity" is "more than lack of clarity"; a court should find an insurance contract ambiguous only if "giving effect to all provisions, its language is subject to two or more reasonable interpretations." Id. (internal quotation marks and citation omitted). To determine ambiguity, which is a question of law, a court must "examine the entire contract in order to harmonize and give effect to all provisions so that none will be meaningless." Id. (internal quotation marks and citation omitted); see also Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003) ("In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole."); State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010) ("The fact that the parties may disagree about the policy's meaning does not create an ambiguity." (citations and internal quotation marks omitted)). "The goal in interpreting . . . [language within the contract] is to ascertain the true intentions of the parties as expressed in the writing itself." Richards v. State Farm Lloyds, No. 19-0802, 2020 WL 1313782, at *5 (Tex. Mar. 20, 2020) (citation and internal quotation marks omitted).

## RULE 12(b)(6) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In analyzing whether to grant a Rule 12(b)(6) motion, a court accepts as true "all well-pleaded facts" and views those facts "in the light most favorable to the plaintiff." United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (citation omitted). A court need not "accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Furthermore, in assessing a motion to dismiss under Rule 12(b)(6), a court's review is generally limited to the complaint, documents attached to the complaint, and any documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's claims. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

10

<u>DISCUSSION</u>

State Farm argues that for business income coverage to apply, the Policies explicitly require (1) an accidental direct physical loss to the insured property and (2) that the loss is not excluded. (Dkt. # 9.) Defendant asserts that Plaintiffs fail to properly plead direct physical loss to the Properties as Plaintiffs argue that the Orders are the reason for the business interruption claim and fail to show that the Properties have been tangibly "damaged" per se. (Dkts. ## 9, 17.) Defendant also argues that regardless, Plaintiffs fail to overcome the Virus Exclusion hurdle that is unambiguously within the Policies and was added to these Policies in response to the SARS pandemic in the early 2000s. (<u>Id.</u>)

In response, Plaintiffs assert that the language in the Policies does not require a tangible and complete physical loss to the Properties, but rather allows for a partial loss to the Properties, which includes the loss of use of the Properties due to the Orders restricting usage of the Properties. (Dkt. # 14.) Plaintiffs also argue that it is not COVID-19 within Plaintiffs' Properties that caused the loss directly, but rather that it was the Orders that caused the direct physical loss and thus the Virus Exclusion should not apply. (<u>Id.</u>) Plaintiffs also argue that the Orders were issued to protect public health and welfare, and that Plaintiffs claims thus fall under the Civil Authority provision within the Policies. (<u>Id.</u>)

11

Based on the parties' filings, plain language of the Policies in question, and argument at the hearing, as much as the Court sympathizes with Plaintiffs' situation, the Court determines that the motion to dismiss must be granted for the following reasons.

a.      Accidental Direct Physical Loss

This Court is mandated to "honor plain language, reviewing policies as drafted, not revising them as desired." Pan Am Equities, 959 F.3d at 674. The Court looks at the coverage provided by the Policies as a whole in order to determine the plain language. Id. Here, the Policies are explicit that there has to be an accidental, direct physical loss to the property in question. The Court agrees with Plaintiffs that some courts have found physical loss even without tangible destruction to the covered property. See e.g., TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013) (noting that "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces"); Murray v. State Farm Fire & Cas. Co., 203 W. Va. 477, 493 (1998) ("'Direct physical loss' provisions require only that a covered property be injured, not destroyed. Direct physical loss also may exist in the absence of structural damage to the insured property." (citation omitted)). The Court also agrees that a virus like COVID-19 is not like a hurricane or a hailstorm, but rather more like ammonia, E. coli, and/or carbon

12

monoxide (i.e. cases in which the loss is caused by something invisible to the naked eye), and in such cases, some courts have found direct physical loss despite the lack of physical damage. See e.g., Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 236 (3d Cir. 2002) (holding that while mere installation of asbestos was not loss or damage, the presence or imminent threat of a release of asbestos would "eliminate[] or destroy[]" the function of the structure, thereby making the building "useless or uninhabitable"); Lambrecht & Assocs., Inc. v. State Farm Lloyds, 119 S.W.3d 16, 24–26 (Tex. App. 2003) (noting that while State Farm argued that the losses were not "physical" as they were not "tangible," the court found that under the "direct language" of the policy allowed for coverage to "electronic media and records" and the "data stored on such media" as "such property is capable of sustaining a 'physical' loss"); Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 406 (1st Cir. 2009) ("We are persuaded both that odor can constitute physical injury to property . . . and also that allegations that an unwanted odor permeated the building and resulted in a loss of use of the building are reasonably susceptible to an interpretation that physical injury to property has been claimed.").

Even so, the Court finds that the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable. See Dickie Brennan & Co. v. Lexington Ins. Co., 636 F.3d 683, 686 (5th Cir.

13

2011) (affirming summary judgment and holding that there was no coverage under
the civil authority provision of the policy as plaintiffs "failed to demonstrate a
nexus between any prior property damage and the evacuation order" when the city
issued a mandatory evacuation order prior to the arrival of a hurricane and
plaintiffs allegedly suffered business interruption losses); United Air Lines, Inc. v.
Ins. Co. of State of PA, 439 F.3d 128, 134 (2d Cir. 2006) (determining that United
could not show that its lost earnings resulted from physical damage to its property
or from physical damage to an adjacent property when the government shut down
the airport after the 9/11 terrorist attacks). For instance, unlike Essex Ins. Co.,
COVID-19 does not produce a noxious odor that makes a business uninhabitable.
It appears that within our Circuit, the loss needs to have been a "distinct,
demonstrable physical alteration of the property." Hartford Ins. Co. of Midwest v.
Mississippi Valley Gas Co., 181 F. App'x 465, 470 (5th Cir. 2006) ("The
requirement that the loss be "physical," given the ordinary definition of that term is
widely held to exclude alleged losses that are intangible or incorporeal, and,
thereby, to preclude any claim against the property insurer when the insured
merely suffers a detrimental economic impact unaccompanied by a distinct,
demonstrable, physical alteration of the property." (citation omitted)); see also
Ross v. Hartford Lloyd Ins. Co., 2019 WL 2929761, at *6–7 (N.D. Tex. July 4,
2019) ("direct physical loss" requires "a distinct, demonstrable, physical alteration

14

of the property" (citing 10A Couch on Ins. § 148:46 (3d ed. 2010)).)  Thus, the

Court finds that Plaintiffs fail to plead a direct physical loss.

                b.    <u>The Virus Exclusion</u>

          Even if the Court had found that the language within the Policies was

ambiguous and/or that Plaintiffs properly plead direct physical loss to the

Properties, the Court finds that the Virus Exclusion bars Plaintiffs' claims.  The

language in the lead-in of the Virus Exclusion (also called the anti-concurrent

causation ("ACC") clause) expressly states that State Farm does not insure for a

loss regardless of "whether other causes acted concurrently or in any sequence

within the excluded event to produce the loss."  (<u>See</u> Dkt. # 9, Exhs. A-1–A-6.)

Here, Plaintiffs allege that the loss of business occurred as a result of the Orders

that mandated non-essential businesses to discontinue operations for a set period of

time to help staunch community spread of COVID-19.  (Dkts. ## 8, 14.)  Plaintiffs

also assert that the Court should find that the Virus Exclusion does not apply

because COVID-19 was not present at the Properties.  (<u>Id.</u>)

          The Court notes that the parties vehemently dispute how to read the

lead-in language to the Virus Exclusion.  Defendant cites <u>Tuepker v. State Farm</u>

<u>Fire & Cas. Co.</u>, 507 F.3d 346 (5th Cir. 2007) in support of the argument that the

lead-in language to the Virus Exclusion bars Plaintiffs' claims and that the lead-in

language is unambiguous and enforceable.  Meanwhile, Plaintiffs cite <u>Stewart</u>

15

Enterprises, Inc. v. RSUI Indem. Co., 614 F.3d 117 (5th Cir. 2010) in support of their assertion that the lead-in language does not exclude coverage here.

The Court finds the facts in Stewart Enterprises distinguishable from the facts here. There, the ACC clause was within a policy provided by Lexington Insurance Company and contained different language than the ACC clause in State Farm's Policies here. See Stewart Enterprises, 614 F.3d at 125 (noting in the ACC clause that "this policy does not insure against loss or damage caused directly or indirectly by any of the excluded perils" as "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss"). In addition, the issue in Stewart Enterprises was that the insurer was seeking "to use the ACC clause to bar recovery for damage caused by two included perils." Id. at 126 (emphasis added). The Fifth Circuit rightly decided there that it would be absurd to "read the policy to force Stewart to prove a windless flood." Id. at 127.

But here, the Court can read the Policies objectively and without "creating difficult causation determination where none otherwise exist." Id. Like the Fifth Circuit in Tuepker, the Court finds that here, the State Farm ACC clause within the Policies is unambiguous and enforceable. See Tuepker, 507 F.3d at 356. The Policies expressly state that State Farm does not "insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or

16

(c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these[.]"  (See Dkt. # 9, Exhs. A–1–A–6.) Guided by the plain language of the Policies, the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses.  While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community.  Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing. Furthermore, while the Virus Exclusion could have been even more specifically worded, that alone does not make the exclusion "ambiguous."  See In re Katrina Canal Breaches Litig., 495 F.3d 191, 210 (5th Cir. 2007) ("The fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous.").

　　　　Thus, the Court finds that the Policies' ACC clause excluded coverage for the losses Plaintiffs incurred in complying with the Orders.  See, e.g., JAW The Pointe, L.L.C. v. Lexington Ins. Co., 460 S.W.3d 597, 610 (Tex. 2015) ("Because the covered wind losses and excluded flood losses combined to cause the

enforcement of the ordinances concurrently or in a sequence, we agree with the court of appeals that the policy's anti-concurrent-causation clause excluded coverage for JAW's losses."). Thus, even if the Court found direct, physical loss to the Properties, the Virus Exclusion applies and bars Plaintiffs' claims.

c.     The Civil Authority Provision

In light of the foregoing, the Court also finds that the Civil Authority provision within the Policies is not triggered. Plaintiffs' recovery remains barred due to the unambiguous nature of the events that occurred, causing the Virus Exclusion to apply such that Plaintiffs fail to allege a legally cognizable "Covered Cause of Loss." See Dickie Brennan, 636 F.3d at 686–87 ("[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property.").

CONCLUSION

The Court finds merit in Defendant's arguments and determines that Plaintiffs' breach of contract, Texas Insurance Code,[2] and breach of duty of good faith and fair dealing claims all fail. While there is no doubt that the COVID-19 crisis severely affected Plaintiffs' businesses, State Farm cannot be held liable to

---

[2] Plaintiffs expressly seek to drop their allegation of misrepresentation pending further discovery in light of this Court's ruling in Brasher v. State Farm Lloyds, 2017 WL 9342367, at *7 (W.D. Tex. Feb. 2, 2017). (Dkt. # 14.)

pay business interruption insurance on these claims as there was no direct physical loss, and even if there were direct physical loss, the Virus Exclusion applies to bar Plaintiffs' claims.  Given the plain language of the insurance contract between the parties, the Court cannot deviate from this finding without in effect re-writing the Policies in question.  That this Court may not do.

      For the reasons stated above, the Motion to Dismiss (Dkt. # 9) is **GRANTED**.  Because allowing Plaintiffs leave to amend their claims would be futile, the Court **DISMISSES** Plaintiffs' claims.  The Clerk's office is instructed to **ENTER JUDGMENT** and **CLOSE THIS CASE**.

      **IT IS SO ORDERED**.

      **DATE:** San Antonio, Texas, August 13, 2020.


_____
David Alan Ezra
Senior United States District Judge

19

EXHIBIT I

k5e2SocH

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    SOCIAL LIFE MAGAZINE, INC.,

 4                 Plaintiff,                New York, N.Y.

 5          v.                               20 Civ. 3311(VEC)

 6    SENTINEL INSURANCE COMPANY
      LIMITED,
 7
                 Defendant.
 8
      ------------------------------x       Teleconference
 9                                          Order to Show Cause

10
                                           May 14, 2020
11                                         10:00 a.m.

12    Before:

13                     HON. VALERIE E. CAPRONI,

14                                          District Judge

15

16
                          APPEARANCES
17

18    GABRIEL J. FISCHBARG
            Attorney for Plaintiff
19

20    STEPTOE & JOHNSON, LLP
            Attorneys for Defendant
21    BY:  CHARLES A. MICHAEL
            SARAH D. GORDON
22

23

24

25
```

```
1                THE COURT:  Good morning, everybody.

2                Do I have a court reporter on the line?

3                THE COURT REPORTER:  Good morning, your Honor.

4    Kristen Carannante.

5                THE COURT:  Good morning.

6                Okay.  Do I have Mr. Fischbarg for the plaintiff?

7                MR. FISCHBARG:  Yes, Judge.  Hi.

8                THE COURT:  Mr. Fischbarg, is anyone else on the line

9    for the plaintiff?

10               MR. FISCHBARG:  Yes.  The plaintiff is on a separate

11   phone available if you need evidence or --

12               THE COURT:  The principal of Social Life?

13               MR. FISCHBARG:  Yes.  He is in my office, you know,

14   more than six feet away, and --

15               THE COURT:  Okay.

16               And who do I have for the defendant?

17               MR. MICHAEL:  Good morning, your Honor.  This is

18   Charles Michael, from Steptoe & Johnson, for the defendant.

19   With me is my partner Sarah Gordon, who was just admitted *pro*

20   *hac vice*, and who will be doing the presentation today.

21               THE COURT:  Terrific.

22               All right --

23               MS. GORDON:  Good morning, your Honor.

24               THE COURT:  Good morning.

25               Only people who are speaking need to note their
```

k5e2SocH

1   appearances, and I have got those, Mr. Fischbarg and

2   Ms. Gordon.  Everybody else, please mute your telephone.

3              Also, if you hear that sound that sounds like someone

4   has dropped off the line once we get started, I need you to

5   stop talking so that I can make sure that I have still got the

6   court reporter and your adversary on the line.

7              So, Mr. Fischbarg, this is your motion, so you get to

8   go first.

9              MR. FISCHBARG:  Yes.  So I submitted a reply

10  memorandum, you know, in the afternoon yesterday.  I was just

11  wondering if --

12             THE COURT:  Yes.  I saw that.  Thank you.

13             MR. FISCHBARG:  Okay, so you were also able to read

14  it, I suppose?

15             THE COURT:  Yes, yes.

16             MR. FISCHBARG:  Okay.

17             So I guess the only other thing I want to add that's

18  not in the papers, and then I don't know if your Honor has any

19  issues that you want to talk about, is I mentioned that Liberty

20  Mutual had this exclusion for viruses and it is also evident

21  that other insurance companies have the same exclusion,

22  including Travelers Insurance Company, and they filed the --

23  they actually filed a federal lawsuit for declaratory judgment

24  in California, Docket No. 20 Civ. 3619, to preempt such claims,

25  I guess to enforce their exclusion for viruses.  So to the

k5e2SocH

1    extent that the defendant is claiming some kind of overreach by

2    the plaintiff here, I don't think it is proper.  There are

3    several insurance companies who are capable of putting in a

4    virus exclusion in their policies, and in this case there is

5    none.  So --

6              THE COURT:  Let me ask you something.  First off, I

7    want to start with basics.  Do you agree that New York law

8    applies?

9              MR. FISCHBARG:  Yes.

10             THE COURT:  All right.  So the -- is it the *Roundabout*

11   *Theatre* case?

12             MS. GORDON:  Yes, your Honor.

13             THE COURT:  First Department case?

14             MS. GORDON:  Yes, your Honor.  This is Ms. Gordon on

15   behalf of Sentinel.

16             THE COURT:  Thank you.

17             Mr. Fischbarg, it would seem to me that the *Roundabout*

18   case is a real problem for your position.

19             Would you like to explain to me why it doesn't

20   preclude your claim?

21             MR. FISCHBARG:  Yes.  That case applies to off-site

22   property damage rendering the premises at issue inaccessible.

23   So in this case, you don't have off-site property damage.  You

24   have on-site property damage.

25             THE COURT:  What is the damage?  There is no damage to

k5e2SocH

1    your property.

2              MR. FISCHBARG:  Well, the virus exists everywhere.

3              THE COURT:  It damages lungs.  It doesn't damage

4    printing presses.

5              MR. FISCHBARG:  Right.  Well, that's a different

6    issue, whether or not -- that's a different issue than the

7    *Roundabout* case that had to do with accessibility.  Now we are

8    jumping to the topic of whether a virus can cause physical

9    damage to a printing press, as your Honor mentioned.  So that's

10   a separate issue, and there are a lot of cases that we have

11   cited where this type of material, a virus, does cause physical

12   damage.

13             THE COURT:  What's your best case?  What do you think

14   is your best case under New York law?

15             MR. FISCHBARG:  Well, the problem is, under New York

16   law, there isn't much law.  The New Jersey federal court, in

17   *TRAVCO*, citing other cases, including from other circuits,

18   where physical damage had a broader interpretation that

19   includes loss of use and not just, you know, something where

20   you take a hammer and break an item.

21             THE COURT:  With loss of use, I mean, loss of use from

22   things like mold is different from you not being able to,

23   quote, use your premises because there is a virus that is

24   running amuck in the community.

25             MR. FISCHBARG:  Okay.  I would disagree with that.  I

k5e2SocH

1    would say virus and mold are equivalent.  They are both

2    physical items which, if they land on a surface or are on a

3    surface, just like spores that are also listed in the policy,

4    mold is also listed in the policy.  I would say that the virus,

5    mold spores --

6             THE COURT:  Hang on --

7             MR. FISCHBARG:  -- anything --

8             THE COURT:  A second.

9             Do I still have the court reporter?

10            THE COURT REPORTER:  Yes, your Honor.

11            THE COURT:  Do I have I still have, Ms. Gordon?

12            MS. GORDON:  Yes, your Honor.

13            THE COURT:  All right.  Go ahead.

14            MR. FISCHBARG:  Mold spores, bacteria, virus, all

15   those are physical items which damage whatever they are on,

16   whatever they land on.  And in this case, the virus, when it

17   lands on something and you touch it, you could die from it.

18   So --

19            THE COURT:  That damages you.  It doesn't damage the

20   property.

21            MR. FISCHBARG:  But you are not able to use the

22   property because it damages you.  So it's a corollary.  In

23   other words, this policy, by the way, mentions the word "virus"

24   and "bacteria" in it in two places.

25            THE COURT:  Where does it mention it?

k5e2SocH

1      MR. FISCHBARG:  It mentions it in the PDF as well as

2  Exhibit 9, page 36 and 37, which is page 7 of 25 of the special

3  property coverage form under additional coverages, section

4  5(j), where the insured would cover certain law enforcement

5  orders requiring you to -- requiring remediation.  But it

6  contains an exclusion for bacteria and viruses, and it uses the

7  word "bacteria" and it uses the word "virus."

8      So what this is really referring to is the *Legionella*

9  bacteria, which is causes Legionnaires' disease typically.

10 That's the bacteria.  Virus is obviously something else.  So

11 this is obviously referring to when there is a Legionnaires'

12 outbreak in a building, which could happen in New York pretty

13 often, every few years, and then the building gets shut down

14 and they have to do remediation.  Either they -- at least as a

15 bacteria*,* *Legionella* bacteria only occurs in water or pipes or

16 in mist.  So the building is shut down, and then you might have

17 to -- and now there is a new code where the buildings have to

18 test their cooling systems for *Legionella* bacteria.  So that's

19 an example where a bacteria causes property loss, or loss of

20 use, or damage, physical damage to property.  And I would say

21 the virus is equivalent to that bacteria.  So --

22      THE COURT:  But it's not.  This is different.  The

23 virus is not specifically in your property that is causing

24 damage.  It is everywhere.  The Legionnaire example is very

25 different.  Because it's not like Legionnaire is running

1    rampant throughout the city, and therefore your office building

2    can get closed.  It is that the Legionnaire bacteria is in that

3    building causing --

4            MR. FISCHBARG:  Yes.

5            THE COURT:  -- that building to be shut down.

6            MR. FISCHBARG:  Yes.  Yes.

7            So this virus is everywhere, including this office in

8    particular, this office.  In other words, they just did a

9    random survey of people going into a grocery store in New York,

10   and 20 percent tested positive.  So, Judge, that's just a

11   one-sample test.  So if the infection rate in New York City is

12   20 percent, then the virus is literally everywhere.  So if

13   it --

14           THE COURT:  That's what --

15           MR. FISCHBARG:  -- is --

16           THE COURT:  That is what has caused the damage is that

17   the governor has said you need to stay home.  It is not that

18   there is any particular damage to your specific property.

19           MR. FISCHBARG:  Well, okay, that's --

20           THE COURT:  You may not even have the virus in your

21   property.

22           MR. FISCHBARG:  Well, okay, that's -- I would

23   disagree.  The virus not just causes -- it lands on equipment,

24   it lands everywhere.  That's why all of these -- all of the

25   health guidelines from the World Health Organization and

1    elsewhere talk about wearing gloves, talk about wiping things

2    down, because it lands on surfaces.  It doesn't just get

3    transmitted through the air.  Another way of getting it is

4    through contact --

5             THE COURT:  Right, but what --

6             MR. FISCHBARG:  -- when it touches your --

7             THE COURT:  What evidence do you have that your

8    premises are infected with the COVID bug.

9             MR. FISCHBARG:  Well, the plaintiff is here.  He got

10   COVID.  So that's evidence there.

11            THE COURT:  Well, it's not evidence that he got it in

12   his office.

13            MR. FISCHBARG:  Yes, but, okay, it's not -- we're

14   not -- I don't know what burden of proof we are looking at,

15   whether it is beyond a reasonable doubt --

16            THE COURT:  No, it's --

17            MR. FISCHBARG:  -- or more likely than not, more

18   likely than not, he can testify where he was and more likely

19   than not he either got it from his office or he got it from his

20   home.  So that's a different burden of proof.  If you are

21   looking for some kind of burden of proof to show that he got it

22   from his office, I mean, that's an evidentiary question, and we

23   can get an epidemiologist to testify and get an expert to

24   testify on that, which I understand is going to happen in the

25   other lawsuits that have been filed across the country

Case 2:20-cv-02750-GRB-AKT  Document 13  Filed 09/03/20  Page 214 of 223 PageID #: 457
Case 1:20-cv-03311-VEC  Document 24-1  Filed 05/20/20  Page 16 of 19
k5e2SocH

 1   regarding --

 2            THE COURT:  Okay.

 3            MR. FISCHBARG:  -- this issue.

 4            THE COURT:  Okay.

 5            MR. FISCHBARG:  So . . .

 6            THE COURT:  Anything further, Mr. Fischbarg?

 7            MR. FISCHBARG:  No, I guess that's all for now.  Thank

 8   you.

 9            THE COURT:  Okay.  Thanks.

10            Ms. Gordon.

11            MS. GORDON:  Thank you, your Honor.  This is Sarah

12   Gordon on behalf of Sentinel, and we agree with your Honor's

13   thoughts here.

14            The property policy has two distinct requirements

15   here.  There has to be direct physical loss or physical damage

16   to the property and the cause of the business interruption

17   damages they are seeking has to be direct physical loss or

18   damage, and the cause here is not physical damage.

19            We think, you know, as your Honor rightly pointed out,

20   *Roundabout* controls.  It is under New York law.  It's a First

21   Department case from 2002.  There are no subsequent decisions

22   that have disagreed or overturned it here in New York; and, if

23   anything, it has been confirmed by this . . .

24            THE COURT:  Hang on.  Did I lose my court reporter?

25            THE COURT REPORTER:  No, Judge.  I'm here.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

k5e2SocH

```
 1        THE COURT:  Did I lose Mr. Fischbarg?

 2        MR. FISCHBARG:  No, I'm here.

 3        THE COURT:  Okay.

 4        MS. GORDON:  This court, your Honor, in *Newman Myers*,

 5   adopted the exact same rationale for a law firm that was trying

 6   to assert damages where there were no -- business interruption

 7   damages, where there was no physical harm to the property.

 8   And, you know --

 9        THE COURT:  Let me interrupt you for a second.

10        So Judge Engelmayer in *Newman* went out of his way to

11   talk about a case where there was a bunch of -- there was a

12   rock slide which didn't actually hit the house or the premises,

13   and yet they got coverage and coverage for the invasion of

14   fumes.

15        MS. GORDON:  Yes, your Honor.

16        So for most of the cases, there are a number of them,

17   there is -- what has happened is something physically has

18   happened to the property that prevents people from being on the

19   property.  So, for example, in *Gregory Packaging*, in New

20   Jersey, there was ammonia leaked out and they couldn't be on

21   the property, so something physically happened.  You couldn't

22   necessarily see it or touch it, but there were fumes and it was

23   unsafe to be there.  The same thing with *Motorists*, where there

24   was *E. coli* in the well.  You couldn't be in that house because

25   you were exposed to other things that had the *E. coli*.
```

Case 2:20-cv-02756-GRB-AKT Document 13 Filed 09/03/20 Page 216 of 223 PageID #: 459
Case 1:20-cv-03311-VEC Document 24-1 Filed 05/15/20 Page 12 of 19

k5e2SocH

          1          The property has to be entirely unusable or

          2   uninhabitable for physical loss or damage to constitute a loss

          3   of use.  We don't think that's the law in New York in any

          4   circumstance, but even in those other cases, there is nothing

          5   equivalent here.  Mr. Fischbarg's client can go to his

          6   premises.  There is no ammonia or mold or anything in the air

          7   that's not going to allow him on to the property.  In fact, the

          8   governor's orders explicitly allow him to go to the property

          9   and get his mail or do routine business functions.  The only

         10   rule is that he has to stay six feet apart from other people.

         11   So those cases are entirely distinguishable.

         12          And when a business, a property is allowed to remain

         13   open or people can still occupy the premises, there is no

         14   direct physical loss or damage.  That was the case -- that's

         15   what the court said in *Port Authority*, that's what happened in

         16   *Mama Jo's*, where the restaurant was allowed to be open.  The

         17   cases where there is direct physical loss or damage, you

         18   literally cannot be on the premises because there is something

         19   there that is making it uninhabitable, and here that just isn't

         20   true.

         21          THE COURT:  Okay.  Mr. Fischbarg I will give you the

         22   last word.

         23          MR. FISCHBARG:  All right.  So I would disagree that

         24   he is allowed to go to the premises.  In fact, the opposite is

         25   true.  The executive order 202.8 says it requires 100 percent

k5e2SocH

1    reduction.  So he can't go there, and he is not allowed to go

2    there, and that is a separate claim.  It is the civil authority

3    claim besides the breach of contract claim.

4           THE COURT:  Doesn't the executive order say -- I'm

5    sorry, which executive order are you talking about?

6           MR. FISCHBARG:  It is . . .

7           It is Exhibit 3 of the declaration, and then on page

8    2, "Each employer shall reduce the in-person workforce at any

9    work locations by 100 percent no later than March 22 at 8p.m."

10   And then it says --

11          THE COURT:  Right, but that doesn't mean the boss

12   can't go to the work location.

13          MR. FISCHBARG:  I would say he is -- he is an employee

14   and he can't go.  I think it does.  In my building here in New

15   York, there is nobody here.  I'm the only one.  There is no

16   bosses in any of the offices.

17          THE COURT:  There is nothing about the governor's

18   order that prohibits a small businessperson or a big

19   businessperson from going into their office to pick up mail, to

20   water the plants, to do anything like --

21          MR. FISCHBARG:  Your Honor --

22          THE COURT:  -- that, including employees that are

23   working.

24          MR. FISCHBARG:  Sorry.

25          MS. GORDON:  Your Honor, this is Sarah Gordon.  Oh, go

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 2:20-cv-02756-GRB-AKT Document 13 Filed 09/03/20 Page 218 of 223 PageID #: 461
Case 1:20-cv-03311-VEC Document 24-1 Filed 05/15/20 Page 14 of 19

k5e2SocH

1    ahead, Mr. Fischbarg.

2          MR. FISCHBARG:  Okay.

3          Again, I would disagree.  I think the order is pretty

4    clear that 100 percent means that you are not supposed to go to

5    work, and that's what people have been doing in New York.  They

6    are not going into the office.  And to the extent they are

7    getting mail, I mean, there is work-arounds where the workers

8    in the building have been leaving it downstairs for people to

9    pick up, but the way it's been implemented is that 100 percent

10   means no one is going to any office.

11         THE COURT:  You are in your office.

12         MR. FISCHBARG:  Yeah, I'm not -- I'm considered, by

13   the way -- lawyers are considered essential, and if you are a

14   sole practitioner, you are considered essential.  So I have the

15   exclusion, and that's why I am here, but otherwise I wouldn't

16   be here.  So . . .

17         MS. GORDON:  Your Honor, if I may?  We submitted with

18   Mr. Michael's affidavit, Exhibit D, a printout from the Empire

19   State Development website.  And on question 13, it addresses

20   exactly this issue.  It says, "What if my business is not

21   essential but a person must pick up mail or perform a similar

22   routine function each day?"  And the answer provided by the

23   Empire State is, "A single person attending a nonessential

24   closed business temporarily to perform a specific task is

25   permitted so long as they will not be in contact with other

Case 2:20-cv-02756-GRB-AKT  Document 13  Filed 09/03/20  Page 219 of 223 PageID #: 462
Case 1:20-cv-03311-VEC  Document 24-1  Filed 05/17/20  Page 15 of 19

k5e2SocH

1    people."

2            THE COURT:  I thought I had read that somewhere.

3            MS. GORDON:  Yes.  It is in Mr. Michael's declaration,

4    and I think it's ECF 18-4, page 304.

5            THE COURT:  Okay.

6            MR. FISCHBARG:  Right, but I think the executive order

7    supersedes that is what I would argue.

8            THE COURT:  Okay.

9            Mr. Fischbarg, you have got to demonstrate a

10   probability of success on the merits.  I feel bad for your

11   client.  I feel bad for every small business that is having

12   difficulties during this period of time.  But New York law is

13   clear that this kind of business interruption needs some damage

14   to the property to prohibit you from going.  You get an A for

15   effort, you get a gold star for creativity, but this is just

16   not what's covered under these insurance policies.

17           So I will have a more complete order later, but your

18   motion for preliminary injunction is going to be denied.

19           Anything further for the plaintiff?

20           MR. FISCHBARG:  I guess just a housekeeping thing.  We

21   filed an amended complaint.  Are we going to deem it served or

22   does it have to be re-served?

23           THE COURT:  Has the defendant -- does the defendant

24   want to be reserved or will you take the amended complaint?

25           MR. MICHAEL:  Your Honor, this is Charles Michael.

Case 2:20-cv-02750-GRB-AKT Document 13 Filed 09/03/20 Page 220 of 223 PageID #: 463
Case 1:20-cv-03311-VEC Document 24-1 Filed 05/15/20 Page 16 of 19
k5e2SocH

1          We have entered a notice of appearance, and so I think

2     once they filed it on ECF, that service, we are happy to

3     consider it served.  That's fine.  And he does have one

4     amendment as of right.

5          THE COURT:  Correct.

6          MR. MICHAEL:  That was within his right to file it.

7          THE COURT:  Does defendant plan to move or answer?

8          MR. MICHAEL:  Probably to move.  We would have to

9     discuss it with our client, but I believe so.

10         THE COURT:  Okay.  What are the parties' position on

11    discovery while the motion to dismiss is pending?

12         MR. FISCHBARG:  Well, I would say there are two

13    motions filed -- there is one in the Eastern District of

14    Pennsylvania and one in, I think, the Northern District of

15    Illinois -- for an MDL, multi-district litigation, involving a

16    lot of lawsuits combining, so I think this might be happening

17    in each state until that motion is decided, and I think the

18    briefing schedule is in June --

19         MS. GORDON:  We -- your Honor --

20         MR. FISCHBARG:  -- so I think --

21         MS. GORDON:  Sorry, Mr. Fischbarg.

22         MR. FISCHBARG:  So I would say that this case might be

23    transferred to the multi-district panel at some point.

24         THE COURT:  Okay.  So, Mr. Fischbarg, what I am

25    hearing you say is that you are perfectly happy to have the

k5e2SocH

1    defendants not move until we find out whether or not your case

2    is going to get scooped up into the MDL?

3              MR. FISCHBARG:  Yes, correct.

4              THE COURT:  All right.  I presume that the defendants

5    are perfectly happy to do nothing until you hear back from the

6    MDL.

7              MS. GORDON:  Your Honor, I need to consult with my

8    client on that.  I'm not sure that that's true.  We don't think

9    these cases are appropriate for consolidation in the MDL for

10   many of the reasons which were evident today, given the

11   different states' conclusions on these laws.  So I need to

12   consult with my client on the motion practice.  We may intend

13   to want to move in any event.

14             THE COURT:  Okay.  Well, you could move, but if there

15   is a likely -- if there is some likelihood that they are going

16   to get scooped into the MDL, I'm not likely to decide it until

17   that decision is made.  So it is entirely -- I guess from my

18   perspective I don't really care, but from your client's

19   perspective, they may be making a motion to dismiss that's

20   unnecessary.  If you are right, and you may well be right, that

21   they are not going to MDL these kinds of cases, then all that's

22   happening is this is just being delayed into the summer for you

23   to incur fees making a motion to dismiss.

24             So why don't you talk to your client, figure out what

25   you want to do.  One way or the other, it does not seem to me

k5e2SocH

1  to make sense to proceed with discovery in this matter,

2  certainly under the circumstances that everyone is in, and

3  particularly the plaintiff is in, strapped for revenue, until

4  we figure out whether a lawsuit is going to go forward.

5      So talk to your client, figure out whether -- the

6  defendant should talk to Sentinel.  Figure out whether you are

7  happy staying this case pending a decision on the MDL or not,

8  and just write me a letter and let me know.

9      MS. GORDON:  Yes, your Honor.  Thank you.

10     MR. MICHAEL:  Your Honor --

11     THE COURT:  Anything further from the plaintiff?

12     MR. MICHAEL:  Just one housekeeping matter.  This is

13 Charles Michael, again, for the defendant.

14     THE COURT:  Okay.

15     MR. MICHAEL:  I just wondered if there was any special

16 procedures for ordering the transcript or if we go just through

17 the normal Southern District website?  I didn't know, under the

18 COVID circumstances, if there is something different we should

19 do.

20     THE COURT:  I don't think there is anything different,

21 but we have got the court reporter on.

22     So, Madam Court Reporter, is there anything different

23 they need to do?

24     THE COURT REPORTER:  At the end of this proceeding, I

25 am going to email the parties with their instructions.

Case 1:20-cv-03311-VEC  Document 24-1  Filed 05/20/20  Page 19 of 19

k5e2SocH

```
 1              THE COURT:  Okay.

 2              MR. MICHAEL:  Terrific.  Thank you so much.

 3              THE COURT:  Anything further from the plaintiff,

 4    Mr. Fischbarg?

 5              MR. FISCHBARG:  No.  Thank you, Judge.

 6              THE COURT:  Anything further from the insurance

 7    company?  Ms. Gordon?

 8              MS. GORDON:  No.  Thank you, your Honor.

 9              THE COURT:  All right.  Thank you, all.

10              MR. FISCHBARG:  Okay.  Bye, Judge.

11              MR. MICHAEL:  Thank you, your Honor.

12                              oOo

13

14

15

16

17

18

19

20

21

22

23

24

25
```